CR87-422-ER

# DECLARATION OF EDWARD M. MEDVENE

I, Edward M. Medvene, the undersigned declare:

1. I am an attorney duly admitted to practice in all courts of the State of California. I am, through my professional corporation, a member of the law firm of Mitchell, Silberberg & Knupp, LLP ("MSK"), counsel for defendant Ruben Zuno-Arce. I know all of the facts stated in this declaration of my own personal knowledge and, if called and sworn as a witness, could and would competently testify thereto:

2. A few weeks prior to his testimony in Zuno II, Rene Lopez Romero was arrested for violation of California Penal Code Section 273.5 - willful infliction of corporal abuse on a spouse. Depending on the circumstances, the violator may be imprisoned in State Prison for between two to four years, or in a county jail for not more than one year. Representatives of the government intervened and procured Lopez's release from custody and facilitated the eventual dismissal of any charges against him. It appears that Lopez was also untruthful in talking to the police officers and describing to them what occurred.

3. Section 1251 of Title 8 of the United States Code sets forth the grounds on which an alien may be deported. At the time of Lopez's arrest, Section 1251 provided that an alien may be deported for either an aggravated felony or a crime of moral turpitude, both of which are defined to include the crime of spousal abuse.

4. Subsection (a)(2)(A)(iii) provides that "[a]ny alien who is convicted or an aggravated felony at any time after entry is deportable." The Act defines "aggravated felony" to include "a crime of violence (as defined in Section 16 of Title 18,

but not including a purely political offense) for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43). Section 16 of Title 18 of the United States Code defines "crime of violence" as (a) an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Thus, the definition of aggravated felony includes the felony crime of spousal abuse.

5. In addition, Subsection (a)(2)(A)(i) provides that "[a]ny alien who is convicted of a crime involving moral turpitude committed within five years. . . after the date of entry, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." That definition includes the felony crime of spousal abuse.

6. The prosecution did not disclose to Zuno's defense counsel that it interceded on Lopez's behalf with local authorities and obtained his release from prison and the eventual dismissal of the felony spousal abuse charges filed against him - a charge which could have resulted in Lopez's deportation to Mexico.

7. Prior to his first meeting with DEA agent Hector Berrellez ("Berrellez"), Cervantes received some $12,000 from a DEA intermediary who suggested that there was alot more money to come if Cervantes cooperated with the DEA. This payment and these comments were never previously disclosed by the government to Zuno's defense counsel.

8. Cervantes states in his declaration that if he cooperated with the government he would get $6,000 a month for himself and his family, and when the trial was over, he would get an additional $200,000. These payments and promises of benefits were never previously disclosed by the government to Zuno's defense counsel.

9. At the second trial, Rene Lopez Romero ("Lopez") testified that he received $3,000 per month from the government. DEA intermediary Garate has now confirmed that in September of 1995, Lopez received a large payment of money. See John Brown Declaration. This payment of money was never previously disclosed by the government to Zuno's defense counsel.

10. At the second trial, Jorge Godoy Lopez ("Godoy") testified that he received $3,000 per month from the government. Godoy now admits that he actually received a large cash payment in September of 1995. This payment of money was never previously disclosed by the government to Zuno's defense counsel.

11. On December 8, 1992 at 1:20 p.m., the prosecution turned over to Zuno's defense counsel certain Jencks material numbered pages 6591 through 6636 related to Raymond Lira. Included in those pages and numbered 6616 through 6620 was a DEA report (known as a "DEA-6") prepared September 17, 1992 and referenced as "initial debriefing" of Lira by Berrellez and Salazar. (A true and correct copy of the one page receipt document and pages 6591 through 6636 received by Zuno's defense counsel on December 8, 1992 are attached to Zuno's Motion as exhibit pages 250 through 314, inclusive, with the September 17, 1992 report at pages 295 through 299, inclusive, and are incorporated herein by this reference.) Zuno recently discovered that the documents turned over to Zuno's counsel did not constitute the complete DEA-6 as four critical paragraphs were deleted from the DEA-6 turned over to defense counsel.

The entire and complete DEA-6 was never previously disclosed by the government to Zuno's defense counsel.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of October 1997, at Los Angeles, California.



Edward M. Medvene

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is Mitchell, Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles, California 90064.

On October 29, 1997, I served the foregoing document described as **DECLARATION OF EDWARD M. MEDVENE** on the interested parties in this action by placing a true copy thereof which was enclosed in sealed envelopes addressed as follows:

>John L. Carlton, Esq.
>Assistant U.S. Attorney
>Criminal Appeals Division
>U.S. Department of Justice
>312 North Spring Street
>Los Angeles, CA  90012

and, following ordinary business practices, placing the envelope(s) for collection and deposit in the U.S. Postal Service at 11377 West Olympic Boulevard, Los Angeles, California.

I am readily familiar with the firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service. Under that practice, all correspondence is deposited with the U.S. Postal Service on the same day that it is placed for collection and processing, in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 29, 1997 at Los Angeles, California.

Linda L. Allen