

( F I L E   C O P Y (

JUDGMENT
=================================================================



ENTERED
CLERK, U.S. DISTRICT COURT

NOV 18 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

----------------

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 3 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

.NO. 98-56770
CT/AG#: CV-98-02930-ER

*CR 87-422 ER*

UNITED STATES OF AMERICA

      Plaintiff - Appellee

  v.

RUBEN ZUNO-ARCE

      Defendant - Appellant



LODGED
CLERK, U.S. DISTRICT COURT

OCT 27 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

----------------------

     APPEAL FROM the United States District Court for the
Central District of California, Los Angeles .

     THIS CAUSE came on to be heard on the Transcript of the
Record from the United States District Court for the
Central District of California, Los Angeles
and was duly submitted.

     ON CONSIDERATION WHEREOF, It is now here ordered and
adjudged by this Court, that the judgment of the said
District Court in this cause be, and hereby is AFFIRMED.

Filed and entered  April 10, 2001



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

OCT 27 2003

by:
     Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>RUBEN ZUNO-ARCE,<br>*Defendant-Appellant.* | No. 98-56770<br><br>D.C. No.<br>CV-98-02930-ER<br>CR-87-00422-ER<br><br>ORDER |

Appeal from the United States District Court
for the Central District of California
Edward Rafeedie, District Judge, Presiding

Argued and Submitted
February 15, 2000—Pasadena, California

Filed April 19, 2000
Amended April 10, 2001

Before: James R. Browning, Alfred T. Goodwin, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Browning

---

## SUMMARY

---

### Criminal Law and Procedure/Habeas Corpus

The court of appeals affirmed a judgment of the district court. The court held that on federal habeas corpus, a new circuit rule's deadline for seeking expansion of issues covered by a certificate of appealability (COA) may be applied to cases pending on the rule's effective date.

4479

Based in part on testimony by Hector Cervantes-Santos, appellant Ruben Zuno-Arce was convicted of federal crimes. However, Zuno-Arce won a new trial.

On retrial in 1992, Cervantes-Santos did not testify. The government primarily relied on the testimony of new witnesses Jorge Godoy-Lopez and Rene Lopez-Romero. Zuno-Arce was convicted. The Ninth Circuit affirmed, issuing its mandate on April 7, 1995. In October, the Supreme Court denied Zuno-Arce's certiorari petition. The Ninth Circuit's mandate was never recalled or stayed.

Between July 1, 1997 and May 6, 1998, Cervantes-Santos twice recanted and reaffirmed his trial testimony.

On October 29, 1997, Zuno-Arce moved for a new trial and an evidentiary hearing based on Cervantes-Santos's declaration and newly discovered evidence. He claimed that the government had withheld exculpatory (*Brady*) evidence and knowingly presented false evidence (the testimony of Godoy-Lopez and Lopez-Romero) during the second trial.

The district court ruled that Zuno-Arce's motion was untimely because it was filed more than two years from April 7, 1995, the date of the Ninth Circuit's mandate.

At Zuno-Arce's request, the district court construed his motion for a new trial as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Applying the AEDPA's one-year statute of limitations for § 2255 motions based on newly discovered evidence, the court concluded that Zuno-Arce had to show that the facts underlying his claims could not have been discovered before October 30, 1996, one year before the date of his motion. The court also directed Zuno-Arce to file his § 2255 forms by a date certain.

When Zuno-Arce filed the § 2255 forms, he added two claims—double jeopardy and ineffective assistance of counsel

—that were not part of his motion for a new trial. He did not seek leave to amend his petition to add the claims. At the evidentiary hearing, Cervantes-Santos reaffirmed his trial testimony.

The district court ruled that because Zuno-Arce failed to seek leave of court before amending his motion, the double jeopardy and ineffective assistance claims were not properly presented, and the court would not consider them. In addition, the court concluded that Zuno-Arce could not avoid application of the AEDPA's one-year statute of limitations because he failed to make a colorable showing of factual innocence.

As to whether the new evidence presented in Zuno-Arce's motion was time-barred, the district court determined that nearly all of it could have been discovered before October 30, 1996 through the exercise of due diligence. Accordingly, the court dismissed the parts of the motion that relied on that evidence.

The district court also rejected Zuno-Arce's claim based on alleged perjury by Godoy-Lopez and Lopez-Romero on the ground that nearly all of the supporting evidence was time-barred, and the remaining evidence was insufficient even to warrant an evidentiary hearing.

Finally, the district court denied Zuno-Arce's *Brady* claims on the grounds that most of them relied on facts from outside the statute of limitations; were unsupported by the evidence or based on Cervantes-Santos's unreliable recantation; and charged the government with failing to disclose evidence that was immaterial to Zuno-Arce's case.

Zuno-Arce filed a notice of appeal and requested a COA as to all issues presented in his motion.

The COA was limited to the sole issue of whether the AEDPA's one-year statute of limitations applies to "time-

barred" facts offered solely to trigger an evidentiary hearing. As to the other issues raised by Zuno-Arce, the court concluded that the COA could not include them because he failed to make a substantial showing of the denial of a constitutional right.

In his brief, Zuno-Arce challenged conclusions and rulings of the district court that were not covered by the COA. The government objected that those issues could not be considered because Ninth Circuit Rule 22-1 requires a party who wants to broaden a partial COA to file a motion within 35 days of the date of the partial COA.

Zuno-Arce argued that Rule 22-1 should not apply to him because he filed his notice of appeal before the Rule's effective date, and the decisional rule in effect at that time (*Cruz-Mendoza*) allowed him to raise uncertified issues on appeal by briefing them.

[1] As a general matter, rules of appellate procedure apply to pending appeals to the extent that their application is just and practicable.

[2] A statute does not operate retroactively merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law. Circuit Rule 22-1 did not change the legal effect of anything that Zuno-Arce did before its enactment. Rather, it placed a prospective procedural requirement on him. When he attempted to broaden his COA in his brief, Circuit Rule 22-1 had long since taken effect. [3] There was no compelling reason to apply *Cruz-Mendoza* and treat Zuno-Arce's brief as a motion for an expanded COA.

[4] When a prisoner files a § 2255 motion, the district court must grant an evidentiary hearing, unless the motion and the files and records in the case conclusively show that the prisoner is entitled to no relief. Zuno-Arce alleged that Godoy-

Lopez and Lopez-Romero lied at his 1992 trial. The one-year statute of limitations began to run on the AEDPA's effective date, April 23, 1996, and expired before Zuno-Arce filed his motion in October 1997.

[5] Zuno-Arce's motion was timely only insofar as it qualified under one of the exceptions to the AEDPA's limitation period. To prevail, Zuno-Arce had to prove his claim through facts that he could have discovered only in the year before he filed his § 2255 motion. Only evidence that would have demonstrated the possibility of the existence of such newly discovered evidence was relevant to whether he was entitled to an evidentiary hearing.

[6] Even assuming that the district court was required to consider time-barred parts of the record, the court did not abuse its discretion in denying an evidentiary hearing. [7] The materials that the court did consider were insufficient to warrant an evidentiary hearing. The material the court refused to consider was insufficient to establish that a hearing was required because it did not suggest that newly discovered evidence of the sort that would be admissible on the merits of a § 2255 motion might be unearthed at a hearing.

Judge Browning dissented, writing that the application of Circuit Rule 22-1 to Zuno-Arce was not just and practical because Zuno-Arce's COA was partially denied more than 35 days before Circuit Rule 22-1 took effect.

## COUNSEL

Kenneth M. Miller, Law Office of Kenneth M. Miller, Santa Ana, California, for the defendant-appellant.

Lawrence Ng, Assistant United States Attorney, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

## ORDER

The opinion in *United States v. Zuno-Arce*, 209 F.3d 1095 (9th Cir. 2000), decided on April 19, 2000, is amended to include the attached dissent.

## OPINION

GRABER, Circuit Judge:

Defendant Ruben Zuno-Arce is in custody following his 1992 conviction stemming from the kidnapping and murder of DEA Agent Enrique Camarena and his pilot, Alfredo Zavala-Avelar. Defendant appeals the district court's denial of his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. On de novo review, *see United States v. Span*, 75 F.3d 1383, 1386 (9th Cir. 1996), we affirm.

Defendant was a member of a drug cartel centered in Guadalajara, Jalisco, Mexico. In 1990 he was tried, along with several co-defendants, on various charges arising from the kidnapping and murder of Camarena and Zavala-Avelar. Defendant was convicted, in part because of the testimony of Hector Cervantes-Santos, an informant who testified at the trial against several members of the cartel. However, the district court granted Defendant a new trial because of an inappropriate comment during the government's closing argument. This court affirmed the grant of a new trial in an unpublished opinion. *See United States v. Zuno-Arce*, 958 F.2d 380 (9th Cir. 1992).

On retrial, in 1992, Defendant was found guilty of conspiring to commit violent crimes in aid of a racketeering enterprise, 18 U.S.C. § 1959(a)(5); committing violent crimes in aid of a racketeering enterprise, 18 U.S.C. § 1959(a)(1), (2); conspiring to kidnap a federal agent, 18 U.S.C. § 1201(c);

and kidnapping a federal agent, 18 U.S.C. § 1201(a)(5). Cervantes-Santos did not testify at Defendant's second trial. Instead, the government primarily relied on the testimony of two witnesses who had not testified at Defendant's first trial, Jorge Godoy-Lopez and Rene Lopez-Romero. On March 23, 1993, the district court sentenced Defendant to life in prison on each of the kidnapping counts, plus 10 years in prison on each of the racketeering counts.

This court affirmed on direct appeal on January 11, 1995. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1422 (9th Cir. 1995). The mandate issued on April 7, 1995. In October 1995, the Supreme Court denied Defendant's petition for a writ of certiorari. *See Zuno-Arce v. United States*, 516 U.S. 945 (1995). The mandate was never stayed or recalled by this court or by the Supreme Court.

On July 1, 1997, Cervantes-Santos stated in a declaration that he had invented testimony to implicate Defendant in the 1990 trial, at the instruction of prosecutors and DEA agents. However, on January 16, 1998, Cervantes-Santos repudiated that recantation: In a videotaped interview with DEA agents, Cervantes-Santos stated that he had recanted under pressure from Defendant and Manuel Bartlett-Diaz, Governor of the State of Puebla, Mexico. He then thought better of that recantation and, on March 8, 1998, reaffirmed his original recantation in a conversation with a defense investigator. On May 6, 1998, he reversed field again and denied having reaffirmed the recantation. Cervantes-Santos' changes of heart are described more fully in the district court's published opinion in this case. *See United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1093 (C.D. Cal. 1998).

On October 29, 1997, Defendant filed a motion for new trial under Rule 33 of the Federal Rules of Criminal Procedure, based on Cervantes-Santos' declaration and other purportedly "newly discovered evidence." In his motion, Defendant also requested an evidentiary hearing. The claims

4486            UNITED STATES v. ZUNO-ARCE

in Defendant's motion fell into two general categories: claims that the government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and claims that the government knowingly presented false evidence in Defendant's second trial, namely the testimony of Godoy-Lopez and Lopez-Romero, in violation of *Mooney v. Holohan*, 294 U.S. 103 (1935), and *Napue v. Illinois*, 360 U.S. 264 (1959).

On March 30, 1998, the district court concluded that Defendant's motion for a new trial was untimely under *United States v. Cook*, 705 F.2d 350, 351 (9th Cir. 1983). In *Cook*, this court held that the two-year statute of limitations for motions for new trial based on newly discovered evidence runs from the date on which the "appellate court issues its mandate of affirmance." *Id.*[1] The district court noted that *Cook* applies even in a case in which a defendant has filed a petition for a writ of certiorari, provided that the mandate has not been stayed or recalled. *See id.* The mandate in Defendant's case issued on April 7, 1995, and Defendant filed his new trial motion more than two years later. Accordingly, the district court concluded that the motion was filed too late. Defendant does not appeal that ruling.

At Defendant's request, the district court then construed the motion as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The court noted that, because the motion was filed after April 23, 1996, it was subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which contains a one-year statute of limitations for

---

[1]At the time of the district court's ruling, Rule 33 provided that a motion based on newly discovered evidence could "be made only before or within two years after final judgment." After the district court ruled on Defendant's motion, Rule 33 was amended to provide that such a motion could "be made only within three years after the verdict or finding of guilty." The effective date of that amendment was December 1, 1998, and the parties do not suggest that the new statute of limitations is relevant in this case.

§ 2255 motions. *See* 28 U.S.C. § 2255. For motions based on newly discovered evidence, the statute of limitations begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4). In light of that one-year limitation period, the court declared that Defendant would be required to demonstrate that the facts supporting his claims could not have been discovered before October 30, 1996, one year before Defendant filed his motion.

In its order, the district court also required Defendant "to file and serve the § 2255 forms required by local rule 26 no later than April 10, 1998." When Defendant filed those forms, he added two claims — double jeopardy and ineffective assistance of counsel — that were not part of his motion for new trial. Defendant never sought leave of the district court to amend his petition to add those claims.

On July 30, 1999, the district court granted the government's motion to exclude the results of a polygraph examination that Defendant had offered to bolster the credibility of Cervantes-Santos' recantation. On July 31, August 3, and August 10, 1998, the district court held an evidentiary hearing to address Cervantes-Santos' recantation. During that hearing Cervantes-Santos reaffirmed under oath his 1990 trial testimony.

After receiving further briefing from the parties, the district court dismissed Defendant's motion in part and denied it in part in a published opinion filed August 18, 1998. *See Zuno-Arce,* 25 F. Supp. 2d at 1087. The court first concluded that, under Federal Rule of Civil Procedure 15(a), Defendant was required to seek leave of the court before amending his motion, because the government already had filed an opposition to the motion. Because Defendant never sought leave to amend, but unilaterally added his claims of ineffective assistance and double jeopardy, the court concluded that those

claims were not properly before it and refused to consider them.[2] *See id.* at 1096, 1113.

The district court next concluded that, under *Schlup v. Delo*, 513 U.S. 298 (1995), AEDPA's one-year statute of limitations would not apply to Defendant's claims if Defendant could avail himself of the "miscarriage of justice gateway" by making a "colorable showing of factual innocence." *Zuno-Arce*, 25 F. Supp. 2d at 1101-02. However, after analyzing the evidence presented at trial and Defendant's "newly discovered evidence" — including evidence that fell outside AEDPA's statute of limitations — the court held that Defendant had failed to make a satisfactory showing of actual innocence and, accordingly, was not entitled to use the "miscarriage of justice" gateway. *Id.* at 1110. The court concluded that Defendant's new evidence was impeachment evidence that "merely confirms what was already known to the jury during *Zuno II* — that Godoy-Lopez and Lopez-Romero were no angels." *Id.* Defendant had not "presented any evidence of the type identified in *Schlup* as reliable 'actual innocence' evidence" or otherwise made a colorable showing of innocence and, accordingly, could not escape AEDPA's statute of limitations. *Id.*

The court then considered the extent to which Defendant's newly discovered evidence was barred by AEDPA's statute of limitations. The court concluded that nearly all the evidence presented in Defendant's motion could have been discovered before October 30, 1996, through the exercise of due diligence. *See id.* at 1110-13. The court dismissed the sections of the motion that relied on that "time-barred" evidence. *See id.* at 1110.

Next, the district court rejected Defendant's *Mooney/Napue* claim, which was based on Defendant's assertion that Godoy-

---

[2]The district court also rejected both claims on the merits, in the alternative. *See Zuno-Arce*, 25 F. Supp. 2d at 1096-97, 1113-15.

Lopez and Lopez-Romero had testified falsely at his second
trial. The court stated that nearly every piece of evidence on
which Defendant relied in that claim was time-barred. *See id.*
at 1117. The remaining evidence was, in the court's estima-
tion, "insufficient to even warrant an evidentiary hearing on
this issue." *Id.*

Finally, the court rejected Defendant's many *Brady* claims.
First, the court noted that most of those claims were based on
facts from outside the statute of limitations and, accord⌢ly,
were time-barred. *See id.* at 1118 n.46. Defendant's remaining
claims were that the government had failed to disclose: (1)
promises of $100,000 to Godoy-Lopez and Lopez-Romero for
their trial testimony; (2) information regarding DEA Agent
Berrellez's recruitment of witnesses; (3) an unredacted copy
of a 1992 DEA report; (4) Cervantes-Santos' false testimony
against Defendant during Defendant's first trial; (5) a promise
of $200,000 to Cervantes-Santos for that false testimony; and
(6) payments to Cervantes-Santos and his family before and
during Defendant's first trial in excess of amounts revealed at
the time. The district court rejected those claims on the
grounds that they were unsupported by evidence; that they
were based on Cervantes-Santos' recantation which, the court
concluded, was unreliable; and that they charged the govern-
ment with failing to disclose evidence that was not ma⌢al
to Defendant's case. *See id.* at 1118-24.

Defendant moved for reconsideration, for leave to conduct
discovery in support of his motion, and for leave to amend his
motion to include his claims of ineffective assistance and dou-
ble jeopardy. The district court denied the motion in its
entirety. Defendant then filed a notice of appeal from the
denial of his § 2255 motion and a request for a certificate of
appealability (COA) as to all the issues that he had presented
in his motion.

On October 29, 1998, the district court issued a partial
COA. The court granted the COA as to a single issue: whether

AEDPA's one-year statute of limitations operates to exclude "time-barred" facts offered solely to trigger an evidentiary hearing. As to all the other issues in Defendant's motion, the court denied Defendant's request for a COA, concluding that Defendant had not made a "substantial showing of the denial of a constitutional right," which is required for a COA to issue under AEDPA. 28 U.S.C. § 2253(c)(2).

Defendant filed his opening brief on appeal on September 9, 1999. In his brief, Defendant assigned error to a number of conclusions and rulings as to which the district court *had not* granted a COA. In its responding brief, the government argued that those issues are not properly before the panel, because Ninth Circuit Rule 22-1(d) requires a party who is seeking to broaden a partial COA to file a motion to broaden the COA with a motions panel of this court within 35 days of obtaining the partial COA. In his reply brief, Defendant argued that Rule 22-1(d) should not apply in his case, but also filed a motion to broaden his COA. The date of that motion was December 22, 1999.

I.   *Ninth Circuit Rule 22-1(d) Applies in this Case*

Under 28 U.S.C. § 2253(c)(1), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals" from the final order in a § 2255 proceeding. This court has held that 28 U.S.C. § 2253(c)(3) "limits the issues that may be considered on appeal to those specified in a COA." *Hiivala v. Wood*, 195 F.3d 1098, 1103 (9th Cir. 1999).

This court has wrestled with the question of how a party who wishes to expand a partial COA should attempt to do so. In *United States v. Cruz-Mendoza*, 147 F.3d 1069, 1074 (9th Cir. 1998) (*Cruz-Mendoza I*), the court held that, "in the interest of efficiency, where a district judge has issued a COA on some but not all the issues, we will treat the briefing of an uncertified issue as a request for a COA and first decide

whether one should issue." (Footnote omitted.) This court
then adopted Circuit Rule 22-1, which, as noted, had an effec-
tive date of January 1, 1999. In anticipation of the new rule's
taking effect, the *Cruz-Mendoza* panel amended its opinion on
December 31, 1998. *See United States v. Cruz-Mendoza*, 163
F.3d 1149 (1998) (*Cruz-Mendoza II*). The panel deleted the
above-quoted passage and, in its place, inserted a section
explaining the new circuit rule. *See id.* at 1149-50. The panel
also stated that there was no need to "decide whether this rule
should be applied to [the defendant's] case, which had been
argued and initially decided before the rule's adoption,
because the defendant had failed to demonstrate that he had
been denied a constitutional right. *Id.* at 1149.

Circuit Rule 22-1(d) provides, in part:

> If the district court denies a certificate of appeala-
> bility in part, the court of appeals will not consider
> uncertified issues unless petitioner first seeks, and
> the court of appeals grants, broader certification.
> *Petitioners desiring broader certification must file,
> in the court of appeals, a separate motion for
> broader certification, along with a statement of rea-
> sons why a certificate should be granted as to any
> issue(s) within thirty-five days of the district court's
> entry of its order* denying a certificate of appeal-
> ability.

(Emphasis added.) The Advisory Committee Note accompa-
nying the rule states that "[m]otions for broader certification
will be decided by motions panels" except in capital cases.
The Advisory Committee Note also states that, if "a party
wishes to ask the merits panel to broaden the scope of the
appeal beyond what was allowed by a motions panel of this
court, such a motion . . . may be filed in the court of appeals
promptly after the completion of briefing."

Defendant argues that Rule 22-1 does not apply in his case,
because he filed his notice of appeal before the rule's effec-

tive date. Applying the rule in his case, he contends, would violate the presumption against retroactive application of statutes by robbing him of a right that he had at the time he filed his notice of appeal, namely the right to seek to broaden his COA simply by filing a brief on the merits of the uncertified issues. Defendant contends that he should be able to rely on the rule from *Cruz-Mendoza I*, and thus be entitled to seek to expand his COA without filing a motion, even though the section of that opinion on which he relies was withdrawn nine months before he filed his opening brief in this case.

[1] Defendant's argument on that point is unpersuasive. As a general matter, rules of appellate procedure apply to pending appeals to the extent that their application is just and practicable. Amendments and additions to the Federal Rules of Appellate Procedure are accompanied by orders so stating. *See, e.g.*, Order of April 23, 1996, West Federal Civil Judicial Procedure and Rules 442 (1999) ("[T]he foregoing amendments . . . shall govern all proceedings in appellate cases thereafter commenced and, insofar as just and practicable, all proceedings in appellate cases then pending."). This court's meager case law on the issue of *circuit* rules is to the same effect. *See Volkswagenwerk Aktiengesellschaft v. Church*, 413 F.2d 1126, 1127-28 (9th Cir. 1969) (applying a new procedural rule to a pending appeal where application of the rule would not work an injustice). Further, in *Hiivala*, this court stated: "Circuit Rule 22-1 and the Advisory Committee Note became effective before this case was submitted for decision. It would appear, therefore, that we should apply the Rule to Hiivala's appeal." 195 F.3d at 1103. Although that statement from *Hiivala* is not a holding, it supports application of Rule 22-1 in this case.

[2] Defendant's argument that applying the rule to his appeal would have a "retroactive" effect is similarly unpersuasive. "A statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in

prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (citation omitted). Rather, the inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. Here, Circuit Rule 22-1 did not change the legal effect of anything that Defendant did before its enactment. Rather, it placed a prospective procedural requirement on him. Defendant argues as if he already had filed his opening brief in reliance on *Cruz-Mendoza I* when Circuit Rule 22-1 took effect. But he had not; nor had he requested in any other manner that this court broaden his COA. When he first attempted to broaden his COA, in his September 1999 opening brief, Circuit Rule 22-1 long since had taken effect.

[3] In sum, we conclude that Circuit Rule 22-1 applies in this case. New rules of appellate procedure, including circuit rules, apply in pending cases to the extent that their application is just and practicable. Defendant has not argued persuasively that application of Circuit Rule 22-1(d) in this appeal would not satisfy those standards. There is no compelling reason, legal or equitable, to apply the superseded rule from *Cruz-Mendoza I* and treat Defendant's opening brief as a motion for an expanded COA.

## II.  *Defendant's Rule 22-1(d) Motion Was Not Timely*

Defendant finally attempted to comply with Rule 22-1(d) by filing a motion for an expanded COA on December 22, 1999. That motion is untimely.

As noted, Rule 22-1(d) states that a party seeking to broaden a COA "must file . . . a separate motion for broader certification . . . within thirty-five days of the district court's entry of its order denying a certificate of appealability." Here, however, the district court's order was entered on October 29, 1998, more than a month before the rule's effective date, and the parties agree that the 35-day filing period cannot begin to run from the entry of the court's order.

The government argues that the filing period should run from January 1, 1999, the date when the rule went into effect, and that the filing period therefore expired on February 5, 1999. As support for that argument, the government cites *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1286-87 (9th Cir. 1997), in which this court held that limitation periods contained in AEDPA begin to run from the statute's effective date for convictions that became final before the statute's effective date.

Defendant counters that the government's argument would result in an unjust application of the rule, because Defendant's counsel was not appointed until February 16, 1999. That argument does not aid Defendant; its logical result is that Defendant's 35-day filing period should have begun to run on February 16, in which case it would have expired on March 22, nine months before he filed his motion.

More fundamentally, Defendant appears to argue that his newly appointed counsel should have been able to ignore Rule 22-1 and rely on the old rule from *Cruz-Mendoza I*, which was withdrawn before counsel even was appointed. That argument is somewhat puzzling. Defendant does not suggest that counsel was unaware of Rule 22-1 or that he believed that *Cruz-Mendoza I* remained the law of the circuit on this point even after it was withdrawn. Indeed, it is clear that Defendant knew of the requirements of Rule 22-1 at the latest on September 9, 1999, the date of his opening brief, because he discusses the rule in that brief. However, Defendant did not attempt even at that time to comply with the rule by filing a motion for an expanded COA.

Defendant finally filed a motion under Rule 22-1(d) on December 22, 1999. In that motion, he repeats his argument that the rule should not apply in his case and argues that he reasonably could have believed that a motion was unnecessary. However, he also acknowledges that *Hiivala* suggests that the rule applies in pending cases, and he appears to state

that he is filing his motion to comply with the *Hiivala* court's suggestion.

Thus, it appears that Defendant is arguing that the triggering event for his motion was the publication of *Hiivala*. The implication of that argument is that Defendant should have been given 35 days after *Hiivala* was published within which to file his motion, because he had no way to know before that date that a motion was required. A fatal difficulty with Defendant's argument is that *Hiivala* was published on September 13, 1999. Thus, even if Defendant is correct that his 35-day filing deadline runs from *Hiivala's* publication, his motion still is untimely, because he did not file it until 100 days after that case issued.

As noted, Rule 22-1(d) states that a motion to broaden a COA *must* be filed within 35 days. Here, even accepting any of Defendant's suggestions as to when that 35-day period began to run, the motion is untimely. Because Defendant has failed to comply with the express terms of Rule 22-1(d), or to provide a compelling reason for his noncompliance, we decline to address his motion to broaden the COA. As a consequence, we decline to address the issues in Defendant's brief that fall outside the limited COA that the district court granted; appeal from the denial of a § 2255 motion is strictly limited to the issues specified in the COA. *See Hiivala*, 195 F.3d at 1103.

III.  *The "Time-Barred" Evidence That Defendant Offered Did Not Require an Evidentiary Hearing*

The district court granted Defendant a COA as to only one issue. In its partial certification, the court stated: "While it is well settled that the one-year period of limitation [in AEDPA] operates to exclude evidence when the Court considers the merits of § 2255 claims, it is a first-impression issue as to whether the period of limitation operates to exclude specific facts that the Defendant believes entitle[ ] him to an evidenti-

ary hearing." As noted, the district court held an evidentiary hearing to address some of Defendant's "newly discovered evidence," most notably Cervantes-Santos' recantation. However, the court declined to hold any further evidentiary hearing on Defendant's *Mooney/Napue* claim, concluding that the timely evidence supporting Defendant's request for a hearing "constitutes no more than conclusory allegations." *Zuno-Arce*, 25 F. Supp. 2d at 1118.

[4] When a prisoner files a motion under 28 U.S.C. § 2255, the district court must grant an evidentiary hearing to determine the validity of the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also, e.g., United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994). A district court's decision to grant or deny an evidentiary hearing is reviewed for abuse of discretion. *See United States v. Andrade-Larrios*, 39 F.3d 986, 991 (9th Cir. 1994). Defendant's *Mooney/Napue* claim alleges that Godoy-Lopez and Lopez-Romero lied at his 1992 trial. The standard one-year statute of limitations for a § 2255 motion based on this claim — which ran from "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(1) — began to run on AEDPA's effective date, April 23, 1996, and expired before Defendant filed his motion in October 1997. *See Beeler*, 128 F.3d at 1286-87 (holding that limitation period contained in AEDPA begins to run from the statute's effective date for convictions that became final before the statute's effective date).

[5] Accordingly, Defendant's motion is timely only insofar as it qualifies under one of the exceptions to AEDPA's standard limitation period. The only arguably applicable exception is the one contained in § 2255(4): "The limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." To prevail, Defendant must prove his claim through facts that he could have discovered

only in the year before he filed his § 2255 motion. Only evidence that would demonstrate the possibility of the existence of such "newly discovered evidence" is relevant to the question whether he was entitled to an evidentiary hearing. In other words, Defendant is entitled to an evidentiary hearing if, but only if, his motion and the record give the court some specific reason to believe that such "new" evidence exists.

[6] In its COA, the district court posed the question whether it was required to consider parts of the record that on their face, fell outside AEDPA's statute of limitations in deciding whether to hold an evidentiary hearing. We need not resolve that broad question to resolve this appeal. Even assuming that the district court *was* required to consider those "time-barred" parts of the record, the district court did not abuse its discretion in denying an evidentiary hearing.

[7] First, we agree with the district court's conclusion that the materials that the court *did* consider — Cervantes-Santos' repudiated recantation and the dismissal of the Godinez-Cervantes prosecution — were insufficient to warrant an evidentiary hearing. *See Zuno-Arce*, 25 F. Supp. 2d at 1118. Nor does the material that the district court refused to consider necessitate a hearing. That material is offered either to impeach Godoy-Lopez and Lopez-Romero or to challenge specific statements that they made at trial. Taken together, that material is insufficient to establish that a hearing is required, because nothing to which Defendant points specifically suggests that "newly discovered evidence" of the sort that would be admissible on the merits of Defendant's § 2255 motion might be unearthed at a hearing. Defendant has alleged that the government violated *Mooney* and *Napue* in 1992 and has presented material in support of that allegation, most of which cannot be considered under AEDPA's statute of limitations. What he has *not* done is present anything to demonstrate the possible existence of timely evidence to support his allegations. In the absence of anything more concrete than the speculation — present in every case — that new evi-

dence *might* exist, we decline to order an evidentiary hearing on Defendant's *Mooney/Napue* claim.

Defendant's remaining arguments address issues that manifestly are outside the district court's partial COA. Accordingly, we decline to address them.[3]

AFFIRMED.

---

BROWNING, Circuit Judge, dissenting:

I respectfully dissent from Parts I and II. The members of the panel agree that new rules of appellate procedure apply to pending appeals only to the extent their application is just and practicable. *See, e.g.*, Order of April 23, 1996, West Federal Civil Judicial Procedure and Rules 442 (1999).[1]  That standard is not met here. Zuno-Arce's certificate of appealability (COA) was partially denied more than 35 days before Circuit Rule 22-1(d) took effect. It was therefore not "practicable" for him to comply with the express terms of the new rule. To require him to do so would be "unjust." As Circuit Rule 22-1(d) did not apply to his pending case, Zuno-Arce correctly relied on the old rule from *Cruz-Mendoza I. See Solis v. Garcia*, 219 F.3d 922 (9th Cir. 2000) (per curiam) (treating petitioner's briefing of uncertified issues as a request to

---

[3]Specifically, we decline on that ground to address Defendant's contentions concerning alleged violations of *Brady*; ineffective assistance of counsel; double jeopardy; the district court's denial of leave to amend the motion; discovery; the "actual innocence gateway"; and any other arguments subsumed within Defendant's discussion of those issues.

[1]The majority's reliance on *Volkswagenwerk Aktiengesellschaft v. Church*, 413 F.2d 1126 (9th Cir. 1969), is misplaced. In that case, we *declined* to apply a new procedural rule to a pending appeal where the party, relying on the previous rule, filed an exception to the cost bill one day late. We applied the previous rule "to avoid injustice." *Id.* at 1127-28.

expand the COA where COA partially denied more than 35 days before Rule's effective date).[2]

Whether Zuno-Arce should nonetheless have attempted to "substantially comply" with the new rule by filing a separate motion for broader certification within some court-created "grace period" is a separate question. Since no "grace period" was established in law, this question is governed not by the "just and practicable" standard, but by the "actual notice" rule of Fed.R.App.P. 47(b). Under Rule 47(b), "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless the alleged violator has been furnished in the particular case with *actual notice* of the requirement." Fed.R.App.P. 47(b) (emphasis added).

No requirement exists in federal law, federal rules, or the local circuit rules that petitioners whose COAs were partially denied more than 35 days before Circuit Rule 22-1(d)'s effective date must file a motion to expand their COA within a specified "grace period." Indeed, Circuit Rule 22-1(d), the only federal or circuit rule to impose a 35-day filing period for expanding COAs,[3] is silent on its applicability to pending cases. Neither is there any general rule, recognized by circuit or federal rule, that litigants who can not practicably comply

---

[2]Although *Solis* did not discuss Circuit Rule 22-1(d), supplemental briefing on the rule's applicability to the pending appeal was ordered and considered by the panel. The panel necessarily determined Rule 22-1(d) did not apply.

[3]The Federal Rules of Appellate Procedure permit the courts of appeals to consider the notice of appeal as a direct request to expand the COA. *See* Fed.R.App.P. 22(b) ("If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."); *see also Slack v. McDaniel*, 529 U.S. 473 (2000) ("[T]he Court of Appeals should have treated the notice of appeal as an application for a COA."); *Solis v. Garcia*, 219 F.3d 922 (9th Cir. 2000) ("Consistent with *Slack*, we treat petitioner's brief on uncertified issues in this appeal as a request to expand the COA issued by the district court.").

with a filing period established by a local procedural rule that became effective while their appeals were pending must nonetheless substantially comply with the new rule within a judicially-prescribed "grace period."[4] If the majority desires such a rule, it should propose an amendment to the Circuit Rules Committee to supercede the actual notice rule of Fed.R.App.P. 47(b).

No such rule is prescribed by circuit caselaw. *Cruz-Mendoza II*, 163 F.3d 1149 (9th Cir. 1998), merely replaced a sentence from *Cruz-Mendoza I*, 147 F.3d 1069, 1974 (9th Cir. 1998), with the text of Circuit Rule 22-1(d); it provided no analysis nor did it address the rule's applicability to pending cases. *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999), is similarly unhelpful: it did not even involve Circuit Rule 22-1(d) or its mandatory 35-day filing period.[5] The majority's

---

[4]Analogy to the *Beeler* period is misplaced. Different standards apply to procedure imposed by statute and local rule. While a judicially-crafted "grace period" is clearly appropriate with regard to *statutory* time limits, *see Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283 (9th Cir. 1997); *Jones v. United States*, 121 F.3d 1327 (9th Cir. 1997), it is not appropriate with regard to *local rules* where a party loses rights because it reasonably construed a local rule in a way the court of appeals ultimately rejected. *See* Fed.R.App.P. 47(a)(2) ("A local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement.").

The reasonableness of Zuno-Arce's interpretation of Circuit Rule 22-1(d) is underscored by *Mathis v. Ducharme*, 1999 U.S.App.LEXIS 5186, at 2 (9th Cir. Mar. 15, 1999) (unpublished), in which a panel of this court held that the new rule "*only applies to appeals filed after 1/1/1999*," the rule's effective date. *Id.* ("Ninth Circuit Rule 22-1(d) now requires petitioners desiring a broader certification to file a separate motion. This new rule, however, only applies to appeals filed after 1/1/1999."). A Ninth Circuit panel also declined to apply Rule 22-1(d) in a case procedurally identical to this case in *Solis v. Garcia*, 219 F.3d 922 (9th Cir. 2000).

[5]As Hiivala's request for a COA was denied *in full* by the district court, his appeal would have been controlled by Circuit Rule 22-1(c), which imposes no filing deadline nor motion requirement. In fact, even the sug-

attempt to establish these cases as triggering events for Rule 22-1(d)'s 35-day filing deadline must fail under Fed.R.App.P. 47(b).

Fed.R.App.P. 47(b) allows us to apply Circuit Rule 22-1(d) to Zuno-Arce only if he was furnished with "actual notice" of the proposed requirement. Zuno-Arce was not given such notice.[6]

Because federal law imposes no trigger date for application of Rule 22-1(d)'s 35-day filing period to pending cases and because Zuno-Arce did not have "actual notice" that any such date would be applied in his case, Fed.R.App.P. 47(b) prohibits the panel from imposing a new procedural requirement on Zuno-Arce that works a disadvantage to him. To do so would

---

gestion that Circuit Rule 22-1 might apply to Hiivala (or that Hiivala actually "complied" with it) was clearly erroneous, as all relevant events and full briefing by both parties occurred before January 1, 1999, the Rule's effective date. Rather, Hiivala, like Zuno-Arce, relied on Fed.R.App.P. 22(b).

[6] The majority suggests Zuno-Arce "knew" of the 35-day requirement "at the latest" on September 9, 1999, when he filed his opening brief, because he mentions the rule, and on December 20, 1999, when he filed a motion to expand his COA in reliance on Hiivala. Plainly, knowledge of the rule, which is silent on its applicability to pending cases, do   ot provide actual notice that the rule will be applied to pending cases that fail the "just and practicable" test. Moreover, even assuming Hiivala provided actual notice that Rule 22-1(d) would be applied to cases in which COAs were partially denied more than 35 days before the rule's effective date, Hiivala was not published until after Zuno-Arce filed his opening brief. It would be unreasonable to find Zuno-Arce had such notice until the Government filed its response brief on December 6, 1999, in which Hiivala was raised for the first time. Once Zuno-Arce was put on notice of Hiivala, he filed a motion to expand his COA within 14 days.

Zuno-Arce never "argued," as the majority suggests, that any event "triggered" the 35-day filing period under Rule 22-1(d) — e.g., appointment of counsel, publication date of Hiivala. To the contrary, he at all times insisted that Rule 22-1(d) did not apply to his case and thus there was no need to apply any 35-day grace period.

be to sanction Zuno-Arce for failing to predict how a Circuit Rule, with no instructions for litigants regarding its applicability to pending cases and with whose terms it was impracticable to comply, would ultimately be construed by this court. Such a result is inconsistent with the "just and practicable" rule and Fed.R.App.P. 47(b).

Consistent with *Solis*, the briefing of uncertified issues in Zuno-Arce's appeal should be treated as a request to expand his partial COA. I respectfully dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY WEST GROUP—SAN FRANCISCO—(800) 888-3600

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2001 by West Group.

MOATT  44
CLOSED CJA

i

INTERNAL USE ONLY: Proceedings include all events.
98-56770 USA v. Zuno-Arce

UNITED STATES OF AMERICA            John L. Carlton, Esq.
      Plaintiff - Appellee         [COR LD NTC aus]
                                    Lawrence Ng, Esq.
                                    213/894-6968
                                    Rm. 1551
                                    [COR LD NTC aus]
                                    USLA - OFFICE OF THE U.S.
                                    ATTORNEY
                                    Criminal Division
                                    312 North Spring Street
                                    Los Angeles, CA 90012


   v.


RUBEN ZUNO-ARCE                     Kenneth M. Miller, Esq.
      Defendant - Appellant         FAX 949/496-6753
                                    949/496-0164
                                    Suite D
                                    [COR LD NTC cja]
                                    107 Avenida Miramar
                                    San Clemente, CA 92672

                                    Ruben Zuno-Arce
                                    Reg. #43203-080
                                    [COR LD NTC prs]
                                    USPB - U.S. PENITENTIARY
                                    (BEAUMONT)
                                    P.O. Box 26035
                                    Beaumont, TX 77720


Docket as of October 17, 2003 11:00 pm          Page 2   NON-PUBLIC

------------------------------

USDC, Santa Ana
Central District of California (Santa Ana)
312 North Spring Street
Los Angeles, CA 90012

------------------------------

ba