ROBERT C. BONNER
United States Attorney
ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division
ROEL C. CAMPOS
Assistant United States Attorney
Major Narcotics Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6682

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 87-422(B)-ER |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT VERDUGO-URQUIDEZ' |
| v. | ) | MOTION TO DISMISS COUNT ONE |
| | ) | OF THE INDICTMENT PURSUANT |
| RAFAEL CARO-QUINTERO, et al., | ) | TO KOTTEAKOS v. UNITED STATES, |
| | ) | 328 U.S. 740 (1946); MEMORANDUM |
| Defendants. | ) | OF POINTS AND AUTHORITIES |
| | ) | |
| | ) | |
| | ) | DATE: June 20, 1988 |
| | ) | TIME: 1:30 P.M. |

The government hereby respectfully files its opposition to defendant Verdugo Urquidez' Motion to Dismiss Count One of the Indictment Pursuant to <u>Kotteakos v. United States</u>, 328 U.S. 740 (1946).

The government's opposition is based on the attached Memorandum of Points and Authorities, and the records and files in the case.

DATED: This ___ day of May, 1988.

                              Respectfully submitted,

                              ROBERT C. BONNER
                              United States Attorney

ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division

*[signature]*

ROEL C. CAMPOS
Assistant United States Attorney
Major Narcotics Section

Attorneys for Plaintiff
United States of America

TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Table of Authorities............................................... | ii |
| MEMORANDUM OF POINTS AND AUTHORITIES............................... | 3 |
| I    INTRODUCTION............................................... | 3 |
| II   ARGUMENT................................................... | 4 |
|     A.  One Enterprise Can Include The Distribution of Different Narcotics....... | 4 |
|     B.  Two Enterprises Could Be Engaged As A Racketeering Under Section 1952B........ | 12 |
| III  CONCLUSION................................................ | 12 |

TABLE OF AUTHORITIES

PAGE(S)

Cases:

Braverman v. United States,
   317 U.S. 219 (1942) ......................................... 6

Kotteakos v. United States,
   328 U.S. 740 (1946) ......................................... 1,4,6

United Energy Owners v. United Energy Management,
   837 F.2d 356 (9th Cir. 1988) ................................ 12

United States v. Aimone,
   715 F.2d 822 (3rd Cir. 1983),
   cert. denied, 468 U.S. 1217 (1984) .......................... 12

United States v. Bagnariol,
   665 F.2d 877 (9th Cir. 1981),
   cert denied, 456 U.S. 962 (1981) ............................ 9

United States v. De Rosa,
   670 F.2d 889, (9th Circuit 1982)
   cert. denied, sub. nom,
   459 U.S. 993 1014 (1982) .................................... 9

United States v. Elliott,
   571 F.2d 880 (5th Cir. 1980) ................................ 6,10

United States v. Mallah,
   503 F.2d 971 (2nd Cir. 1974),
   cert. denied, 420 U.S. 995 (1975) ........................... 11

United States v. Tillett,
   763 F.2d 628
(4th Cir. 1985) ................................................ 7,8

Statutes:

18 U.S.C. § 1952B ............................................. 3,4,5,
                                                                7,12

18 U.S.C. § 1952B(b)(2) ....................................... 4

18 U.S.C. § 1961 .............................................. 5

TABLE OF AUTHORITIES (CONT.)

| | PAGE(S) |
|---|---|
| Statutes (Cont.): | |
| 18 U.S.C. § 1961(c) | 7 |
| 18 U.S.C. § 1961(d) | 7 |
| 18 U.S.C. § 1962(c) | 6 |
| 18 U.S.C. § 1962(d) | 6 |
| Pub.L. 91-452, § 1, 84 Stat. 922 (1970) | 5 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

Defendant Verdugo-Urquidez complains that the government has charged in count one of the indictment two separate and distinct enterprises, making the count duplicitous. (Count one charges defendants with a violation of 18 U.S.C. § 1952B, commission of a violent <u>act</u> in support of a criminal enterprise). Defendant Verdugo-Urquidez claims that the government will at best only prove that he was involved in a marijuana enterprise. He points out that in count one the government also alleges that co-defendant Felix-Gutierrez was involved in the distribution, possession and importation of cocaine, constituting a separate enterprise from the marijuana distribution enterprise in which he was involved.

What defendant Verdugo-Urquidez fails to understand is that Section 1952B permits the government to charge him as a member in an enterprise in which the different members commit different criminal activity. Section 1952B of Title 18 refers to the concept of an "enterprise engaged in racketeering activity." That enterprise can be very broad and can be composed of individuals who conduct diverse criminal activities, including the possession and distributiong of different narcotics. It does not matter that defendant Verdugo-Urquidez conducts only one line of illegal activity in the enterprise -- distribution of marijuana, while another member of the enterprise defendant Felix-Gutierrez conducts another line of illegal activity --

possession and distribution of cocaine. The common goal of the alleged enterprise is to maximize profits from narcotics activity. Both defendant Verdugo-Urquidez and defendant Felix-Gutierrez, reported to defendant Rafael Caro-Quintero, who headed the criminal enterprise charged in count one.

Defendant Verdugo-Urquidez motion should be summarily dismissed. He provides the court no relevant authority for his motion. All of the cases he cites, including <u>Kotteakos v. United States</u>, pertain only to conspiracies. Count one does not charge a conspiracy. Defendant cites no cases whatsoever that pertain to an enterprise engaged in racketeering.

II

ARGUMENT

A. <u>One Enterprise Can Include The Distribution of Different Narcotics.</u>

In count one,[1]/ the government has not charged a narcotics conspiracy. Instead, the government has charged defendant Verdugo-Urquidez with being a member of a narcotics "enterprise" engaged in "racketeering activity" under 18 U.S.C. § 1952B. The term narcotics "enterprise" is defined under 18 U.S.C. § 1952B(b)(2) as:

> Any individual, partnership, corporation, association, or legal entity, and any union or

---

[1]/ Under count 2 of the second superseding indictment, the government charges a second violation of 18 U.S.C. § 1952B and incorporates the allegations in count one, including the cocaine activity. Defendant's challenge under this motion is actually to both counts one and two.

-4-

> group of individuals associated in fact
> although not a legal entity, which is engaged
> in, or the activities of which affect:
> interstate or foreign commerce.

18 U.S.C. § 1952B states that "racketeering activity" has the same meaning set forth in the RICO statute, 18 U.S.C. § 1961. Under Section 1961, "racketeering activity" is defined as:

> The felonious manufacture, importation,
> receiving, concealment, buying, selling, or
> otherwise dealing in narcotics or other
> dangerous drugs punishable under any law of
> the United States . . .

Consequently, there is a direct anology between 18 U.S.C. § 1952B, in violent crimes in aid of racketeering, and the RICO statute, 18 U.S.C. § 1961, et al. In analyzing the terms "enterprise" and "racketeering activity", it is appropriate to examine the legislative history regarding the RICO statute and the body of case authority which has been developed in applying and interpreting the RICO statute.

It should first be emphasized that in enacting RICO, Congress intended to provide "new remedies to deal with the unlawful activities of those engaged in organized crime." Pub.L. 91-452, § 1, 84 Stat. 922 (1970). A primary concern was the single prosecution of a "multi-faced, diversified conspiracy. Until the enactment of the RICO statute traditional conspiracy law prohibited the scope of the conspiracy and was limited by reference to the agreement which defined and embraced its

-5-

objects. <u>Braverman v. United States</u>, 317 U.S. 219 (1942). As stated by the Fifth Circuit in <u>United States v. Elliott</u>, 571 F.2d 880 (1980):

> In the context of organized crime, this principle inhibited mass prosecutions because a single agreement or "common objective" cannot be inferred from the commission of highly diverse crimes by apparently unrelated individuals. RICO helps to eliminate the problem by creating a substantive offense which ties together these diverse parties and crimes.

<u>Id</u>. at 901.

In <u>Elliott</u>, defendants had been charged under RICO, 18 U.S.C. §§ 1962(c) and (d), with being members of an enterprise engaged in a pattern of racketeering activity. The racketeering activity included arson, theft of goods from interstate commerce, obstruction of justice, murder and distribution of narcotics. Each of the defendants charged did not participate in each of the predicate offenses. Defendants argued that while the indictment charged one conspiracy, the government's evidence at trial proved the existence of several conspiracies, resulting in a variance which substantially prejudiced their rights. See <u>Kotteakos v. United States</u>, 328 U.S. 740 (1946). In affirming the conviction the Court of Appeals held:

> [T]he graveman of the conspiracy charge in this case is not that each defendant agreed to

-6-

commit arson, to steal goods from interstate commerce, to obstruct justice, and to sell narcotics; rather it is that each agreed to participate, directly and indirectly, in the affairs of the enterprise by committing two or more predicate crimes. <u>Under the [RICO] statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs</u>. [Emphasis Added].

Even though the court analyzed the situation in terms of a conspiracy, the court acknowledged that under the substantive Rico charge (anologous to Section 1952B) it was irrelevant that each defendant participated in the enterprise's affairs through different and even unrelated crimes. In the case at bar, the government's evidence will demonstrate that the crimes of both defendant Verdugo-Urquidez and defendant Feliz-Gutierrez were intended to further the enterprise's affairs.

In <u>United States v. Tillett</u>, 763 F.2d 628 (4th Cir. 1985), defendants were convicted under the RICO statute, 18 U.S.C. §§ 1961(c) and (d), with being members of a narcotics enterprise engaged in a pattern of racketeering activity involving the importation and distribution of marijuana. The purpose of the enterprise was making money through the importation and distribution of marijuana. On appeal defendants argued that the

-7-

Holland-Shure narcotics operation and the Holland-Canadian narcotics operation were separate and distinct conspiracies which could not be part of a single enterprise.

In affirming the conviction, the Court of Appeals in <u>Tillett</u> held:

> Even though the financiers of the marijuana importation venture changed in 1980, the evidence showed that from 1976 through 1981, the common purpose of Holland and his financiers at any relevant time was making money in the illegal trafficking in marijuana. Aside from this direct evidence of common purpose of the participants in the marijuana importing venture, the common purpose is also shown by sufficient evidence that the operation was an ongoing organization in which the associates functioned as a continuing unit. Evidence of the ongoing nature of the organization related to the operational structure of the group. Although the faces in the group may have changed, there was substantial evidence of a structure within the group which the various associates operated according to their specific function with regard to the smuggling venture.

<u>Id.</u> at 631.

-8-

The Ninth Circuit has consistently recognized that an enterprise engaged in racketeering activity as charged under the RICO statutes quite properly can include the distribution of different narcotics. In <u>United States v. De Rosa</u>, 670 F.2d 889, 892 (9th Circuit 1982), <u>cert</u>. <u>denied</u>, <u>sub</u>. <u>nom</u>, 459 U.S. 993 and 1014 (1982), for example, the court upheld convictions under the RICO statutes that involved an enterprise whose members engaged in the distribution of cocaine as well as heroin. <u>Id</u>. at 892, fn.4. <u>See also</u> <u>United States v. Bagnariol</u>, 665 F.2d 877, 891 (9th Cir. 1981), <u>cert denied</u>, 456 U.S. 962 (1981) (court refused to limit scope of enterprise under RICO statutes and court read indictment to include acts involving extortion, bribery, mail fraud, and interstate travel in aid of racketeering; court found that each defendant, whether separately or with another defendant met with one particular agent to further the enterprise's objective). As in <u>Bagnariol</u>, the government will present evidence in this case that the head of the enterprise defendant Caro-Quintero met with defendant Verdugo-Urquidez and defendant Felix-Gutierrez to accomplish both the marijuana distribution and the cocaine distribution.

As applied to the present case, the government maintains that the "affairs of the enterprise" include the cultivation, importation and distribution of multi-ton quantities of marijuana as well as the importation and distribution of cocaine. The essential plan of the Rafael Caro-Quintero Narcotics Enterprise was to associate for the purpose of making money from trafficking in controlled substances. To that end, the evidence at trial will establish that Rafael Caro-Quintero had the role of the

-9-

corporate executive officer, the "CEO", of the narcotics enterprise. Caro-Quintero purchased the ranches for cultivating marijuana and he further hired the workers who planted and harvested the marijuana. Defendant Caro-Quintero thereafter caused the smuggling of multi-tons of marijuana into the United States through defendant Verdugo-Urquidez and co-defendant Jesus Felix-Gutierrez, who acted as wholesale distributors for Caro-Quintero.

Both defendant Verdugo-Urquidez and co-defendant Felix-Gutierrez's distributed hundreds of millions of dollars worth of marijuana for Caro-Quintero. Verdugo-Urquidez's and Felix's narcotics activities were related to the affairs of the narcotics enterprise in that: (1) Caro-Quintero was their common source of marijuana; (2) their narcotics activities were proximate in time, 1983-84; (3) they both distributed marijuana in the Southern California area; (4) they both utilized common narcotics associates to facilitate the distribution of the marijuana; and (5) Verdugo-Urquidez and Felix-Gutierrez were further associated with one another during this period of time.

As to trafficking in cocaine, the government need only prove that the cocaine distribution was related to the affairs of the narcotics enterprise. The cocaine distribution need not be directly related to defendant Verdugo's marijuana activities.[2/] The evidence at trial will show that the Rafael

---

2/ In United States v. Elliott, 571 F.2d 880, 899 (5th Cir. 1980), the court noted "[w]e find nothing in the Act [RICO]

[footnote continued on next page]
-10-

Caro-Quintero Narcotics Enterprise was also engaged in trafficking in cocaine. The evidence will further establish that co-defendant Jesus Felix-Gutierrez was involved in the importation and distribution of cocaine with Caro-Quintero as well as other common participants in the narcotics enterprise, and that this occurred during the same period of time that defendant Verdugo-Urquidez was a member of the Rafael Caro-Quintero Narcotics Enterprise.

Clearly, none of the cases cited by Verdugo-Urquidez are on point. They all pertain to conspiracies and not the substantive racketeering charges in counts one and two.

---

2/ [footnote continued from previous page]

excluding from its ambit an enterprise engaged in diversified activity. The court found significant that Congress expressly stated that the purpose of the Act was 'to seek the eradication of organized crimes', which it described as a 'highly sophisticated, diversified, and widespread activity that annually drive billions of dollars from America's economy by unlawful conduct. . . ." [Cites omitted].

The court concluded in the following terms "[a] single enterprise engaged in diversified activities fits comfortably within the proscriptions of the statute and the dictates of common sense" Id. The court then illustrated its conclusion by quoting from another case:

> As in a firm with a real estate department and a insurance department, the fact that partners bring in two kinds of business on the basis of their different skills and connections does not affect the fact that they are partners in a more general business venture.

citing, United States v. Mallah, 503 F.2d 971, 976 (2nd Cir. 1974), cert. denied, 420 U.S. 995 (1975).

-11-

B. **Two Enterprises Could Be Engaged As A Racketeering Under Section 1952B**

The definition of enterprise itself under Section 1952B is dispositive of the issue. The definition includes "any partnership," thus providing for an arrangement in which separate "enterprises" are joined in any type of partnership. See, e.g., United Energy Owners v. United Energy Management, 837 F.2d 356, 363 (9th Cir. 1988) (a corporation named Sunbelt Energy, a separate entity, was also a part of a business venture, which was also a separate "entity", under RICO statute); United States v. Aimone, 715 F.2d 822, 828 (3rd Cir. 1983) (group of individuals and corporation associated in fact), cert. denied, 468 U.S. 1217 (1984). Thus even if one were to classify the cocaine distribution and marijuana distribution as separate enterprises, there would be no duplicity if they were tied together in a venture engaged in a pattern of racketeering.

III

CONCLUSION

For the reasons stated herein, defendant's Motion for Dismissal of Count One and Severance of Counts should be denied.

-12-

CERTIFICATE OF SERVICE BY MAIL

I,    Marta I. Larin   , declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on   May 12, 1988  , deposited in the United States mails in the United States Courthouse at 312 North Spring Street, Los Angeles, California, in the above-entitled action, in an envelope bearing the requisite postage, a copy of GOVERNMENT'S OPPOSITION TO DEFENDANT VERDUGO-URQUIDEZ' MOTION TO DISMISS COUNT ONE OF THE INDICTMENT PURSUANT TO KOTTEAKOS v. UNITED STATES, 328 U.S. 740 (1946); MEMORANDUM OF POINTS AND AUTHORITIES.

addressed to:

SEE ATTACHMENT

at their last known address, at which place there is a delivery service by United States mail.

This Certificate is executed on  May 12, 1988  at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

*Marta Larin*

UNITED STATES v. RAFAEL CARO QUINTERO, et al.,
NO. CR 87-422(B)-ER

SERVICE BY MAIL

Elsa Leyva, DFPD
Federal Public Defender's Office
312 North Spring Street
15th Floor
Los Angeles, California  90012

Michael Pancer, Esq.
Home Federal Building
Suite 1135
625 Broadway
San Diego, California  92101

Donald C. Randolph, Esq.
2566 Overland Avenue
Suite 700
Los Angeles, California  90064