ROBERT C. BONNER
United States Attorney
ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division
ROEL C. CAMPOS
Assistant United States Attorney
Major Narcotics Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6682

Attorneys for Plaintiff
United States of America

**FILED**

MAY 18 1988

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>RAFAEL CARO-QUINTERO, et al.,<br><br>          Defendants. | NO. CR 87-422(B)-ER<br><br>GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 12b; MEMORANDUM OF POINTS AND AUTHORITIES |

    Plaintiff, United States of America, hereby files this notice and memorandum regarding its intent to use evidence of prior conduct.

    DATED:   May 17 , 1988.

                        Respectfully submitted,

                        ROBERT C. BONNER
                        United States Attorney

                        ROBERT L. BROSIO
                        Assistant United States Attorney
                        Chief, Criminal Division

ENTERED ON COURTRAN

MAY 18 1988

                        _Roel C Campos_
                        ROEL C. CAMPOS
                        Assistant United States Attorney
                        Major Narcotics Section

                        Attorneys for Plaintiff
                        United States of America

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES                                    2

I.    INTRODUCTION                                                      2

II.   GOVERNMENT DOES NOT INTEND TO INTRODUCE
      STATEMENTS BY DEFENDANT LOPEZ-ALVAREZ TO
      MEXICAN AUTHORITIES                                              2

III.  THE GOVERNMENT PREVIOUSLY DISCLOSED THE
      INFORMATION REGARDING THE RECORDING OF THE
      INTERROGATION OF SA CAMARENA                                    3

IV.   THE GOVERNMENT WILL AUTHENTICATE CERTAIN
      RECORDS AS BUSINESS RECORDS                                     3

V.    GOVERNMENT INTENDS TO INTRODUCE EVIDENCE OF
      THE PRIOR CONVICTION OF DEFENDANT LOPEZ-ALVAREZ                  3

VI.   DEFENDANT LOPEZ-ALVAREZ' PRIOR CONDUCT IS
      ADMISSIBLE AND RELEVANT IN THE CASE AT HAND                     4

      A.    Defendant Lopez-Alvarez Made Various
            Admissions Regarding His Role in the
            Camarena Murder While Committing
            Another Crime                                             6

      B.    Lopez-Alvarez' Admissions Are Admissible
            Under Federal Rules of Evidence                           8

            1.    Evidence is Admissible as
                  Party Admissions                                    8

            2.    FRE 404(b) Permits the Other Crime
                  and Accompanying Admissions to
                  be Admitted                                         13

                  a.    There Are Several Grounds To
                        Admit Evidence Under F.R.E. 404(b)            15

                  b.    The Similar Crime To Kidnap And
                        Murder The Customs Agent Meets
                        the F.R.E. Prerequisites                      19

                  c.    Cautionary Jury Instruction Will
                        Cure Any Possible Prejudice                   21

VII.  GOVERNMENT WILL INTRODUCE EVIDENCE OF A SHOOTING                 22

- i -

# TABLE OF CONTENTS

PAGE

VIII. THE GOVERNMENT BY THIS NOTICE DOES NOT LIMIT THE
EVIDENCE OF NARCOTICS TRANSACTIONS IT WILL PRESENT
AT TRIAL                                                      23

IX.    CONCLUSION                                             23

1

**TABLE OF AUTHORITIES**

2

PAGE

3 | CASES:

4 | Umbaugh v. Hutto,
      486 F.2d 904 (8th Cir. 1973),
5 |   cert. denied, 416 U.S. 960 (1974)                      21

6 | United States v. Adcock,
      558 F.2d 397 (8th Cir.),
7 |   cert. denied, 434 U.S. 921 (1977)                      18

8 | United States v. Beechum,
      582 F.2d 898 (5th Cir.),
9 |   (en banc), cert. denied,
      440 U.S. 920, 99 S.Ct. 1244,
10 |  59 L. Ed. 2d 472 (1979)                                11

11 | United States v. Bloom,
       538 F.2d 704 (5th Cir. 1976),
12 |   cert. denied, 429 U.S. 1074,
       97 S. Ct. 814, 50 L.Ed. 2d 792 (1977)                11

13

14 | United States v. Bradshaw,
       690 F.2d 704 (9th Cir. 1982)                          21

15 | United States v. Cook,
       745 F.2d 1311 (10th Cir. 1984),
16 |   cert. denied, 469 U.S. 1220 (1984)                    11

17 | United States v. DeLoach,
       654 F.2d 763 (D.C. Cir. 1980)                         19

18

19 | United States v. Diggs,
       649 F.2d 731 (9th Cir. 1980),
       cert. denied, 454 U.S. 970 (1981)                     14

20

21 | United States v. Edwards,
       696 F.2d 1277 (11th Cir. 1983),
       cert. denied, 461 U.S. 909,
22 |   103 S.Ct. 1884 (1983)                                 17

23 | United States v. Franklin,
       704 F.2d 1183 (10th Cir. 1983)                        21

24

25 | United States v. Giese,
       597 F.2d 1170 (9th Cir. 1979),
       cert. denied, 444 U.S. 979 (1980)                     23

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

PAGE

<u>CASES</u>: (Continued)

United States v. Gonzales,
  661 F.2d 488 (5th Cir. 1981)                    12

United States v. Gonzalez,
  668 F.2d 73 (1st Cir. 1982)                     21

United States v. Green,
  648 F.2d 587 (9th Cir. 1980)                    14

United States v. Harris,
  738 F.2d 1068 (9th Cir. 1984)                   15

United States v. Hearst,
  563 F.2d 1331 (9th Cir. 1977),
  <u>cert. denied</u>, 435 U.S. 1000 (1978)           16

United States v. Hooton,
  662 F.2d 628 (9th Cir. 1981),
  <u>cert. denied</u>, 455 U.S. 1004 (1982)           18

United States v. McCollum,
  732 F.2d 1419 (9th Cir. 1984)                   19

United States v. McKoy,
  771 F.2d 1207 (9th Cir. 1985)                   12

United States v. Mehrmanesh,
  689 F.2d 822 (9th Cir. 1982)                    16

United States v. Mills,
  704 F.2d 1553 (11th Cir. 1983)                  9,21

United States v. Multi-Management, Inc.,
  743 F.2d 1359 (9th Cir. 1984)                   20

United States v. Nadler,
  698 F.2d 995 (9th Cir. 1983)                    12,22

United States v. O'Brien,
  601 F.2d 1067 (9th Cir. 1979)                   16

United States v. O'Connor,
  737 F.2d 814 (9th Cir. 1984),
  <u>cert. denied</u>, 469 U.S. 1218,
  105 S. Ct. 1198 (1985)                         12,16

**TABLE OF AUTHORITIES**

PAGE

CASES: (Continued)

United States v. Riley,
684 F.2d 542 (8th Cir. 1982)                              9

United States v. Robinson,
687 F.2d 359 (11th Cir. 1982)                            19

United States v. Rocha,
553 F.2d 615 (9th Cir. 1977)                             14

United States v. Rosa,
705 F.2d 1375 (1st Cir. 1983)                            21

United States v. Signal,
572 F.2d 1320 (9th Cir. 1978)                            19

United States v. Wilson,
578 F.2d 67 (5th Cir. 1978)                              11


STATUTES:

Title 18, United States Code,

    Section 1111                                         10
    Section 1114                                          5
    Section 1117                                       5,10
    Section 1201(c)                                       5
    Section 1201(a)(5)                                    5
    Section 1952A                                         6


RULES:

Federal Rules of Evidence

    Rule 404(b)                                      PASSIM
    Rule 801(d)(2)(A)                                     9

- v -

MEMORANDUM OF POINTS AND AUTHORITIES

I

INTRODUCTION

Defendant Verdugo-Urquidez in his motion requests, that the court order that the government provide notice of its intent to use certain evidence at trial.  The government in these papers will first address the specific evidence questioned by defendant Verdugo-Urquidez in its motion and also provide notice of its intent to introduce certain evidence and discuss the legal basis for admission into evidence.

II

GOVERNMENT DOES NOT INTEND TO

INTRODUCE STATEMENTS BY DEFENDANT

LOPEZ-ALVAREZ TO MEXICAN AUTHORITIES

Defendant Verdugo-Urquidez in his motion states that the government's discovery indicates that defendant Lopez-Alvarez was arrested by Mexican authorites with respect to the murder of Drug Enforcement Administration ("DEA") Special Agent ("SA") Camarena.  Defendant Verdugo-Urquidez wishes to know whether the government will seek to introduce the content of any confession or statement that defendant Lopez-Alvarez made to the Mexican authorities.  The government does not intend to introduce into evidence the content of any such confession or statement by defendant Lopez-Alvarez.

/

/

/

/

III

### THE GOVERNMENT PREVIOUSLY DISCLOSED THE

### INFORMATION REGARDING THE RECORDING OF

### THE INTERROGATION OF SA CAMARENA

Defendant Verdugo-Urquidez also complained in his motion that the government had failed to advise him of the origin of the recordings of the interrogation of SA Camarena. That information was discussed fully in the government's opposition papers to defendant Verdugo-Urquidez' motion for an evidentiary hearing regarding the authenticity of the interrogation tapes.

IV

### THE GOVERNMENT WILL AUTHENTICATE CERTAIN

### RECORDS AS BUSINESS RECORDS

Defendant Verdugo-Urquidez points out that the government provided computer print-outs regarding immigration records for defendant Felix-Gutierrez and hotel records for the Hyatt Regency in Guadalajara, Mexico. The government will authenticate them under the relevant provision of Title 18 for foreign records or employ the testimony of a custodian of records.

V

### GOVERNMENT INTENDS TO INTRODUCE

### EVIDENCE OF THE PRIOR CONVICTION

### OF DEFENDANT LOPEZ-ALVAREZ

Defendant Verdugo-Urquidez requests notice of the government's intent to use evidence of co-defendants' past records. As discussed more fully below, the government intends to introduce the criminal acts and conviction of defendant Lopez-Alvarez under FRE 404(b) and FRE 608. The government

- 3 -

previously provided extensive discovery of defendant
Lopez-Alvarez' past activity and all counsel are aware that
defendant Lopez-Alvarez was convicted by a jury on charges of
conspiracy to murder and kidnap a United States Customs Agent in
February, 1988 after a three week jury trial.  In fact, defendant
Verdugo-Urquidez assumed that the government would introduce such
evidence in its motion to sever.

The government will also seek to introduce defendant
Felix-Gutierrez' prior arrest for possession of narcotics under
FRE 404(b).

VI

DEFENDANT LOPEZ-ALVAREZ' PRIOR CONDUCT IS
ADMISSIBLE AND RELEVANT IN THE CASE AT HAND

The government intends to introduce at trial the party
admissions of defendant Lopez-Alvarez in which he admitted his
role in the murder of SA Camarena.  Defendant Lopez-Alvarez made
those admissions, however, while he was in the process of
committing another crime:  planning to kidnap, torture,
interrogate, and murder a United States Customs Agent for which
he was convicted before Judge Rymer earlier this year.  When
defendant Lopez-Alvarez made those admissions to an undercover
DEA Agent, he also admitted to having participated in at least
three prior murders in Mexico in his role as a "hitman" for the
narcotics enterprise.

The government in its opposition to defendant's motion to
sever previously discussed the basis for the admissibility of the
defendant Lopez-Alvarez' prior conduct.  The government in this
motion will again review the facts for the court and provide the

- 4 -

1   relevant authority.  There can be no issue that defendant

2   Lopez-Alvarez' admissions regarding his role in SA Camarena's

3   kidnapping and murder are admissible.  The other statements

4   regarding his being a "hitman" for the enterprise are also

5   admissions as to his role in the enterprise.  The government

6   further contends that the context in which he made those

7   admissions, including his acitivites in conspiring to kidnap and

8   kill a Customs agent is also crucial to the jury's understanding

9   of those admissions.  After all, one would not expect that an

10  individual would explain his role in prior murders unless he were

11  in a very special set of circumstances.  The government submits

12  that unless it is permitted to introduce the entire story of how

13  those admissions came about, there will be jury confusion.

14      Moreover, defendant Lopez-Alvarez testified at trial and

15  admitted that he made the statements that the government intends

16  to offer ito evidence.  Therefore, under settled law, the

17  government is also allowed to introduce directly defendant

18  Lopez-Alvarez's testimony in the prior trial pertaining to his

19  similar criminal conduct.

20      The other basis for admission into evidence of defendant

21  Lopez-Alvarez's subsequent criminal acts are through FRE 404(b).

22  That analysis will also be discussed herein.

23  A.  Defendant Lopez-Alvarez Made Various Admissions Regarding His

24      Role in the Camarena Murder While Committing Another Crime

25      Defendant Raul Lopez-Alvarez was indicted in the case of

26  United States v. Raul Lopez-Alvarez, et al., CR 87-919-PAR, and

27  charged with violations of 18 U.S.C. § 1201(c), § 1201(a)(5),

28  § 1114, and § 1117, conspiracy to kidnap and murder a United

- 5 -

States Customs Service Special Agent, and with interstate and foreign travel in aid of racketeering in violation of 18 U.S.C. § 1952A.  Defendant Lopez-Alvarez was convicted of the above charges after a three (3) week jury trial before the Honorable Pamela A. Rymer.  Briefly, defendant Lopez-Alvarez engaged in numerous meetings with DEA undercover agent Abel Reynoso.  Defendant Lopez-Alvarez initially met with Special Agent Reynoso to negotiate the distribution of cocaine.  During the undercover meetings defendant Lopez-Alvarez stated that he was an ex-State judicial police officer in Guadalajara, Mexico.  As a Mexican State police officer defendant Lopez-Alvarez stated that he provided protection and security for defendants Rafael Caro-Quintero and Ernesto Fonseca-Carrillo in Guadalajara.

After the negotiations to distribute cocaine stalled, defendant Lopez-Alvarez offered his services as a "hit man" to Special Agent Reynoso.  Defendant Lopez-Alvarez stated that he was a "hit man" for Caro-Quintero and Fonseca in Guadalajara and offered to take care of any "collection" problems agent Reynoso's fictitious narcotics organization might have.  Defendant Lopez-Alvarez also explained to the undercover agent that he had personally participated in at least three killings.  One of those killings involved the kidnapping from a hotel of a Mexican Comandante who was also later tortured before he was killed.

Defendant Lopez-Alvarez also discussed his participation in the kidnapping and murder of Special Agent Camarena.  Defendant Lopez-Alvarez stated that he was present at the house where Special Agent Camarena was taken after he was abducted.  Defendant Lopez-Alvarez stated that he was with the group that

- 6 -

was guarding SA Camarena.  Defendant Lopez-Alvarez  admitted his participation in the torture and tape recorded interrogation of Special Agent Camarena.  Finally, defendant Lopez-Alvarez stated that on February 9, 1985, two days after Special Agent Camarena was abducted, that he was present at the Guadalajara International Airport where he assisted defendant Rafael Caro-Quintero in avoiding apprehension by Mexican Federal Judicial Police officers and DEA Special Agents.  Defendant Lopez-Alvarez stated that he provided a warning to a member of the organization that Mexican federal police officers and DEA Special Agents were going to the airport to arrest defendant Caro-Quintero.  When defendant Lopez-Alvarez arrived at the airport, he further stated that he positioned himself behind the Mexican police officers and DEA agents so that Lopez-Alvarez could shoot them in the back if a violent confrontation with the narcotics traffickers developed.$\frac{1}{}$

During their meetings, defendant Lopez-Alvarez exhibited to the undercover agent extensive knowledge of how to conduct a kidnapping and what torture techniques could be employed to force information out of an individual.  Defendant Lopez-Alvarez, for instance, referred to various torture techniques that he had employed in the past.  He stated, that besides beatings, electrical shocks to the testicles could be employed, using a cattle prod or simply an extension cord plugged into an

---

1/  It should be noted that at trial in <u>United States v. Raul Lopez-Alvarez, et al.</u>, CR 87-919-PAR, Lopez-Alvarez took the stand in his defense and denied any involvement in the Camarena kidnapping and murder.

- 7 -

electrical outlet. Defendant Lopez-Alvarez described how the kidnapping would need to be conducted and requested an isolated house where he could interrogate and torture the victim Customs Agent. Defendant Lopez-Alvarez also proposed to the undercover agent that the interrogation be tape recorded, as was the interrogation of SA Camarena.

Defendant Lopez-Alvarez, as part of his arrangement with undercover agent Reynoso, eventually brought two individuals with him from Mexico to commit the kidnapping, torture, and murder of United States Customs Agent. On October 2, 1987, all three were arrested before they could carry out there plan. Defendant Lopez-Alvarez' convictions were for conspiring with his two associates to kidnap and murder the Customs Agent.

The government's evidence as to the foregoing consists of the testimony of the undercover agent and audio and video tape recordings of the conversations between the undercover agent and defendant Lopez-Alvarez. Those recordings have been disclosed to defendants.

B. Lopez-Alvarez' Admissions Are Admissible Under Federal Rules of Evidence

1. Evidence is Admissible as Party Admissions

Defendant Lopez-Alvarez' statements to the undercover agent regarding his participation in the kidnapping and murder of SA Camarena are relevant party admissions under FRE 801(d)(2)(A). Defendant's statements regarding his role as a "hitman" for the narcotics enterprise of defenants Ernesto Fonseca-Carrillo and Rafael Caro-Quintero and the various murders and kidnappings in which he participated in support of that enterprise are also

- 8 -

relevant party admissions under FRE 801(d)(2)(A). The government could also introduce the foregoing admissions by offering defendant's prior testimony at trial, in which defendant Lopez-Alvarez admitted that he had made the foregoing admissions to undercover agent Reynoso. Harrison v. United States, 392 U.S. 219 (1968) (Supreme Court approved of the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings). See also United States v. Riley, 684 F.2d 542 (8th Cir. 1982) (in a prosecution for a Mann Act violation, guilty plea to pimping was admissible in a subsequent criminal trial as evidence of an admission by a party opponent under Rule 801(d)(2).

Defendant Lopez-Alvarez' participation in the conspiracy to kidnap and murder a United States Customs agent, may be introduced in the government's case as relevant evidence of the circumstances and context under which the admissions were made. As stated earlier, the "entire story" regarding how it came to be that the undercover agent and defendant were meeting and eventually discussed kidnapping, murder, and torture of both SA Camarena and a United States Customs agent needs to be told so that it will make sense. The admissions of defendant are so inextricably intertwined that they cannot be separated from defendant conspiring to kidnap and murder the Customs agent. To separate the admissions from their context would cause great confusion to the jury and would unfairly prejudice the government's case.

In United States v. Mills, 704 F.2d 1553 (11th Cir. 1983), Mills was convicted of murder and conspiracy to murder a federal

-- 9 --

prison inmate in violation of 18 U.S.C. § 1111 and 1117. The
prosecution's theory of the case was that the victim had been
murdered pursuant to an Aryan Brotherhood contract. The
prosecution offered evidence that in a drug transaction the
victim (Marzloff) had cheated Silverstein, an Aryan Brotherhood
"commissioner", and that Silverstein had put out a contract on
Marzloff. The government further maintained that Mills, also an
Aryan Brotherhood "commissioner", carried out the murder contract.

At the trial the government offered testimony regarding the
history, organization and activities of the Aryan Brotherhood,
including other murders and violent acts committed by the Aryan
Brotherhood. Defendant Mills objected to the admission of this
evidence as evidence improperly admitted under Fed. R. of Evid.
404(b). The government however maintained that the testimony was
intrinsic to the crime charged, and therefore only subject to the
admissibility standards of Fed. R. of Evid. 403.

In holding that the admission of the evidence regarding the
Aryan Brotherhood was not unduly prejudicial the Court of Appeals
stated:

> Some of the evidence referred to illegal or
> otherwise improper acts which did not
> constitute elements of the crime charged in
> the indictment, but all of it pertained to a
> chain of events forming the context, motive,
> and set up for the crime. To make the crime
> comprehensible to a jury it was necessary for
> the government to show how the Aryan
> Brotherhood functioned, that Mills was a

member of the Aryan Brotherhood, that an
affront to a fellow member might serve as an
adequate motivation for Mills to kill a person
whom he barely knew, and that it was possible
for a member of the Brotherhood incarcerated
in one federal prison to communicate the
murder contract to another member in a
different prison, despite mail censorship and
restrictions on inter-inmate correspondence.

Id. at 1559.

The Court of Appeals further emphasized:

Such evidence, once deemed part of the res
gestae, is now considered proper if it is
linked together in time and circumstances with
the crime charged, United States v. Beechum,
582 F.2d 898 (5th Cir.), (en banc), cert.
denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L. Ed.
2d 472 (1979), or if it forms an "integral and
natural" part of the account of the
circumstances of the crime, United States v.
Bloom, 538 F.2d 704, 707 (5th Cir. 1976),
cert. denied, 429 U.S. 1074, 97 S. Ct. 814, 50
L.Ed. 2d 792 (1977), or is necessary "in order
to complete the story of the crime on trial."
United States v. Wilson, 578 F.2d 67, 72 (5th
Cir. 1978).

Id. at 1559. See also United States v. Cook, 745 F.2d 1311, 1317
(10th Cir. 1984), cert. denied, 469 U.S. 1220 (1984) (courts have

- 11 -

1  admitted other crimes evidence when it is part of the
2  "environment," when needed "to complete the story" or when so
3  linked in time and circumstance as to be part of the res gestae);
4  United States v. Gonzales, 661 F.2d 488, 493 (5th Cir. 1981)
5  (Fifth Circuit has often acknowledged an exception permitting
6  proof of other acts when they form an integral and natural part
7  of the account of the circumstances regarding the charged
8  offense).

9      The Ninth Circuit has also frequently admitted prior acts
10 without a rigorous Rule 404(b) analysis to show the background
11 and development of a charged conspiracy.  See e.g., United States
12 v. Nadler, 698 F.2d 995 (9th Cir. 1983) (evidence regarding a
13 prior counterfeit operation held admissible for the legitimate
14 purpose of showing a common scheme or plan and the background and
15 development of the conspiracy); United States v. O'Conner, 737
16 F.2d 814, 819 (9th Cir. 1984) (evidence about a prior narcotics
17 transaction not charged was necessary background to explain the
18 government's undercover operation).

19     In United States v. McKoy, 771 F.2d 1207 (9th Cir. 1985), the
20 Ninth Circuit found that the testimony of a co-conspirator that
21 he and defendant had dealt in stolen merchandise several times
22 before their arrest was admissible.  In McKoy, the Ninth Circuit
23 failed to reach the issue under Rule 404(b) of whether the
24 evidence of prior crimes was properly introduced to prove the
25 knowledge element of the crime charged, because it found "that
26 the challenged evidence was admissible to explain the nature of
27 the relationship between [the co-conspirator] and defendant, and
28 to put the transaction in context for the jury."  Id., 771 F.2d

1   at 1214.   In the same way, the evidence sought to be admitted
2   would explain the relationship between the defendant and the
3   undercover agent and provide the context of the defendant's
4   admissions.

5        In the case at hand, the government submits that the
6   doctrines of the "complete story" and provide the "context" are
7   applicable.   It is critical to the government's case against
8   defendant Lopez-Alvarez that the jury be presented evidence
9   regarding the background and surrounding circumstances leading up
10  to Lopez-Alvarez' admissions about his participation in the
11  kidnapping and murder of Special Agent Camarena.   In evaluating
12  the credibility of Lopez-Alvarez' admissions regarding Camarena,
13  it is important for the jury to understand the context within
14  which these statements were made.   It is therefore imperative
15  that the government be permitted to introduce evidence regarding
16  the "chain of events" leading up to Lopez-Alvarez' admissions
17  regarding Camarena in order for the jury to be presented the
18  "complete story."

19        2.   FRE 404(b) Permits the Other Crime and

20             Accompanying Admissions to be Admitted

21        Under the alternative analysis available under FRE 404(b),
22  the beginning point is not the admissions, but the other crimes
23  or acts in support of the conspiracy to kidnap and murder the
24  Customs agent.   Those criminal acts are admissible as other
25  crimes or acts under FRE 404(b) showing intent, preparation,
26  knowledge, common plan and absence of mistake.   Under this
27  analysis, the other admissions are an inextricable part of the
28  conspiracy to kidnap and murder the Customs agent and therefore

- 13 -

1   are admissible as part of the crime.  Hence, under 404(b), the
2   crime brings in with it the other admissions.  The admissions and
3   full discussion with the undercover agent show the context in
4   which the criminal acts of conspiracy to kidnap and murder the
5   Customs agent occurred.  In fact, the entire conversation between
6   defendant Lopez-Alvarez and the undercover agent was held
7   admissible by Judge Rymer under the res gestae, context, and
8   "complete the story" doctrines.

9        Federal Rules of Evidence 404(b) addresses the admissibility
10  of evidence of similar criminal conduct.  The Rule provides:

11              Evidence of other crimes, wrongs, or acts is
12              not admissible to prove the character of a
13              person in order to show that he acted in
14              conformity therewith.  It may, however, be
15              admissible for other purpose, such as proof of
16              motive, opportunity, intent, preparation,
17              plan, knowledge, identity, or absence of
18              mistake or accident.

19       The Ninth Circuit has held repeatedly that Rule 404(b) is a
20  rule of inclusion.  See e.g., United States v. Diggs, 649 F.2d
21  731, 737 (9th Cir. 1980), cert. denied, 454 U.S.  970 (1981);
22  United States v. Green, 648 F.2d 587, 591 (9th Cir. 1980).
23  Evidence of other acts should be excluded only where it tends to
24  prove only criminal disposition.  United States v. Rocha, 553
25  F.2d 615, 616 (9th Cir. 1977).

26       The subsequent acts sought to be admitted in the case at bar
27  are very similar to the crimes with which defendant Lopez-Alvarez
28  is charged.  Both the later conspiracy to kidnap and murder a

- 14 -

1   Customs agent and the charges involving SA Camarena in this case

2   involve kidnapping, torture and murder of federal agents.

3   Similarity of other acts have been held in this circuit as strong

4   support for admitting evidence under FRE 404(b). See also United

5   States v. Harris, 738 F.2d 1068, 1072 (9th Cir. 1984) (defendants

6   were convicted of conspiracy to import marijuana and imporation

7   of marijuana; evidence that defendant supplied informant with an

8   airplane to assist in an earlier unrelated drug conspiracy was

9   admissible as the earlier transaction was "strikingly similar" to

10  the federal charges against defendant and its probative value

11  outweighed its prejudicial effect).

12              a.    There Are Several Grounds To Admit Evidence Under

13                    F.R.E. 404(b)

14      In the case at bar, defendant Lopez-Alvarez will surely claim

15  that his admissions regarding his involvement in the Camarena

16  murder constituted "puffing" on his part and that he was not

17  serious when he made the statements.  The government will

18  introduce the subsequent criminal acts regarding his plan to

19  kidnap, torture, and murder a Customs agent to show 1) that

20  defendant Lopez-Alvarez had the intent and knowledge to kidnap

21  and murder with respect to the Camarena kidnapping and murder;

22  2) that he intended to employ the identical plan as in the

23  charged Camarena affair to carry out the subsequent kidnapping

24  and murder; 3) that he intended to use similar torture techniques

25  and, by his own suggestion, intended to record the interrogation

26  as with Camarena; 4) that there was no accident or mistake in his

27  being present at the various locations in Guadalajara and that

28  his presence in Guadalajura at the various locations was to

                              - 15 -

1 support the kidnapping and torture of Speical Agent Camarena as

2 charged in the indictment; and 4) that his motive in the charges

3 regarding Camarena, as in the subsequent conspiracy, was for

4 profit and was related to his being a member of the narcotics

5 enterprise.

6 In the case at bar, the government seeks to introduce

7 evidence of a subsequent crime pertaining to the conspiracy to

8 kidnap and murder the customs agent. It has been held in this

9 circuit that a subsequent crime instead of a prior one is equally

10 admissible under FRE 404(b). United States v. O'Brien, 601 F.2d

11 1067 (9th Cir. 1979) (in prosecution for making false statements

12 to Social Security Administration, evidence that a defendant

13 subsequently continued to receive federal and state funds to

14 which he was not entitled was properly admitted as probative of

15 defendant's knowledge). Similarly, in the Patricia Hearst case,

16 the court held that evidence of subsequent criminal acts had been

17 properly admitted to indicate that she had not acted under duress

18 when she participated in the charged crime. United States v.

19 Hearst, 563 F.2d 1331, 1336, 1337 (9th Cir. 1977), cert. denied,

20 435 U.S. 1000 (1978).

21 The Ninth Circuit has often approved of intent, knowledge,

22 and scheme or plan as grounds for admitting evidence of other

23 crimes. See, e.g., United States v. O'Connor, 737 F.2d 814, 821

24 n.7 (9th Cir. 1984), cert. denied, 469 U.S. 1218, 105 S. Ct. 1198

25 (1985) (in prosecution on drug-related charges, defendant's

26 statement that he had sold 1600 kilos of cocaine over the last

27 year in Miami was admissible to show intent, knowledge, and

28 scheme of plan) and United States v. Mehrmanesh, 689 F.2d 822,

- 16 -

831-32 (9th Cir. 1982) (in prosecution for importing heroin and attempt to possess with intent to distribute heroin, the court held that evidence of defendant's possession of large quantities of drugs and sale of heroin and cocaine both before and after arrest relevant to issue of intent).

In United States v. Edwards, 696 F.2d 1277, 1280 (11th Cir. 1983), cert. denied, 461 U.S. 909, 103 S.Ct. 1884 (1983), the court held that there was no error in admitting tape recordings of defendant discussing his involvement in other drug smuggling activities which were "clearly relevant to prove his knowledge of drug importation and distribution, the subject of the charged conspiracy." As in Edwards, defendant Lopez-Alvarez in the tape recordings of his conversations with undercover agent Reynoso discusses his involvement in kidnapping and murder as a "hitman" for the enterprise – that is "clearly relevant to prove his knowledge" of kidnapping, torture, and murder, the subject of the charges pertaining to Camarena.

Courts have uniformly recognized that evidence of similar acts is admissible pursuant to Rule 404(b) where it is probative of the defendant's motive or intent at the time of the charged offenses. Such evidence is particularly appropriate where the main or sole issue at trial is the defendant's intent:

> Where intent is the only real issue, as in this
> case, the government may fairly anticipate the
> defense of mistake and lack of knowledge and
> put this evidence [or prior acts] in as part of

/

/

- 17 -

1    its case-in-chief.[2/]  [T]he admissible bad

2    acts evidence need not show incidents identical

3    to the events charged, so long as they are

4    closely related to the offense and tend to

5    rebut the defense of mistake.  Three factors

6    reinforce the admissibility of this evidence.

7    First, where intent is the only real issue,

8    there is less chance for confusion of the

9    issues by the jury; far less similarity between

10    the offenses charged and the bad acts evidence

11    need be shown where the issue is intent instead

12    of identity.  Second, and related, the court

13    must consider the government's need for the

14    evidence in making its case.  On the issue of

15    intent which is far harder to prove by

16    extrinsic evidence than [the defendant's]

17    identity or the falsity of the statements, the

18    government's need for the evidence is

19    correspondingly greater. . .  The third factor

20    supporting admission here was the trial judge's

21    limiting instruction, which properly restricted

22    the jury's use of the evidence.

23

24

25    2/  The DeLoach court also held that the government need not wait
     for defendant to deny wrongful intent before offering evidence of
26    other acts relevant to intent.  See also United States v. Hooton,
     662 F.2d (628, 635 (9th Cir. 1981), cert. denied, 455 U.S. 1004
27    (1982) and United States v. Adcock, 558 F.2d 397, 402 (8th Cir.),
     cert. denied, 434 U.S. 921 (1977) (government need not wait for
28    defendat to deny to introduce prior similar acts).
                              - 18 -

United States v. DeLoach, 654 F.2d 763, 769 (D.C. Cir. 1980)

(footnotes omitted).  See United States v. McCollum, 732 F.2d

1419, 1425 (9th Cir. 1984) (where intent is crucial issue,

evidence of past crimes generally admitted); United States v.

Robinson, 687 F.2d 359, 361 (11th Cir. 1982) (when issue is

intent, "balance tips forward admissibility" under 404(b); United

States v. Signal, 572 F.2d 1320, 1323 (9th Cir. 1978) (prior acts

"highly probative" of intent); 22 C. Wright & K. Graham, Federal

Practice & Procedure § 5239, at 466 (1978) (courts "most liberal"

in admitting 404(b) evidence on issue of intent).

      b.   The Similar Crime To Kidnap And Murder The Customs
            Agent Meets the F.R.E. Prerequisites

Before evidence of other crimes may be admitted under Rule

404(b), the following prerequisites must be met:  (1) proof that

The balancing of probative value versus unfair prejudicial effect

under Rules 404(b) and 403 is committed to the discretion

/

/

/

/

/

/

/

/

/

/

/

/

                           - 19 -

1  of the court, <u>Multi-Management, Inc.</u>, 743 F.2d at 1364;
2  <u>Bailleaux</u>, 685 F.2d at 1110.

3      The government submits that the similar subsequent conspiracy
4  to kidnap and murder the Customs agent meets all of the five
5  requirements of the <u>Multi-Management</u> case.  It is abundantly
6  clear that defendant Lopez-Alvarez committed the subsequent acts
7  of conspiring to kidnap and murder the Customs agent.  Indeed,
8  the jury found that he was guilty as charged after a three week
9  trial.  Thus, the proof that defendant Lopez-Alvarez committed
10  the said similar subsequent acts is beyond a reasonable doubt and
11  exceeds the clear and convincing standard.

12      The criminal conduct sought to be introduced is not remote in
13  time.  The later crime occurred about two and one half years
14  after the Camarena murder.  If one considers that defendant
15  Lopez-Alvarez was in Mexican custody for most of the intervening
16  period, the time is even less remote.

17      As previously discussed, the later conspiracy involves almost
18  an identical situation to the Camarena crimes charged in the
19  instant case.  Defendant Lopez-Alvarez intended to kidnap,
20  interrogate, record the interrogation, and eventually murder a
21  United States federal agent.  The crimes committed upon Special
22  Agent Camarena were identical.

23      As also previously discussed, the later conspiracy tends to
24  prove defendant Lopez-Alvarez's intent to participate in and his
25  knowledge of the kidnapping, interrogation and murder of
26  Camarena.  It also tends to show a common plan or scheme and
27  absence of mistake.

28                              - 20 -

1  Finally, there is no unfair prejudice to defendants from
2  admitting the said evidence. Evidence of subsequent and prior
3  acts of violence have been found to be not unduly prejudicial
4  by numerous courts, even where the charged offenses involved
5  violence. See e.g., United States v. Franklin, 704 F.2d 1183,
6  1187-89 (10th Cir. 1983) (evidence concerning separate, prior
7  racially-motivated assult admissible to show motive in racial
8  murder case); Umbaugh v. Hutto, 486 F.2d 904, 905-07 (8th Cir.
9  1973), cert. denied, 416 U.S. 960 (1974) (testimony concerning
10 defendant's separate, prior rape admissible on intent and
11 motive issues in prosecution for kidnapping a different victim
12 for purpose of committing a rape). See also United States v.
13 Bradshaw, 690 F.2d 704, 708-09 (9th Cir. 1982) (evidence of
14 sexual and drug activity admissible as motive evidence in
15 kidnapping case).$^{3/}$ See also Mills, 704 F.2d at 1559
16 (evidence that defendant was member of an organization that
17 committed contract murders not overly prejudicial).

18          c.    Cautionary Jury Instruction Will Cure Any
19                Possible Prejudice
20     The possibility of any unfair prejudice can and should be
21 cured by the reading of cautionary instructions to the jury at

22

23 3/ Additionally, the prior homicide, assults and attempted
24 robbery are not macabre or particularly inflammatory. Cf. United
States v. Gonzalez, 668 F.2d 73, 76 (1st Cir. 1982) (holding death
25 threat, namely, "that broad is dead" could be claimed to be
statement impulsively made by a wrongly accused defendant
26 concerned about the lies a co-defendant would tell in return for a
government "deal" and therefore not particularly inflammatory);
27 United States v. Rosa, 705 F.2d 1375, 1378 (1st Cir. 1983) (threat
to kill co-conspirator if he became government witness not unduly
28 prejudicial).

- 21 -

both the time the prior act evidence is admitted and in the
Court's final charge.  The Ninth Circuit has encouraged and
endorsed the use of cautionary instructions.  See, e.g., United
States v. Nadler, 698 F.2d 995, 1000 (9th Cir. 1983); Bradshaw,
690 F.2d at 709-10.  The government will submit a proposed jury
instruction for use at trial.

Accordingly, the government submits that evidence of the
subsequent conspirary to kidnap and kill a Customs agent is
admissible under FRE 404(b).  Part and parcel of that similar
subsequent crime are the conversations (recorded) of defendant
Lopez-Alvarez with the undercover agent in which defendant
makes his admissions regarding his role in the Camarena
kidnapping and murder, his killings for the narcotics
enterprise, and his function as a "hit" man for the
enterprise.  Therefore all of the foregoing is admissible.  As
stated earlier, Judge Rymer ruled that all of the foregoing
evidence was necessary to complete the story, provide the
context, and that it was inextricably intertwined.

## VII

### GOVERNMENT WILL INTRODUCE EVIDENCE OF A SHOOTING

The government intends to introduce evidence that a
Mexican lawyer named Cesar Garciabueno was shot several times
because he was cooperating with DEA.  The incident will be
offered as eivdence tending to authenticate the interrogation
tapes of Special Agent Camarena.  In those tapes, Special Agent
Camarena refers to this incident and reveals that the lawyer
was hospitalized at the Scripps Hospital in San Diego,

California.  Mr. Garciabueno's testimony will corroborate the
truth of Special Agent Camarena's statements on the
interrogation tapes and that the information would only have
been known to DEA agents.

VIII

THE GOVERNMENT BY THIS NOTICE DOES NOT

LIMIT THE EVIDENCE OF NARCOTICS

TRANSACTIONS IT WILL PRESENT AT TRIAL

The government intends to introduce at trial evidence
relating to various narcotics transactions of the charged
narcotics enterprise.  The government does not restrict itself
to those predicate offenses charged in the indictment.  After
all, as in conspiracy cases, there is no requirement that the
government disclose even all the overt acts in furtherance of
the conspiracy.  United States v. Giese, 597 F.2d 1170, 1180
(9th Cir. 1979), cert. denied, 444 U.S. 979 (1980).  As held by
the Ninth Circuit in Giese, "[a] defendant is not entitled to
know all of the evidence the government intends to produce, but
only the theory of the government's case."  Id. at 1181.

IX

CONCLUSION

The government respectfully requests the court to rule
that the evidence discussed pertaining to defendant
Lopez-Alvarez's similar bad acts is admissible.

- 23 -

## CERTIFICATE OF SERVICE BY MAIL

1

2   I, _____ Marta I. Larin _____, declare:

3   That I am a citizen of the United States and resident or employed in

4   Los Angeles County, California; that my business address is Office of United

5   States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles,

6   California 90012; that I am over the age of eighteen years, and am not a party

7   to the above-entitled action;

8   That I am employed by the United States Attorney for the Central District

9   of California who is a member of the Bar of the United States District Court for

10  the Central District of California, at whose direction the service by mail

11  described in this Certificate was made; that on __May 18, 1988__, I

12  deposited in the United States mails in the United States Courthouse at

13  312 North Spring St., Los Angeles, California, in the above-entitled action,

14  in an envelope bearing the requisite postage, a copy of

15           GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE
             PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE
16           12b; MEMORANDUM OF POINTS AND AUTHORITIES

17  addressed to

18           SEE ATTACHED LIST

19

20

21

22  at __their__ last known address, at which place there is a delivery service by

23  United States mail.

24  This Certificate is executed on ____May 18, 1988____ at

25  Los Angeles, California.

26  I certify under penalty of perjury that the foregoing is true and correct.

27

28           _Marta Larin_

USA-12c-240
(Rev. 1/3/77)

UNITED STATES v. RAFAEL CARO QUINTERO, et al.,
NO. CR 87-422(B)-ER

SERVICE BY MAIL

Elsa Leyva, DFPD
Federal Public Defender's Office
312 North Spring Street
15th Floor
Los Angeles, California  90012

Michael Pancer, Esq.
Home Federal Building
Suite 1135
625 Broadway
San Diego, California  92101

Donald C. Randolph, Esq.
2566 Overland Avenue
Suite 700
Los Angeles, California  90064