90-50459

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE EDWARD RAFEEDIE JUDGE PRESIDING

- - - - -

FILED
Jun 1993
JUN 17 1993
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
      vs.                      )      Case No. CR-87-422-ER
                               )
RAFAEL CARO-QUINTERO, et al.,  )      ORIGINAL
                               )
            Defendants.        )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, FEBRUARY 8, 1993


MARY TUCKER, CSR 9308
Official Court Reporter
429-D U.S. Courthouse
312 North Spring Street
Los Angeles, Calif. 90012
213/687-0530

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

2

1   APPEARANCES:

2

3       For the Plaintiff:

4           TERREE A. BOWERS
            United States Attorney
5           ROBERT BROSIO
            Assistant United States Attorney
6           Chief, Criminal Division
            JOHN CARLTON
7           Assistant United States Attorney
            MANUEL MEDRANO
8           Special Assistant United States Attorney
            312 North Spring Street
9           Los Angeles, California  90012

10

11      For the Defendant:

12          JAMES E. BLANCARTE
            MARY FULGINITI
13          JEFFER, MANGELS, BUTLER & MARMARO
            2121 Avenue of the Stars
14          10th Floor
            Los Angeles, California  90067
15               - and -
            EDWARD M. MEDVENE
16          JACK R. LUELLEN
            MITCHELL, SILBERBERG & KNUPP
17          11377 West Olympic Boulevard
            Los Angeles, California  90064

18

19

20

21

22

23

24

25

3

1    LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 8, 1993; 3:00 PM

2          THE CLERK:  CR-87-422, United States of America v.

3    Ruben Zuno-Arce.

4          Counsel, please state your names, please.

5          MR. CARLTON:  Good afternoon, John Carlton on

6    behalf of the United States.

7          MR. MEDVENE:  Good afternoon, Your Honor.  Ms.

8    Fulginiti, Messrs. Luellen and Medvene for Mr. Zuno.  Mr.

9    Zuno is present, Your Honor.

10         THE COURT:  The Court has received and read the

11   defendant's motion for an order requiring the government to

12   produce certain documents and the opposition thereto.

13         First, I want to comment that this is a post-trial

14   request.  These are the types of things that ordinarily are

15   made before trial.  I entertain them, but I point that out

16   in that context.  The trial in this case is over.

17         What is the reason for this now, for these

18   requests in the nature of discovery?

19         MR. MEDVENE:  We received, as Your Honor knows,

20   the day of oral argument, certain Brady material from the

21   government.  We asked at that time before we argued to the

22   jury to reopen so that we would have a chance to examine

23   the material and interview the particular witnesses.  Your

24   Honor at that time, as I remember, said that the matter is

25   going to go to the jury.  We can deal with this material

4

1  after, depending on what the jury did.

2       The meaning of that to us was:  If the jury

3  acquitted, that it would be academic.  And if they didn't

4  acquit, which they didn't, that this was the appropriate

5  time to deal with.

6       The reason we made the discovery request was that

7  in the Brady material that we received the day of the

8  argument, it made several things clear.

9       One, the statements with reference to Sara Cosio

10 that were also substantiated not only in the Brady

11 material, but in some other material and a declaration

12 submitted to you, I believe today; but particularly in the

13 Brady material, made clear that the theory of the

14 government, that there were a series of meetings that

15 occurred because of some retaliation by the Cartel members

16 against the D.E.A. is a false theory.

17      That really what happened was that --

18      THE COURT:  Is that an element of the crime,

19 motive?

20      MR. MEDVENE:  Well, I believe motive is relevant

21 for a number of reasons, and it is one of the elements, I

22 think, of 1201 that is, as I remember, talks about doing

23 harm to a government agent in the performance of his

24 official duty.

25      What happened may well not have had to do with the

5

1   performance of an agent in his official duty, but may well

2   have had to do with a personal relationship of that agent

3   and a personal relationship of Caro-Quintero.

4        But the point is, it would undermine the testimony

5   that was given.  As Your Honor knows, it's been the defense

6   contention that the testimony's fabricated; that Cervantes'

7   testimony was fabricated.  He wasn't put on.  They had two

8   new witnesses.

9        If what the informant said is correct, it would

10  mean there were not a series of meetings that talked about

11  retaliation because the taking had to do with something

12  else, Point "A".

13       Point "B", it undermines the credibility of Godoy

14  and Lopez-Romero, because there would have been no

15  discussion at these meetings of who was the agent, because

16  they knew who the agent was.  That was the centerpiece of

17  all three meetings.

18       Three, while it's not an ingredient of the crime,

19  there would have been no motivation by Mr. Zuno, as the

20  government claims, either as an alleged drug dealer or as a

21  politician, to do these things, because they had nothing to

22  do would with anything.

23       So the testimony that what this was about or the

24  statement that what this was about, this relationship

25  between Cosio, Camarena and Quintero is very, very material

6

1   and very relevant.  Now that goes to the first two

2   requests.

3          The third request, which is very specific, Your

4   Honor, and different than Brian, again springs directly

5   from the Brady material we were given the day of oral

6   argument.

7          The government put on one witness, Lopez-Romero,

8   who testified for the first time counter to the testimony

9   in the first trial.  And he is the only witness that has

10  ever stated, it had to be devastating, that Zuno was

11  present on February 7th at the time of the interrogation of

12  Camarena at Lope de Vega, and that Zuno participated, while

13  not in the room, suggested that he be questioned further or

14  this or that be done with him.  First one that said that.

15  At the very time apparently, it springs forth from the

16  Brady material an admission by the government.

17         Dr. Kosonoy who was apparently somebody that

18  looked like what they said Machain was, a doctor who was

19  keeping Camarena alive allegedly at Lope de Vega February

20  7th, was sitting in the government's custody.  We believe

21  that witness would say Zuno was not present on February

22  7th.  We think --

23         THE COURT:  Did you try to talk to him?

24         MR. MEDVENE:  We have no idea where he is.  We

25  want to talk to him.  He is in the government's custody.

7

1    But we think it's reasonable to believe, as thin as this

2    case was that was presented, it was basically a one witness

3    case again, different witness, different meetings, it's

4    different people, et cetera; but we think it's a reasonable

5    inference that as thin as the case was, that if this

6    witness would have said that Zuno was present on February

7    7th, they would have had him in here.  He was in the

8    government's custody, and we think we are entitled to him

9    and entitled to talk to him because we believe he will say

10   Zuno wasn't there.

11        In addition to that, the Brady material

12   establishes two other witnesses, a Changa and somebody

13   named Velasquez, who both say they were present, I believe

14   on the 7th, or present at the kidnapping of Lope de Vega,

15   and identified people who were present and don't identify

16   Zuno.  We think they're certainly material.  They have

17   relevant testimony or testimony that would lead to relevant

18   testimony.

19        We think there is no explanation why we didn't

20   have the material before.  We moved the second we got the

21   material, Your Honor.  And Your Honor said, "Later, not

22   now.  We are ready to argue."

23        We think we are entitled to it.  Your Honor, I'm

24   suggesting to you that these meetings --

25        THE COURT:  There is some material that you are

8

1    saying you are entitled to that the government says they do

2    not have.

3          MR. MEDVENE:  Well, in terms of what they say they

4    don't have, it seems to me at this juncture with the

5    lateness we received other material and this very material

6    that the government claimed as late as oral argument was

7    not Brady.  You know, they were still claiming it wasn't

8    Brady, even though it is clearly Brady as we read it; that

9    what we need is for, and what we would ask through Your

10   Honor, is for Mr. Carlton to review the material.

11         Now, they don't say they don't have any people

12   with information who told about who was there February 7th

13   and claims Zuno was not there.  In other words, one of our

14   requests is:  Who did you talk to that said Zuno was not

15   there?  Or what information do you have Zuno was not there?

16   Cause really in fairness, you can't present one witness who

17   said he was there, while you are sitting with knowledge

18   that 19 say he wasn't there, including possibly Kosonoy.

19         I note from the government's response that they do

20   not claim they have not spoken to other witnesses or don't

21   have information from other witnesses who testified as to

22   who was there February 7th.

23         We would ask at this stage that there be a

24   declaration signed by Mr. Carlton, a declaration signed by

25   someone in authority at the D.E.A., and someone in

9

1    authority at the FBI, because that is where the memos came

2    from, that they swear under penalty of perjury that this

3    material isn't present and that the D.E.A. material and the

4    FBI material also be run through Mr. Carlton so he could

5    personally review it.

6            Because I don't believe, you know, we were taught

7    never to say "I don't"; but I'd say this:  There is a real

8    question whether these meetings that Godoy seven years

9    later claims happened, ever happened, Judge, in light of,

10   and in light of this Brady stuff, it doesn't seem like they

11   happened, and certainly not the way they said that it

12   happened.  This takes away motive.  It takes away any sense

13   of this offense.

14           And we think we are entitled to this information.

15           THE COURT:  All right.  Do you wish to be heard?

16           MR. CARLTON:  Just briefly, Your Honor.

17           The government has objected to each of these

18   requests.  In particular, the third one where he seeking

19   all references to anyone who might have been at 881 Lope de

20   Vega who did not mention Mr. Zuno.

21           As I believe we argued in the report, that is a

22   grossly overbroad request that isn't relevant and isn't

23   exculpatory and the case law supports us on that.

24           Beyond that, he refers to certain items that were

25   turned over at the end of the case, as if everything there

10

1   was Brady and exculpatory.  I would take issue with the

2   production of the D.E.A. Six, referring to Velasquez and La

3   Changa.  I don't believe that was a Brady document.  The

4   other document the Court ruled clearly was.

5          But even if it was, only La Changa and Velasquez.

6   La Changa was identified to the defense in discovery that

7   was provided to them as being a person who was at 881 Lope

8   de Vega.

9          Velasquez was identified to them as being a person

10  who was involved in the Bravo Ranch.  That wasn't a secret.

11  They could have attempted to find La Changa.  And they

12  haven't made any effort, as far as we know, to do that.

13  That's a red herring.

14         Everything that Mr. Medvene has said goes more to

15  post-trial motions and not to discovery.  And I can assure

16  you that Mr. Medvene, and everybody who works with him,

17  have indeed filed all of the post-trial motions and raised

18  these very issues.

19         But as Your Honor remarked, and as I agree, the

20  time is past for this kind of discovery requests, and I

21  don't think there was anything in the documents that were

22  produced at the close of the trial to change that.

23         THE COURT:  The Court's view is that this motion

24  should be denied in all respects.

25         First, the three motions relating to information

11

1   that the government contends they do not have.  The Court

2   accepts that as being truthful.  If they do not have it,

3   they cannot be ordered to produce it.

4        With respect to the matters submitted to the Court

5   in camera, the Court does not find that to be Brady

6   material.

7        Should be remembered that a defendant in a

8   criminal case has no general constitutional right to

9   general discovery but only those rights that are found in

10  statute or in the decisional law of the Supreme Court and

11  other controlling courts.

12       Rule 16 is the main source for discovery.  Brady

13  v. Maryland is another source, the disclosure of

14  exculpatory material, and the Jencks Act which applies to

15  having to produce the testimony of a witness at the time

16  that he testifies.

17       Under Rule 16, a defendant is entitled to the

18  disclosure of documents which are in the possession,

19  custody or control of the government, and in which are

20  material to the preparation of the defendant's defense or

21  are intended for use by the government as evidence in chief

22  at the trial.

23       Under Brady, the government is required to produce

24  evidence that is favorable to the defendant, if the

25  evidence is material to guilt or punishment; however, the

12

1  requested evidence must be both material and exculpatory to

2  warrant discovery.

3        In the U.S. v. Cadet, a case in the Ninth

4  Circuit, has stated that it must be both material and

5  exculpatory.

6        Materiality is not satisfied by a mere conclusory

7  allegation that the requested information is material to

8  the preparation of the defense.  That is the Cadet case,

9  also.

10       Furthermore, undisclosed information and material

11  only if admissible, United States v. Kennedy has so held.

12       The defendants have requested documents that

13  pertain to Camarena's alleged relationship:  Personal,

14  professional or otherwise, with one Sarah Cosio.

15       In this case, the government states that it is not

16  aware of any documents which is responsive to this request

17  that have not been previously produced.

18       Since there is a presumption that the government

19  obeys the laws when it signs the pleadings attesting to the

20  truth of the statements contained in it, there is no good

21  cause to believe at this time that the government had any

22  information.  Therefore, there appears to be no need for

23  the Court to order the government to produce that which it

24  claims it does not have.  And that has been held to be

25  appropriate in the Case In Re Kirkenhal, a Ninth Circuit

13

1    case.

2         The defendant has requested documents pertaining

3    to any motive or reason why Camarena was abducted other

4    than a government theory that it was a retaliatory from the

5    result of a conspiracy that was driven by Camarena's

6    efforts against the Cartel.

7         The government states that it is not aware of any

8    documents responsive to this request that have not

9    previously been produced.

10        Again, the presumption provided by decisional law

11   is that there is no good cause to believe that the

12   government has any such information.

13        Therefore, the defendant's request will be denied,

14   that information which the government professes not to

15   have.

16        The Court also finds that the requested documents

17   containing information regarding individuals who identified

18   persons allegedly present at 881 Lope de Vega on February

19   7th, 1985, and that do not mention Mr. Zuno, are not Brady

20   material.

21        In a case called United States v. Brian, a Ninth

22   Circuit, a 1989 court stated that information that does not

23   incriminate a defendant does not automatically exculpate a

24   defendant either if the prosecution were required to turn

25   over any statement of a witness that did not fully

14

1    incriminate the defendant, it would be required to report

2    statements of virtually any witness it did not intend to

3    call at trial.

4         The Court finds that such statements are not

5    exculpatory and would only be arguably relevant if the

6    statements were made by a person who was present and who

7    could identify Zuno and who purported to identify everyone

8    who was present.

9         The Court has also viewed the documents the

10   government have submitted in camera.  These do not appear

11   to be material or exculpatory and are not Brady material.

12        The submitted documents appear to be inadmissible,

13   double and triple hearsay, and are not subject to

14   disclosure under U.S. v. Kennedy.

15        Finally, this statement was not used in the

16   government's case against the defendant, therefore, it is

17   not required to be disclosed under Federal Rule of Criminal

18   Procedure 16.

19        The Court denies the request by the defendant that

20   the government produce documents that contain information

21   that directly or indirectly contradicts Hector Cervantes --

22   he was not a witness in this case, I have to remind you --

23   or otherwise indicate that it was false or inaccurate.

24        The government has represented that it is not

25   aware of any documents that are responsive to this request

15

1    that have not been previously produced.

2         Now, finally, the defendant has requested relevant

3    and material information contained in the files of other

4    government agencies.  The Ninth Circuit has held that the

5    government has a duty to review files only of other Federal

6    agencies who participated in the investigation.  That's in

7    United States v. Brian.

8         The government has stated that the D.E.A. and the

9    FBI are the only agencies which participated in this

10   investigation.  And that all reports emanating from that

11   participation have been requested and provided.

12        Again, under the presumption given to us by the

13   case of In re Kirkenhal, there appears to be no good cause

14   to believe that any other agency participated in this

15   investigation, or that the government is currently

16   withholding reports.

17        It appears that the government has fulfilled its

18   duty in searching the files of the D.E.A. and the FBI.

19        And so all of these defendant's requests are

20   denied at this time.

21        MR. MEDVENE:  May I address you very briefly?

22        THE COURT:  No further argument.

23        MR. MEDVENE:  May I address you very briefly.

24        THE COURT:  Not related to this.

25        I heard the argument on this and I read all the

16

1    papers.

2              MR. MEDVENE:  It's not to re-argue in any way.

3              THE COURT:  Do you want to argue with the Court's

4    statements and reasons?

5              MR. MEDVENE:  No.  I don't think you want me to.

6              THE COURT:  No, I don't.

7              MR. MEDVENE:  I am not going to.  I'd like the

8    opportunity -- I don't think this is arguing with Your

9    Honor.  We would like the opportunity to interview Dr.

10   Kosonoy, because there is somebody that is in the custody

11   of the government.  We don't know where he is.  We think

12   it's certainly reasonable to assume that it is said in the

13   statement he was at Lope de Vega February 7th to keep

14   Camarena alive.  They put on a witness that says our client

15   was there.  We think we are entitled to ask him:  Did you

16   see him there?  We think that's relevant evidence.  And we

17   think circumstantially you can assume that if he was going

18   to say Zuno was there, he would have testified.

19             THE COURT:  What about that?  Do you know where

20   this person is?

21             MR. CARLTON:  At this point I do not.  It's my

22   understanding he is incarcerated, I believe somewhere in

23   Arizona, awaiting trial.

24             THE COURT:  No reason to think you couldn't find

25   him?

17

1          MR. CARLTON:  No.  I think we probably could.  At

2    this point, I don't know.

3          THE COURT:  Well, I don't see any reason why the

4    presence should not be disclosed, his whereabouts should

5    not be disclosed, and the defendant given an opportunity to

6    talk with him, if he wants to talk to him.

7          MR. CARLTON:  I will attempt to find out where he

8    is.

9          THE COURT:  Find out where he is and provide that

10   information to counsel.

11         MR. MEDVENE:  And if we might ask through the

12   court who his attorney is.

13         THE COURT:  Do you know or does he have an

14   attorney?

15         MR. CARLTON:  I'm sure he does.  I don't know who

16   it is.

17         THE COURT:  Can you find out and inform counsel.

18         MR. MEDVENE:  Have you ruled on the -- we had

19   asked you on the in camera material for the ability to see

20   them.  Have you ruled --

21         THE COURT:  Well, I think that's not necessary;

22   that's why it's filed in camera.

23         MR. MEDVENE:  The third thing would just take a

24   second.  It's not re-arguing.  I want to make sure -- there

25   is just one point I want you to think about, and I don't

18

1    know we said it clearly enough in the papers.   The point

2    is:   If -- on Cervantes -- if the hypo is Cervantes was not

3    truthful, that he fabricated --

4             THE COURT:   In the first trial?

5             MR. MEDVENE:   If the first trial.   Fine.   Assume

6    that's true for the moment.   The only evidence that caused

7    the indictment against Zuno, the only connecting evidence

8    to the kidnapping, murder, before the grand jury, to my

9    knowledge, was Cervantes.

10            If Cervantes was fabricated, the government had no

11   credible evidence in front of the grand jury and the

12   indictment ought to fall.

13            And I don't know if we spelled it out.   In other

14   words, the indictment we went to trial -- that's not saying

15   they couldn't re-indict him.

16            THE COURT:   You went to trial on an indictment

17   that was obtained through the testimony of a witness who

18   did not testify in the trial.

19            MR. MEDVENE:   Yes.   But if it turns out to the

20   government's knowledge, or if turns out to the Court's

21   knowledge --

22            THE COURT:   How is that going to turn out to the

23   government's knowledge?

24            MR. MEDVENE:   Well --

25            THE COURT:   Assuming he lied, you are saying that

19

1    you want the Court to assume his testimony was fabricated?

2              MR. MEDVENE:  I'm saying two hypos.

3              THE COURT:  I think the issue is this:  If his

4    testimony was false --

5              MR. MEDVENE:  Yes.

6              THE COURT:  -- presented to the Grand Jury to form

7    the only basis for the indictment --

8              MR. MEDVENE:  That's the hypothetical.

9              THE COURT:  -- is the government still entitled to

10   try the defendant using the testimony of other witnesses?

11             MR. MEDVENE:  That's it.

12             THE COURT:  I mean --

13             MR. MEDVENE:  That's the issue.

14             THE COURT:  You haven't briefed that.

15             MR. MEDVENE:  We are going to brief it.  But I

16   wanted to raise that.  Cause I don't know that we

17   adequately in our moving papers said that's one of the

18   reasons we wanted anything contrary that they had on

19   Cervantes.  Anything that showed, in addition to what we

20   have already given them in court, that Cervantes was a

21   fabrication, whatever assumptions Your Honor could make

22   because they didn't put him on.

23             MR. CARLTON:  Your Honor, they could have made

24   these arguments from the day of the last trial, the 1990

25   trial ended.  What is he raising it now for?

20

1          MR. MEDVENE:  What is the difference if I'm right?

2     I don't know if I'm right.  What is the difference if I am

3     right?  I mean, if we don't have --

4          THE COURT:  There may be a legal difference.

5          MR. MEDVENE:  Well, there may be.

6          THE COURT:  Well, I think I ruled on everything

7     before me today.

8                    (Proceedings adjourned.)

9                  *   *   *   *   *   *

10         I, MARY TUCKER, CSR, do hereby certify that

11         the foregoing transcript is true and correct.

12

13

14     _Mary Tucker_____     6-17-93

15         MARY TUCKER, CSR                    DATE

16

17

18

19

20

21

22

23

24

25