88-5462
88-5421

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

HONORABLE EDWARD RAFEEDIE, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) NO. CR 87-422(A)-ER |
| | ) |
| JESUS FELIX-GUTIERREZ, RAUL | ) |
| LOPEZ-ALVAREZ, RENE MARTIN | ) |
| VERDUGO-URQUIDEZ, ET AL., | ) |
| | ) |
| DEFENDANTS. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

TUESDAY, JULY 19, 1988



FILED
MAR - 6 1989
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Title 28
Copy

VELMA B. THOMAS, CSR, RPR
OFFICIAL COURT REPORTER
406 U. S. COURT HOUSE
312 NORTH SPRING STREET
LOS ANGELES, CALIFORNIA 90012
(213) 629-4874
CSR NO. 2683

FOR PLAINTIFF:

        ROBERT C. BONNER
        UNITED STATES ATTORNEY
        ROBERT L. BROSIO
        ASSISTANT UNITED STATES ATTORNEY
        CHIEF, CRIMINAL DIVISION
        JIMMY GURULE
        ASSISTANT UNITED STATES ATTORNEY
        MAJOR NARCOTICS SECTION
        ROEL CAMPOS
        ASSISTANT UNITED STATES ATTORNEY
        1400 UNITED STATES COURTHOUSE
        312 NORTH SPRING STREET
        LOS ANGELES, CALIFORNIA 90012

FOR DEFENDANT FELIX-GUTIERREZ:

        OVERLAND, BERKE, WESLEY, GITS, RANDOLPH &
        LEVANAS
        BY:  DONALD C. RANDOLPH
        2566 OVERLAND AVENUE
        SEVENTH FLOOR
        LOS ANGELES, CALIFORNIA 90064

        BARRY TARLOW, ESQ.
        9119 SUNSET BOULEVARD
        LOS ANGELES, CALIFORNIA 90069

FOR DEFENDANT LOPEZ-ALVAREZ:

        PETER M. HORSTMAN
        FEDERAL PUBLIC DEFENDER
        BY:  YOLANDA M. BARRERA
        CHIEF DEPUTY FEDERAL PUBLIC DEFENDER
        ELSA LEYVA
        DEPUTY FEDERAL PUBLIC DEFENDER
        SUITE 1503, UNITED STATES COURTHOUSE
        312 NORTH SPRING STREET
        LOS ANGELES, CALIFORNIA 90012-4758

FOR DEFENDANT VERDUGO-URQUIDEZ:

        MICHAEL PANCER, ESQ.
        625 BROADWAY
        SUITE 1135
        SAN DIEGO, CALIFORNIA 92101

        JUANITA R. BROOKS, ESQ.
        108 IVY STREET
        SAN DIEGO, CALIFORNIA 92101


SPANISH INTERPRETERS:

        IRMA GARCIA
        JOSE OROZCO
        LENNE GRUSKY


ALSO PRESENT:

        RUBEN SILVA
        FRANK GALVAN
        RICHARD JANISCH

2

LOS ANGELES, CALIFORNIA, TUESDAY, JULY 19, 1988, 9:30 A.M.

1          THE COURT:  I DIDN'T KNOW WE COULD GET THIS MANY

2     PEOPLE IN HERE.  WELCOME TO ALL OF YOU, LADIES AND

3     GENTLEMEN OF THE JURY PANEL.  I WANT TO TELL YOU WHY YOU

4     HAVE BEEN SUMMONED HERE.  THIS IS A CRIMINAL CASE THAT YOU

5     HAVE BEEN SUMMONED HERE TO SERVE AS POTENTIAL JURORS, AND

6     I WANT TO EXPLAIN A LITTLE SOMETHING TO YOU ABOUT THE CASE

7     SO THAT YOU WILL UNDERSTAND IT.

8          THIS CASE IS CALLED THE UNITED STATES OF AMERICA

9     VS. RENE MARTIN VERDUGO, RAUL LOPEZ ALVAREZ, AND JESUS

10    FELIX GUTIERREZ.  THERE ARE THREE DEFENDANTS IN THIS CASE.

11    THESE DEFENDANTS -- THAT IS TWO OF THEM, MR. VERDUGO AND

12    MR. ALVAREZ, HAVE BEEN CHARGED IN AN INDICTMENT THAT WAS

13    FILED BY THE UNITED STATES ATTORNEY WITH THE KIDNAPPING

14    AND MURDER OF UNITED STATES DRUG ENFORCEMENT AGENT ENRIQUE

15    CAMARENA IN MEXICO AND WITH COMMITTING VIOLENT CRIMES IN

16    AID OF RACKETEERING.

17         THE DEFENDANT JESUS FELIX GUTIERREZ HAS BEEN

18    NAMED IN THIS INDICTMENT AS AN ACCESSORY AFTER THE FACT,

19    CHARGED WITH ASSISTING ONE OF THE, OR SOME OF THE NAMED

20    DEFENDANTS, ONE OR SOME, TO ESCAPE FROM JUSTICE, KNOWING

21    THAT THEY HAD ALLEGEDLY COMMITTED THE OFFENSES CHARGED.

22         THAT IS WHAT THE INDICTMENT CHARGES.  THESE

23    DEFENDANTS HAVE PLED NOT GUILTY TO THAT INDICTMENT, AND

24    THEY ARE UNDER THE LAW PRESUMED TO BE INNOCENT OF THESE

25    CHARGES UNTIL THEIR GUILT HAS BEEN PROVED BY COMPETENT

3

1    EVIDENCE TO BE PRESENTED IN THE COURTROOM.

2         THIS CASE WILL BE A VERY INTERESTING CASE IF YOU

3    ARE FORTUNATE ENOUGH TO BE SELECTED TO SIT ON THIS JURY.

4         I WANT TO TELL YOU SOMETHING ABOUT THE

5    ANTICIPATED SCHEDULE.  IF YOU ARE CHOSEN ON THIS JURY, YOU

6    WILL BE SERVING APPROXIMATELY FOUR DAYS PER WEEK.  WE WILL

7    WORK FROM TUESDAY THROUGH FRIDAY, NOT ON MONDAY GENERALLY.

8    THE HOURS WILL BE FROM 9:30 A.M. TO 4:30 P.M.  ALL

9    HOLIDAYS WILL BE OBSERVED, AND THE CASE WILL NOT CONVENE

10   DURING THE WEEK OF AUGUST 15.  FOR ONE FULL WEEK THE CASE

11   WILL NOT CONVENE.

12        NOW, WE ANTICIPATE THAT THIS CASE WILL TAKE

13   APPROXIMATELY 10 TO 12 WEEKS TO COMPLETE.  IT IS VERY

14   LIKELY THAT THE CASE COULD BE FINISHED IN LESS TIME THAN

15   THAT.  ALL JURORS ARE EXPECTED TO SERVE UNLESS THE COURT

16   EXCUSES THEM FROM SERVICE ON THE CASE, AND ONLY THOSE

17   JURORS WHO HAVE A REAL AND DEMONSTRABLE HARDSHIP WILL BE

18   EXCUSED.

19        WE UNDERSTAND, OF COURSE, THAT ALL JURORS MAKE

20   SACRIFICES WHEN THEY COME HERE AT ANY TIME FOR ANY CASE,

21   BUT THESE TYPES OF CASES THAT TAKE LONGER THAN THE AVERAGE

22   CASE MUST BE TRIED.  IT IS ESSENTIAL.  THE DEFENDANTS HAVE

23   A RIGHT TO HAVE THE CASE TRIED BEFORE A JURY.  THE

24   GOVERNMENT HAS THE SAME RIGHT.  IT IS THE RESPONSIBILITY

25   OF THE JUDICIAL SYSTEM TO GET THESE CASES TRIED.  I KNOW

4

1    IT IS AN IMPOSITION ON JURORS TO ASK THEM TO SIT ON CASES

2    THAT ARE FOR EXTENDED PERIODS OF TIME.  BY COMPARISON TO

3    OTHER CASES, THIS CASE IS NOT REALLY THAT LONG OF A CASE.

4         YOU KNOW, JURORS ARE SO INDISPENSIBLE TO THE

5    CONDUCT OF THE JUDICIAL SYSTEM THAT PROBABLY THEY ARE MORE

6    INDISPENSIBLE THAN JUDGES BECAUSE YOU CAN REPLACE A JUDGE

7    MUCH EASIER THAN YOU CAN REPLACE A JURY.  JURORS ARE VERY

8    MUCH LIKE FIREMEN.  YOU SPEND A LOT OF TIME SITTING AND

9    WAITING AND SOMETIMES WATCHING TELEVISION OR PLAYING

10   CARDS, BUT YOU HAD BETTER HAVE THEM THERE WHEN YOU NEED

11   THEM, AND THAT WAS DEMONSTRATED LAST NIGHT WHEN THE FIRE

12   DEPARTMENT WAS ABLE TO PUT OUT THE FIRE AT THE UNION BANK

13   BUILDING IN VERY SHORT ORDER.

14        BUT WE UNDERSTAND THAT YOU MAKE SACRIFICES.  I

15   WANT YOU TO KNOW NOBODY APPRECIATES IT MORE THAN THE

16   JUDGES DO.  BUT THIS IS ONE OF THE BRANCHES OF GOVERNMENT

17   IN WHICH THE AVERAGE CITIZEN HAS AN OPPORTUNITY TO

18   DIRECTLY PARTICIPATE.  NONE OF US HAVE ANY OPPORTUNITY TO

19   BE HEARD OR HEEDED, FOR THAT MATTER, AS FAR AS THE

20   EXECUTIVE OR LEGISLATIVE DEPARTMENT OF THE COUNTRY, BUT IN

21   THE JUDICIAL SYSTEM THE AVERAGE CITIZEN PLAYS A VERY

22   IMPORTANT PART, JUST AS IMPORTANT AS THE JUDGES, AND

23   WITHOUT YOU, OF COURSE, THE SYSTEM WOULD BREAK DOWN.

24        AND SO WHEN I ASK YOU HERE IN SHORT ORDER ABOUT

25   SERVING ON THIS CASE, I WANT YOU TO SEARCH YOUR HEARTS AND

5

1    SOULS VERY CAREFULLY BEFORE YOU ANSWER VERY QUICKLY THAT

2    YOU WILL NOT BE ABLE TO SERVE.  THE COURT WILL BE

3    QUESTIONING THOSE JURORS WHO SEEK TO BE EXCUSED, AND I

4    WILL BE QUESTIONING YOU CLOSELY ABOUT THAT SO THAT MERE

5    INCONVENIENCE TO YOURSELF OR TO YOUR EMPLOYER IS NOT

6    CONSIDERED A SUFFICIENT REASON TO BE EXCUSED.  THERE

7    REALLY SHOULD BE AN IRREMEDIABLE, IRREVERSIBLE HARDSHIP

8    BECAUSE IF WE ARE UNABLE TO OBTAIN JURORS, THEN THE SYSTEM

9    CANNOT FUNCTION, AND IT IS VERY IMPORTANT TO YOU THAT THE

10   JURY TRIAL SYSTEM BE MAINTAINED BECAUSE IT IS ONE OF THE

11   MOST IMPORTANT SAFEGUARDS THAT WE HAVE IN THIS COUNTRY.

12        NOW, HAVING TOLD WHAT THIS CASE IS ABOUT AND

13   HAVING EXPLAINED TO YOU THE SYSTEM INVOLVED AND THE

14   SCHEDULE THAT THE COURT WILL FOLLOW, WHICH I DON'T THINK

15   IS A VERY BURDENSOME SCHEDULE AS TRIALS GO, I WOULD LIKE

16   NOW TO SEE THE HANDS OF THOSE PEOPLE WHO FEEL THAT THEY

17   WILL BE ABLE TO SERVE AS PROSPECTIVE -- INCIDENTALLY, NOT

18   ALL OF YOU CAN BE CHOSEN TO SERVE, BUT WE WILL BE

19   SELECTING 12 JURORS TO SERVE AND PROBABLY FOUR TO SIX

20   ALTERNATE JURORS.  SO I WOULD LIKE TO SEE THE HANDS OF

21   THOSE INDIVIDUALS WHO FEEL THAT THEY WILL BE AVAILABLE TO

22   SERVE AS JURORS ON THIS CASE FOR THE PERIOD OF TIME THAT I

23   HAVE INDICATED.

24        (PAUSE.)

25        THE COURT:  MAY I ASK YOU ALL TO STAND, PLEASE.

6

1          ALL RIGHT.  I THANK YOU VERY MUCH.

2          IS THE JURY CLERK BACK THERE?

3          MR. SILVA:  YES, YOUR HONOR.

4          THE COURT:  I AM GOING TO ASK THESE LADIES AND

5     GENTLEMEN TO LEAVE THE COURTROOM AND TO OBTAIN THE ORANGE

6     CARDS THAT THEY WILL NEED TO PRESENT UP IN THE JURY

7     ASSEMBLY ROOM.  IS THERE SOMEONE BACK THERE TO GIVE IT TO

8     THEM?

9          MR. SILVA:  YES, YOUR HONOR.

10         THE COURT:  ALL RIGHT.  YOU LADIES AND GENTLEMEN

11    WHO HAVE INDICATED YOUR ABILITY AND WILLINGNESS TO SERVE

12    PLEASE LEAVE THE COURTROOM, AND THE MAN AT THE DOOR WILL

13    GIVE YOU AN ORANGE CARD, WHICH YOU WILL PLEASE TAKE WITH

14    YOU TO THE JURY ASSEMBLY ROOM.

15         (A NUMBER OF PROSPECTIVE JURORS LEFT

16         THE COURTROOM.)

17         THE COURT:  IF ANYONE ELSE FEELS THAT THEY CAN

18    JOIN THIS GROUP, FEEL FREE TO DO SO.

19         LET ME EXPLAIN TO YOU WHAT OUR NEXT ORDER OF

20    BUSINESS WILL BE.  FOR YOU LADIES AND GENTLEMEN WHO ARE

21    REMAINING AFTER THESE FOLKS HAVE COMPLETED GOING THROUGH

22    THE DOOR THERE, I AM GOING TO ASK THE REST OF YOU TO

23    RETURN TO THE JURY ASSEMBLY ROOM.  SOME OF YOU WILL BE

24    BACK HERE ON THURSDAY AND WILL BE QUESTIONED BY THE COURT

25    CONCERNING YOUR ABILITY TO SERVE FOR THE PERIOD OF TIME

7

1    THAT HAS BEEN INDICATED.

2              HAVE WE FINISHED?

3              MR. SILVA:  YES.

4              THE COURT:  NOW THE REMAINING JURORS -- ARE YOU

5    READY TO HAVE THEM RETURN?

6              MR. SILVA:  YES.

7              THE COURT:  WILL YOU PLEASE RETURN TO THE JURY

8    ASSEMBLY ROOM AT THIS TIME.  THANK YOU ALL VERY MUCH FOR

9    YOUR ATTENDANCE.

10             (PAUSE.)

11             THE COURT:  LET ME INDICATE THAT THE DEFENDANTS

12   AND ALL COUNSEL HAVE BEEN PRESENT SINCE WE COMMENCED THESE

13   PROCEEDINGS.

14             THERE IS NOTHING FURTHER FOR TODAY, IS THERE,

15   COUNSEL?

16             MR. TARLOW:  THERE IS A MATTER REGARDING VOIR

17   DIRE WHICH OCCURRED TO ME WHEN I SAW SOME OF THE JURORS.

18             THE COURT:  SAVE IT.  I AM NOT INVITING ANY

19   COMMENT.  IF YOU HAVE SOMETHING REGARDING VOIR DIRE, PUT

20   IT IN WRITING AND SUBMIT IT.

21             MR. TARLOW:  I WOULD SAY, YOUR HONOR, THAT THERE

22   IS A VERY SERIOUS SIMMERING PROBLEM IN THIS PANEL WHICH I

23   HAVE TO BRING TO THE COURT'S ATTENTION AT THE EARLIEST

24   POSSIBLE MOMENT.  IF YOU THINK IT IS A SERIOUS PROBLEM,

25   THEN YOU CAN DECIDE WHAT YOU WANT TO DO ABOUT IT.  IT

8

1   ISN'T A QUESTION --

2          THE COURT:   I AM JUST CURIOUS HOW YOU COULD

3   DETECT A PROBLEM WHEN THESE PEOPLE JUST WALKED INTO THE

4   COURTROOM.   YOU HAVE BEEN EXPOSED TO THEM FOR ABOUT TEN

5   MINUTES.

6          MR. TARLOW:   THAT IS WHAT I WOULD LIKE TO TELL

7   YOU.   I MEAN, YOU HAVE OTHER THINGS TO DO, AND I DO, TOO,

8   AND IT IS SOMETHING I OUGHT TO TELL THE COURT.

9          THE COURT:   PUT IT IN WRITING, MR. TARLOW AND

10  SUBMIT IT IN WRITING.

11          WE ARE IN RECESS.

9

LOS ANGELES, CALIFORNIA, TUESDAY, JULY 19, 10:20 A.M.

1      THE COURT:  LADIES AND GENTLEMEN, GOOD MORNING

2  TO YOU.  YOU HAVE BEEN SUMMONED HERE TO SERVE AS

3  PROSPECTIVE JURORS ON A CASE WHICH I WILL DESCRIBE TO YOU

4  IN JUST A MOMENT.  THIS IS A CASE CALLED UNITED STATES OF

5  AMERICA VS. RENE MARTIN VERDUGO, RAUL LOPEZ ALVAREZ, AND

6  JESUS FELIX GUTIERREZ.

7      IT IS A CRIMINAL CASE.  MR. VERDUGO AND MR.

8  LOPEZ ARE CHARGED IN AN INDICTMENT THAT HAS BEEN FILED IN

9  THIS COURT WITH THE MURDER AND KIDNAPPING OF A DRUG

10  ENFORCEMENT AGENT, ENRIQUE CAMARENA.  THEY ARE ALSO

11  CHARGED WITH THE COMMISSION OF VIOLENT CRIMES, MURDER AND

12  KIDNAPPING, IN AID OF RACKETEERING.

13      THE DEFENDANT JESUS FELIX GUTIERREZ IS CHARGED

14  AS AN ACCESSORY AFTER THE FACT IN ASSISTING A DEFENDANT

15  NAMED IN THE INDICTMENT TO ESCAPE JUSTICE.

16      THESE DEFENDANTS HAVE PLED NOT GUILTY TO THIS

17  INDICTMENT, AND THEY ARE PRESUMED UNDER THE LAW TO BE

18  INNOCENT OF THESE CHARGES UNTIL THEIR GUILT HAS BEEN

19  ESTABLISHED TO THE SATISFACTION OF A JURY BY COMPETENT

20  EVIDENCE PRESENTED IN COURT.

21      THIS WILL BE A VERY INTERESTING CASE FOR THOSE

22  OF YOU WHO ARE ABLE TO SERVE ON IT; AND, UNFORTUNATELY,

23  NOT ALL OF YOU WILL BE ABLE TO SERVE, BUT I WANT TO TELL

24  YOU SOMETHING ABOUT THE ANTICIPATED SCHEDULE THAT WE WILL

25  BE FOLLOWING IN THIS CASE.

10

1       WE WILL BE IN TRIAL FOUR DAYS PER WEEK, TUESDAY

2   THROUGH FRIDAY, AND THE HOURS WILL BE 9:30 TO 4:30 EVERY

3   DAY.  ALL HOLIDAYS DURING THE TRIAL WILL BE OBSERVED.  THE

4   COURT WILL NOT CONVENE DURING THE WEEK OF AUGUST 15.

5   THERE WILL BE ONE WEEK WHEN THE COURT WILL NOT BE IN

6   SESSION.  IT IS ANTICIPATED THAT THIS TRIAL WILL TAKE 10

7   TO 12 WEEKS, BUT IT COULD BE LESS.

8       ALL JURORS ARE EXPECTED TO SERVE, IF CHOSEN,

9   UNLESS THEY HAVE A BASIS FOR BEING EXCUSED FROM SERVICE ON

10  THIS CASE.  NOW, THE COURT WILL QUESTION THOSE JURORS WHO

11  ARE UNABLE TO SERVE, AND BASICALLY IN ORDER TO BE EXCUSED

12  FROM SERVICE, THERE MUST BE A REAL DEMONSTRABLE HARDSHIP

13  THAT IS UNAVOIDABLE AND IRREVERSIBLE.  THOSE WHO CLAIM

14  SUCH A HARDSHIP WILL BE QUESTIONED CLOSELY BY THE COURT

15  ABOUT THAT INABILITY TO SERVE.

16      WE UNDERSTAND, OF COURSE, LADIES AND GENTLEMEN,

17  THAT WHENEVER YOU SERVE ON JURY DUTY THAT IT IS A GREAT

18  SACRIFICE FOR YOU.  NO ONE APPRECIATES THAT MORE THAN THE

19  JUDGES OF THE COURTS.  I WONDER IF YOU APPRECIATE

20  YOURSELVES HOW VITAL A COG YOU ARE TO OUR SYSTEM.  WITHOUT

21  THE AVERAGE CITIZEN BEING AVAILABLE FOR JURY DUTY, THE

22  SYSTEM WOULD BREAK DOWN.

23      WE HAVE THE SYSTEM OF JURY JUSTICE IN THIS

24  COUNTRY IN CRIMINAL AS WELL AS CIVIL CASES, AND YOU ARE AS

25  INDISPENSIBLE OR PERHAPS MORE INDISPENSIBLE THAN THE

11

1    JUDGES.  THE JUDGE CAN BE REPLACED MUCH MORE EASILY THAN A

2    JURY CAN BE.

3            WE UNDERSTAND THAT BEING ON JURY DUTY IS NOT

4    ALWAYS PLEASANT; THAT YOU SOMETIMES HAVE TO WAIT AROUND.

5    I LIKEN JURORS TO FIREMEN.  THEY ARE PEOPLE IN OUR COUNTRY

6    WHO SPEND A GREAT DEAL OF TIME JUST SITTING AROUND

7    WATCHING TELEVISION OR PLAYING CARDS, BUT WHEN YOU NEED

8    THEM, YOU BETTER HAVE THEM THERE.  SO JURORS ARE VERY MUCH

9    LIKE THAT, AND WHEN I ASK ABOUT YOUR ABILITY TO SERVE IN

10   THIS CASE, I WANT YOU TO REALLY THINK HARD, SEARCH YOUR

11   HEART AND SOUL, AND DECIDE WHETHER OR NOT YOU CAN GIVE

12   THIS TIME IN THE SERVICE -- WELL, IT IS IN THE SERVICE OF

13   YOUR COUNTRY.

14           NOW, THE JUDICIAL BRANCH OF GOVERNMENT IS CALLED

15   THE THIRD BRANCH.  THE AVERAGE CITIZEN HAS VERY LITTLE

16   INPUT IN THE OTHER TWO BRANCHES, THE EXECUTIVE AND THE

17   LEGISLATIVE BRANCHES.  MOST OF US ARE NEITHER HEARD NOR

18   HEEDED BY ANYONE.  BUT IN THIS BRANCH YOU ARE VITAL COGS

19   IN IT.  YOU MAKE THE DECISIONS IN THESE CASES.  WITHOUT

20   YOU, THE BRANCH WOULD NOT FUNCTION.  THE JUDICIAL SYSTEM

21   WOULD BREAK DOWN.

22           SO AS GOOD CITIZENS I WILL ASK YOU TO CONSIDER

23   VERY CAREFULLY BEFORE YOU RESPOND TO WHETHER OR NOT YOU

24   CAN SERVE IN THIS CASE OR WHETHER OR NOT YOU CAN MAKE THAT

25   LITTLE EXTRA SACRIFICE THAT MIGHT ALLOW YOU TO SERVE IN

12

1    THIS CASE.

2            I AM GOING TO FIRST ASK THOSE MEMBERS OF THE

3    JURY PANEL WHO ARE ABLE TO SERVE FOR THIS PERIOD OF TIME

4    ON THIS CASE -- AND KEEP IN MIND THAT ONLY ABOUT 12 JURORS

5    WILL BE CHOSEN AND PERHAPS FOUR TO SIX ALTERNATES, SO THE

6    CHANCES FOR MOST OF YOU ARE THAT YOU WILL NOT BE SELECTED.

7    BUT LET ME ASK THOSE PERSONS WHO FEEL THAT THEY CAN SERVE

8    IN THIS CASE TO PLEASE STAND.

9            (A NUMBER OF PEOPLE STOOD.)

10           THE COURT:  ALL RIGHT.  THANK YOU.

11           AND I WOULD ASK -- PLEASE REMAIN STANDING

12   BECAUSE I WANT TO ASK YOU NOW TO LEAVE THE COURTROOM, AND

13   THERE WILL BE A GENTLEMAN AT THE DOOR WHO WILL GIVE YOU AN

14   ORANGE CARD WHICH YOU WILL TAKE WITH YOU BACK TO THE JURY

15   ASSEMBLY ROOM.

16           I WANT TO CAUTION YOU IN ONE OTHER WAY IF I CAN.

17   EVEN THOUGH YOU ARE NOT JURORS YET ON THIS CASE, THIS IS A

18   CASE THAT IS LIKELY TO PRODUCE SOME PUBLICITY IN THE

19   NEWSPAPERS OR ON TELEVISION.  I WOULD LIKE YOU NOT TO READ

20   ANYTHING ABOUT THIS CASE, AVOID READING IT, TO AVOID

21   LISTENING TO ANYTHING UNTIL YOU ARE FREED FROM THIS CASE.

22   I WANT YOU TO ACT AS THOUGH YOU WERE A JUROR ON THIS CASE

23   ALREADY AND AVOID BEING EXPOSED TO RADIO, TELEVISION, OR

24   NEWSPAPER STORIES ABOUT THE CASE.  ALL RIGHT.

25           THEN WOULD YOU LADIES AND GENTLEMEN PROCEED OUT

13

1   THE DOOR.  THOSE WHO HAVE STOOD, WILL YOU PLEASE LEAVE THE

2   COURTROOM.

3           (A NUMBER OF PEOPLE LEFT THE COURTROOM.)

4           THE COURT:  I WILL EXPLAIN TO THE REMAINING

5   MEMBERS OF THE PANEL THAT THIS IS ALL WE ARE GOING TO NEED

6   YOU FOR TODAY, AND WHEN THESE PEOPLE HAVE FINISHED

7   LEAVING, I AM GOING TO ASK YOU ALL TO RETURN TO THE JURY

8   ASSEMBLY ROOM, IF YOU WOULD, PLEASE.  THANK YOU VERY MUCH.

9           (ALL PROSPECTIVE JURORS LEFT THE

10          COURTROOM.)

11          THE COURT:  COUNSEL, IT LOOKS LIKE THERE MAY

12   HAVE BEEN A LARGER NUMBER IN THIS LAST GROUP THAN IN THE

13   FIRST GROUP, AND I UNDERSTAND THE FIRST GROUP INCLUDED 53

14   PERSONS, AND THIS GROUP MAY WELL HAVE INCLUDED MORE THAN

15   THAT.  THEY WILL GIVE US A COUNT VERY SHORTLY.

16          NOW, THAT MAY WELL BE SUFFICIENT FOR US TO START

17   SCREENING THEM ON THE PUBLICITY QUESTIONS.  EACH OF THESE

18   PEOPLE WILL BE COMPLETING A QUESTIONNAIRE WHEN THEY LEAVE

19   HERE.  THEY WILL BE GIVEN A QUESTIONNAIRE AND WILL

20   COMPLETE IT BEFORE THEY LEAVE TODAY.  WE WILL BE ABLE TO

21   PROVIDE THOSE TO YOU, I THINK, TODAY, AND THESE JURORS

22   WOULD THEN BE ASKED TO RETURN.

23          NOW, MR. TARLOW, YOU STARTED TO SAY SOMETHING

24   EARLIER, AND I TOLD YOU TO PUT IT IN WRITING.

25          MR. TARLOW:  I APPRECIATE YOUR COURTESY, YOUR

14

1   HONOR, IN NOT REQUIRING ME TO DO THAT.  I WAS JUST TRYING

2   TO HELP THE COURT OUT.  I THOUGHT I WOULD TELL THE COURT

3   WHAT I SAW AS A PROBLEM.

4            THE COURT:  HAVE YOU SHARED YOUR CONCERN WITH

5   THE OTHER COUNSEL?

6            MR. TARLOW:  WHICH OTHER COUNSEL?  NOT WITH THE

7   PROSECUTORS.  I HAVE TALKED TO THE DEFENSE LAWYERS.

8            LET ME TELL YOU SIMPLY WHAT IT IS, AND YOU CAN

9   DECIDE IF YOU THINK IT IS A PROBLEM OR SOMETHING WE HAVE

10  TO DEAL WITH WHEN THEY COME BACK.

11           THERE WAS AT LEAST ONE JUROR IN THE AUDIENCE

12  WHO, I BELIEVE, WAS ON THE SUBIAS CASE.

13           THE COURT:  ON WHAT CASE?

14           MR. TARLOW:  THE SUBIAS CASE.  HE WAS AN

15  INDIVIDUAL WHO WAS TRIED IN JUDGE PFAELZER'S COURT.  THERE

16  WAS PUBLICITY ABOUT HIM BEING A MURDERER, SUPPOSEDLY

17  KILLING FOUR PEOPLE AND BEING INVOLVED IN THIS CASE.

18           THE COURT:  WHO?  THE JUROR?

19           MR. TARLOW:  NOT THE JUROR.  MR. SUBIAS.

20           THE COURT:  THE DEFENDANT IN THAT CASE?

21           MR. TARLOW:  IN THE CARO-QUINTERO CASE.

22           THE COURT:  DID YOU REPRESENT THAT DEFENDANT?

23           MR. TARLOW:  NO, I DIDN'T.

24           THE COURT:  WHAT IS THE SOURCE OF YOUR KNOWLEDGE

25  ABOUT THOSE PROCEEDINGS?

15

1          MR. TARLOW:  ONE OF THE JURORS CAME INTO JUDGE

2     RAE'S COURT WHEN I WAS SELECTING A JURY A WEEK AND A HALF

3     AGO OR SO.  HE PROCEEDED TO MAKE SOME RATHER BIZARRE

4     STATEMENTS WHICH GOT HIM DISQUALIFIED FOR CAUSE, AND HE

5     MADE THEM IN THE PRESENCE OF THE OTHER JURORS.

6          AMONG OTHER THINGS, HE TOLD US THAT THE JURORS

7     IN THE SUBIAS CASE, SOME OF WHOM MAY BE HERE OTHER THAN

8     HIM, HAVE READ ABOUT THESE MURDERS, HAVE READ ABOUT THE

9     CONNECTION WITH CARO-QUINTERO, HAD FELT THAT THEIR SAFETY

10    WAS IN DANGER, HAD DISCUSSED IT AMONG THEMSELVES, HAD FELT

11    THAT THEY WERE THREATENED BY DEFENSE LAWYERS IN THE CASE

12    AND INVESTIGATORS IN THE CASE AND, IN OTHER WORDS, WAS IN

13    SUCH A STATE OF PANIC ABOUT THE CARO-QUINTERO SITUATION

14    AND HIS JURY EXPERIENCE THAT HE FELT THAT HIS LIFE, HIS

15    FAMILY'S LIFE, AND EVERYONE ELSE WAS THREATENED AS A

16    RESULT OF THAT PROCESS AND HAD DISCUSSED THIS AMONG THE

17    OTHER JURORS.

18          NOW, WHAT I AM CONCERNED ABOUT IS IF THIS IS THE

19    SAME MAN -- I BELIEVE IT IS; I CAN'T BE POSITIVE.

20          THE COURT:  DO YOU KNOW THE MAN'S NAME?

21          MR. TARLOW:  I DON'T.  I CAN FIND OUT VERY

22    SHORTLY, BUT --

23          THE COURT:  FIND OUT.

24          MR. TARLOW:  I DON'T KNOW HIS NAME, AND I

25    THOUGHT THIS WAS SOMETHING I OUGHT TO BRING TO YOUR

16

1  ATTENTION BEFORE THE WHOLE PANEL GETS INFECTED.  I

2  APPRECIATE YOUR COURTESY IN NOT REQUIRING ME TO GO BACK

3  AND WRITE IT OUT.

4         THE COURT:  FIND OUT THE MAN'S NAME AND SEE IF

5  IT IS THE SAME PERSON BECAUSE YOU SEEM UNSURE ABOUT IT.

6  IF HE IS AND IF THERE IS NO OBJECTION BY OTHER COUNSEL, WE

7  MAY SIMPLY EXCUSE HIM.

8         MR. TARLOW:  HE OPTED OUT, YOUR HONOR.  HE SAID

9  THAT THE TIME WAS TOO LONG HERE.

10        THE COURT:  HE OPTED OUT?  WE ARE NOT LIKELY TO

11  SEE HIM AGAIN.

12        MR. TARLOW:  I DON'T KNOW IF WE ARE OR NOT,

13  DEPENDING ON YOUR HONOR'S THEORY.  THE JURORS DISCUSSED

14  ALL OF THIS.  THEY DISCUSSED THIS ON THE PHONE AND IN THE

15  JURY ROOM, AND BASED ON HIS WILLINGNESS TO TALK ABOUT THIS

16  IN JUDGE RAE'S COURT, I AM CONCERNED THAT HE IS GOING TO

17  GO UPSTAIRS AND START CHATTERING ABOUT IT AGAIN.  IT WAS

18  SOMETHING WHICH HE PERCEIVED TO BE AN IMMEDIATE THREAT TO

19  THE SAFETY OF HIS FAMILY AND TO HIM.

20        THE COURT:  WHAT DO YOU PROPOSE THAT WE DO ABOUT

21  IT?

22        MR. TARLOW:  I DON'T THINK THERE IS ANYTHING WE

23  CAN DO NOW OTHER THAN FIND OUT WHEN THEY COME BACK WHETHER

24  ANY OF THEM SAT IN THE SUBIAS CASE AND WHETHER THE SUBIAS

25  CASE HAS BEEN DISCUSSED AMONG THEM.  I THINK THAT IS ALL

17

1   WE CAN DO THEN.

2           I THOUGHT I WOULD TELL YOU ABOUT IT AND FIND OUT

3   THE GUY'S NAME AFTER WE LEAVE.

4           THE COURT:  ALL RIGHT.

5           MR. GURULE:  FOR A POINT OF CLARIFICATION WITH

6   RESPECT TO MR. SUBIAS, THERE WERE TWO CASES THAT HAVE

7   RECENTLY BEEN TRIED IN THIS COURTHOUSE.  ONE WAS A SIMPLE

8   FAILURE TO APPEAR AT TRIAL, AND I BELIEVE THAT WAS BEFORE

9   JUDGE PFAELZER.  THE OTHER WAS --

10          MR. TARLOW:  NO.  YOU HAVE THAT IN REVERSE.

11  THAT WAS BEFORE JUDGE CURTIS.  IT WAS SENT OUT FROM JUDGE

12  HAUK.

13          MR. GURULE:  BEFORE JUDGE CURTIS.  AND THE OTHER

14  WAS A NARCOTICS CASE BACK IN 1980, A ONE KILOGRAM

15  NARCOTICS CASE BACK IN 1980, WHICH HAD NOTHING TO DO WITH

16  CARO-QUINTERO.  THE FAILURE TO APPEAR HAD NOTHING TO DO

17  WITH CARO-QUINTERO.  THE NARCOTICS CASE BEFORE JUDGE

18  PFAELZER HAD NOTHING TO DO WITH CARO-QUINTERO.

19          MR. TARLOW:  NO QUESTION ABOUT THAT, AND THAT IS

20  WHAT IS SO TROUBLING THAT HE READ THE NEWSPAPER ARTICLES

21  AND FELT HIS LIFE -- ABOUT MR. SUBIAS KILLING PEOPLE AND

22  ABOUT CARO-QUINTERO IN THIS CASE AND FELT THAT HIS LIFE

23  AND THAT OF THE OTHER JURORS WAS IN DANGER.

24          THE COURT:  HE WAS ONE OF THE PROSPECTIVE JURORS

25  WHO DID NOT STAND UP.

18

1      MR. TARLOW:  HE DID NOT STAND UP.  AND THIS WAS

2  ABOUT THREE WEEKS AGO, I WOULD SAY, YOUR HONOR.  THIS CASE

3  WAS A 1980 CASE.

4      THE COURT:  TRY AND FIND OUT HIS NAME, AND WE

5  WILL SEE IF HE IS EVEN A MEMBER OF THIS PANEL.  HE MAY NOT

6  BE.

7      MR. TARLOW:  I WILL DO THE BEST I CAN.

8      THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

9      THE PLAN NOW IS, IF I CAN GET THIS TRIAL

10  FINISHED, TO RECONVENE THIS CASE ON THURSDAY MORNING.  AT

11  THAT TIME IT WILL HAVE BEEN PROVIDED WITH THE JURY

12  QUESTIONNAIRES.  WE WILL COMMENCE THE JURY SELECTION, THE

13  REGULAR VOIR DIRE PROCESS, DEPENDING ON THE NUMBER OF

14  PEOPLE WE HAVE, AND WE WILL KNOW THAT VERY SHORTLY.

15      IS THERE ANYTHING FURTHER?

16      MR. GURULE:  TWO POINTS, YOUR HONOR.  RELATIVE

17  TO THE VOIR DIRE PROCESS, DOES THE COURT INTEND TO BRING

18  BACK THE JURORS THAT OPTED OUT AND SAID THEY COULDN'T

19  SERVE?

20      THE COURT:  I DON'T THINK IT WILL BE NECESSARY.

21  I THINK THE JURORS THAT I SAW THAT STOOD UP PROBABLY

22  NUMBER OF 100, AND THEY LOOKED LIKE A VERY GOOD CROSS

23  SECTION.

24      COUNSEL, DO YOU AGREE WITH THAT?

25      MS. BROOKS:  I THINK THE CONSENSUS, YOUR HONOR,

19

1   IS THAT OVER 100 SHOULD BE MORE THAN ENOUGH.  AFTER THE

2   PRETRIAL PUBLICITY SCREENING AND SO ON, I THINK WE WILL

3   END UP WITH A FAIRLY GOOD PANEL.

4           THE COURT:  I WOULD THINK SO.

5           MR. GURULE:  THE LAST POINT IS RELATIVE TO THE

6   COURT'S PREVIOUS RULING REGARDING THE CONSOLIDATION OF

7   COUNTS, RELATIVE TO THE ACCESSORY AFTER THE FACT COUNT,

8   THE GOVERNMENT HAS PREPARED AN AMENDED INDICTMENT FOR THE

9   COURT'S ORDER AND HAS CIRCULATED IT.

10          THE COURT:  HAVE YOU GIVEN IT TO COUNSEL?

11          MR. GURULE:  YES, YOUR HONOR.  IT IS MY

12  UNDERSTANDING THAT THERE HAS NOT BEEN ANY OBJECTION TO

13  THAT.

14          THE COURT:  IS IT APPROPRIATE?

15          MR. PANCER:  WHAT I SAID, YOUR HONOR, IS THAT I

16  WANT TO COMPARE IT VERY CAREFULLY WITH THE ORIGINAL

17  INDICTMENT.  I WILL DO THAT, YOUR HONOR.

18          THE COURT:  IF I DON'T HEAR FROM YOU ON THE

19  RECORD, I WILL ASSUME IT IS ACCEPTABLE.

20          MR. GURULE:  I WILL FILE THAT WITH THE COURT

21  TODAY AS WELL, YOUR HONOR.

22          THE COURT:  ALL RIGHT.

23          MS. LEYVA:  THE OTHER MATTER IS THAT WE HAVE

24  SOME MOTIONS IN LIMINE PENDING THAT THE COURT WILL HEAR ON

25  THURSDAY, AND WE WOULD JUST LIKE TO HAVE THOSE MOTIONS

20

1    HEARD PRIOR TO THE OPENING STATEMENTS.

2              THE COURT:  THEY WILL BE.

3              MS. LEYVA:  THANK YOU.

4              MR. TARLOW:  YOUR HONOR, THERE ARE SOME IN

5    LIMINE MOTIONS BEYOND EXCLUDING WRONGFUL CONDUCT.  I

6    BELIEVE LAST TUESDAY WE HAD ON A MOTION FOR WRONGFUL

7    CONDUCT.  THERE ARE ALSO SOME SEPARATE IN LIMINE MOTIONS.

8    DOES THE COURT HAVE IN MIND HEARING THOSE?

9              THE COURT:  NO.  I HAVE NOT SEEN THOSE.  HAVE

10   THEY BEEN FILED AFTER THE OTHERS?

11             MR. TARLOW:  YES, SIR.

12             THE COURT:  ALL THE MOTIONS THAT WERE SET ON

13   MONDAY WILL BE DISPOSED OF ON THURSDAY.

14             MR. TARLOW:  ACTUALLY THEY ARE OBJECTIONS.  THEY

15   ARE REALLY NOT MOTIONS.  I THINK IT WOULD BE HELPFUL FOR

16   OPENING STATEMENTS IF WE COULD --

17             THE COURT:  WE WILL DISPOSE OF ALL OF THE

18   MOTIONS BEFORE OPENING STATEMENTS.

19             ALL RIGHT.  WE WILL START ON OUR OTHER CASE.

20             THE CLERK HAS THE TOTAL NUMBER OF PEOPLE.  IT IS

21   124.

22             (PROCEEDING CONCLUDED.)

23                  -  -  -

24        I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT

25        TRANSCRIPT OF THE PROCEEDINGS HAD ON THE RECORD

21

1    IN THE ABOVE-ENTITLED MATTER.

2

3        *Vehra B. Thomas*        2/17/89

4    OFFICIAL REPORTER        DATE