



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
(Hon. Edward Rafeedie)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 87-422(A) |
| | ) | |
| Plaintiff, | ) | |
| | ) | NOTICE OF MOTION; |
| v. | ) | MOTION FOR DISCOVERY; |
| | ) | MEMORANDUM OF POINTS AND |
| RENE MARTIN VERDUGO-URQUIDEZ, | ) | AUTHORITIES IN SUPPORT OF |
| | ) | MOTION FOR DISCOVERY; |
| Defendant. | ) | PROOF OF SERVICE |
| | ) | |



# TABLE OF AUTHORITIES

Page

CASES

Cohen v. United States
   378 F.2d 751 (9th Cir. 1967)................... 46, 47

Davis v. Heyd
   479 F.2d 446 (5th Cir. 1973)...................    44

Dennis v. United States
   384 U.S. 855 (1966)...........................    25

Furman v. Georgia
   408 U.S. 238 (1972)...........................    50

Guerrero v. Beto
   384 F.2d 886 (5th Cir. 1968)..................    37

In re Millow
   529 F.2d 770 (7th Cir. 1976)..................    45

Johnson v. Brewer
   521 F.2d 556 (9th Cir. 1975)..................    44

Lorraine v. United States
   396 F.2d 335 (9th Cir. 1968)..................    40

Martinez v. Wainwright
   621 F.2d 184 (5th Cir. 1980)..................    38

Pittsburg Plate Glass Company v. United States
   360 U.S. 395 (1959)...........................    25

State of Wisconsin v. Schaffer
   565 F.2d 961 (7th Cir. 1977)..................    25

Tucker v. United States
   409 F.2d 1291 (5th Cir. 1969).................    30

United States v. Alter
   482 F.2d 1016 (9th Cir. 1973)................. 46, 47

United States v. Angelini
   607 F.2d 1305 (9th Cir. 1979).................    49

United States v. Antone
   603 F.2d 566 (5th Cir. 1979).................     40

United States v. Auten
   632 F.2d 478 (5th Cir. 1980).................     38

United States v. Barrett
   703 F.2d 1076 (9th Cir. 1973)................     18

-i-

Page

United States v. Baum
    488 F.2d 1325 (2d Cir. 1973)...................    51

United States v. Boyce
    611 F.2d 530 (4th Cir. 1979)...................    30

United States v. Edwards
    503 F.2d 838 (9th Cir. 1974)...................    25

United States v. Eisler
    567 F.2d 814 (8th Cir. 1977)...................    20

United States v. Gerard
    491 F.2d 1300 (9th Cir. 1974)..................    40

United States v. Gordon
    580 F.2d 827 (5th Cir. 1978)...................    21

United States v. Hemmer
    729 F.2d 10 (1st Cir. 1984)....................21, 22

United States v. Jackson
    508 F.2d 1001 (7th Cir. 1975).................. 51, 52

United States v. Kennedy
    618 F.2d 557 (9th Cir. 1980)................... 50, 51

United States v. Keogh
    391 F.2d 138 (2d Cir. 1968)....................    37

United States v. Koopmans
    757 F.2d 901 (7th Cir. 1985)...................22, 23

United States v. Leichtfuss
    331 F.Supp. 723 (N.D. Ill. 1971)...............    54

United States v. Marshall
    526 F.2d 1349 (9th Cir. 1975)..................    25

United States v. Richter
    488 F.2d 170 (9th Cir. 1973)................... Passim

United States v. Rodarte
    596 F.2d 141 (5th Cir. 1979)...................    32

United States v. Shaffer
    789 F.2d 682 (9th Cir. 1986)................... Passim

United States v. Steel
    759 F.2d 706 (9th Cir. 1985)...................    51

United States v. Sukomolachan
    610 F.2d 685 (9th Cir. 1980)...................    49

Page

United States v. Wilson
   556 F.2d 1177 (4th Cir. 1977).................... Passim

United States v. Wolf
   561 F.2d 1376 (10th Cir. 1977)................     30

United States v. Wylie
   625 F.2d (9th Cir. 1980)........................ 47, 48

United States v. Yanagita
   552 F.2d 940 (2d Cir. 1977).....................     45

## Statutes

Title 18, U.S.C. section 1111.................... 49, 50

Title 18, U.S.C. section 3432...................     49

Title 18, U.S.C. section 3504...................    Passim

Rule 16, Federal Rules of Criminal Procedure.....    Passim

Rule 16(a)(1)(D), Federal Rules of Criminal
   Procedure....................................     20

Rule 609, Federal Rules of Evidence............. 29, 30

## Publications

"The Collateral Use of Foreign Convictions in
American Criminal Trials"
   47 University of Chicago Law Review 82 (1979)..     32

MICHAEL PANCER
ATTORNEY AT LAW
625 Broadway, Ste. 1135
San Diego, California  92101
Telephone:  (619) 236-1826


JUANITA R. BROOKS, ESQ.
108 Ivy Street
San Diego, California  92101
Telephone:  (619) 231-8621


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
(Hon. Edward Rafeedie)

UNITED STATES OF AMERICA,     )     Case No. CR 87-422(A)
                              )
             Plaintiff,       )
                              )
v.                            )     NOTICE OF MOTION
                              )
RENE MARTIN VERDUGO-URQUIDEZ, )
                              )
             Defendant.       )
_____)

TO: ROBERT BONNER, United States Attorney and RAUL

    CAMPOS and JAMES GURULE, Assistant United States

    Attorneys

        PLEASE TAKE NOTICE that on February 16, 1988, at

the hour of 1:30 p.m., or as soon thereafter as counsel

may be heard, defendant RENE MARTIN VERDUGO-URQUIDEZ, by

and through his attorneys, MICHAEL PANCER and JUANITA R.

BROOKS will move the court for discovery as further set

forth in the accompanying motion for discovery.

        Said notice is based on the instant notice,

motion, memorandum of points and authorities, the records

and files in the instant case, and any and all matters

1 | which may be presented to the court prior to or at the

2 | time of the hearing of said motion.

3 | Respectfully submitted,

5 | Dated: February 2, 1988

MICHAEL PANCER
Attorney for Defendant
RENE MARTIN VERDUGO-URQUIDEZ

JUANITA R. BROOKS
Attorney for Defendant
RENE MARTIN VERDUGO-URQUIDEZ

-2-

MICHAEL PANCER
ATTORNEY AT LAW
625 Broadway, Ste. 1135
San Diego, California  92101
Telephone:  (619) 236-1826


JUANITA R. BROOKS, ESQ.
108 Ivy Street
San Diego, California  92101
Telephone:  (619) 231-8621


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
(Hon. Edward Rafeedie)

UNITED STATES OF AMERICA,      )     Case No. CR 87-422(A)
                               )
                Plaintiff,     )
                               )
v.                             )     MOTION FOR DISCOVERY
                               )
RENE MARTIN VERDUGO-URQUIDEZ,  )
                               )
                Defendant.     )
_____)


        COMES NOW defendant RENE MARTIN VERDUGO-URQUIDEZ,

by and through his attorneys, MICHAEL PANCER and JUANITA

R. BROOKS, and respectfully moves the Court for discovery

pursuant to Rules 2, 16, 17, Title 18 U.S.C. section 3432,

the Due Process Clause to the United States Constitution

and this Court's standing order for discovery and

inspection in criminal cases.

        On January 26, 1988, attorney JUANITA BROOKS met

with the Assistant U. S. Attorneys Raul Campos and James

Gurule to confer regarding the Order for Discovery and

Inspection in Criminal Cases.  The more particular items

upon which defense counsel agreed are set forth in the

introductory statement of the Memorandum of Points and
Authorities.  Based upon the Government's declination to
disclose items, the instant motion is brought solely with
respect to items contained within the items of discovery
specified as Items One (a) through (h) of the Court's
standing order.

Defendant VERDUGO-URQUIDEZ respectfully reserves
the right to request additional discovery based upon items
forthcoming from the Government and items not particularly
covered by this discovery order.

Based upon the foregoing, defendant
VERDUGO-URQUIDEZ respectfully requests discovery of the
following:

### ITEM ONE (a)

(1)  All statements of VERDUGO-URQUIDEZ, written,
recorded or oral, which have not already been provided, or
copies thereof, within the possession, custody or control
of the government, the existence of which is known, or by
the exercise of due diligence may become known to the
attorney for the government.

(2)  All statements by defendant VERDUGO-URQUIDEZ
intercepted pursuant to the alleged consent of one of the
parties, including by means of a hidden body recorder,
tape recorder or other electronic means.

(3)  All oral statements which the government
intends to offer in evidence at the trial and its
case-in-chief or as impeachment evidence made by defendant

-2-

1  VERDUGO-URQUIDEZ, whether before or after his arrest in

2  response to interrogation by any person known to defendant

3  VERDUGO-URQUIDEZ to be a government agent.

4                           ITEM ONE (b)

5          (1)  A list of all government experts who will

6  testify in the government's case-in-chief, or who have

7  examined evidence, prepared reports, or made statements in

8  connection with the instant case.  It is specifically

9  requested that this item of discovery include, but not be

10  limited to the following:

11  (A)  names, telephone numbers and present whereabouts of

12  experts;

13  (B) chemical analysis reports relating to the method of

14  analysis, computations, handwritten notes and reports of

15  conclusions and results; (C) fingerprint comparison

16  reports, method of comparison, handwritten notes, and

17  specific points of identification and the number of

18  points, and reports of conclusions or results;

19  (D) handwriting comparison reports, methods utilized,

20  handwriting exemplars, notes and reports of conclusions or

21  results;

22  (E) any reports or the substance thereof relating to

23  expert testimony identifying narcotic ledgers or other

24  documentation purporting to identify any documentation as

25  related to trafficking of narcotics;

26

27

28

                              -3-

(F) any human hair analysis reports including the method
of analysis, computations, handwritten notes, and reports
of conclusions and results;

(G) all autopsy reports, including any forensic reports,
handwritten notes, and other reports relied upon by
experts to reach their conclusions;

(H) all voice analysis reports of any tape recorded
conversation including the method of identification, all
graph, spectrograph and voice prints taken including
reports and notes regarding comparison of voice analysis
with voice exemplars provided by defendant
VERDUGO-URQUIDEZ before the grand jury sitting in
Washington, D.C.;

(I) all enhancement and tape recording authenticity
reports, including the method of analysis, handwritten
notes, all prints regarding background noises, reports and
notes regarding the analysis of the authenticity of the
tape recording and all reports prepared in connection with
the enhancement of said tape recordings;

(J) the experts' vitae.

It is specifically requested that this item of
discovery include all reports and analyses conducted by
Mexican law enforcement officials or Mexican government
officials. This item specifically includes all forensic
reports and autopsy reports prepared by Mexican
authorities.

-4-

ITEM ONE (c)

(1)    Transcripts of all grand jury testimony by defendant VERDUGO-URQUIDEZ before the grand jury sitting in the District of Columbia and any and all voice exemplars obtained as a result of his grand jury testimony.

ITEM ONE (d)

(1)    Copies of all unredacted tape recordings of undercover contacts between Enrique Camarena-Salazar and a confidential informant;

(2)    Copies of the original tape recording of the purported interrogation of Enrique Camarena-Salazar, including identification of the government's definition of government's "working tape recording,"; and

(3)    First generation copies of all enhanced tape recordings of the purported tape recorded interrogation of Enrique Camarena-Salazar.

ITEM ONE (e)

(1)    All prior convictions of any witness the government intends to call, including access to certified copies of convictions in the United States, copies of presentence reports relating to these convictions, and government reports in possession of the United States Attorney's Office for any district relating to the underlying offenses, including copies of all plea agreements;

-5-

1    (2)  Identification of all convictions by

2  government witnesses in any foreign republic, specifically

3  including, but not limited to the Republic of Mexico.

4                        ITEM ONE (f)

5        All evidence favorable to the defendant within the

6  meaning of Agurs/Giglio/Brady including the following:

7    (1)  Any and all consideration or promises of

8  consideration given to or on behalf of witnesses or

9  expected or hoped for by witnesses in the instant case.

10  By "consideration," defendant VERDUGO-URQUIDEZ refers to

11  absolutely anything, whether bargained for or not, which

12  arguably could be of value or use to a witness or to

13  persons of concern to the witness, including but not

14  limited to, formal or informal, direct or indirect,

15  leniency; favorable treatment or recommendations; or other

16  assistance with respect to any pending or potential

17  proceeding, including parole, probation, pardon, clemency,

18  civil, tax court, court of claims, administrative or other

19  dispute with the United States of America or the Republic

20  of Mexico, or with any authority or with any other party;

21  criminal, civil or tax immunity grants; relief from

22  forfeiture; payments of money; awards; fees; special

23  witness fees; provision of food, clothing, shelter,

24  transportation, legal services or other benefits;

25  placement in a "witness protection program" and anything

26  else which could reveal an interest, motive or bias in the

27  witness in favor of the plaintiff or against the defense

28

-6-

1  or act as an inducement to testify or to color testimony.
2  In addition to the request for consideration, defendant
3  VERDUGO-URQUIDEZ requests that any and all threats,
4  express or implied, direct or indirect, or other coercion
5  made or directed against any witness, including criminal
6  prosecutions, investigations or potential prosecutions
7  pending or which could be brought against the witnesses,
8  be revealed.

9       (2)  All information related to psychiatric
10  treatment of any government witness, including the name of
11  the hospital or other in-patient facility; the date of
12  admission; the date of release; all medications used; or
13  the name of any out-patient psychiatric clinic or other
14  service facility used by any government witness;

15       (3)  A description of any alleged prior or
16  subsequent bad acts of any potential government witness,
17  which the government knows about but is not prosecuting,
18  including a detailed description of the act, the date,
19  time and place of the act; and the name, addresses and
20  phone numbers of all witnesses who claimed to have
21  witnessed the bad act;

22       (4)  Any statements made by any potential
23  government witness regarding his or her motive for making
24  false statements regarding defendant VERDUGO-URQUIDEZ,
25  including statements relating to revenge, jealousy, money
26  or hatred;

27

28
                              -7-

1     (5)  Any record of prior criminal arrests of any

2   government witness and specifically including the "rap

3   sheet" of any witness the prosecuting attorney intends to

4   call as a witness at the hearing or trial including

5   arrests in the Republic of Mexico;

6     (6)  A description of all other investigations in

7   which the government witnesses have participated and

8   received consideration as described in Item One (f)(1)

9   above.  By "description" defendant VERDUGO-URQUIDEZ means

10  disclosure of the nature of the investigation, targets of

11  the investigation, a detailed description of the

12  participation of the witness, whether the investigation

13  resulted in prosecution, and if so the names of

14  individuals prosecuted, case number and outcome of the

15  prosecution.  Specifically this item includes any

16  confidential personnel file maintained by DEA, Customs,

17  FBI, IRS, or any other state agency or Mexican agency

18  cooperating with this informant which would contain the

19  above cited records as well as other records reflecting

20  transactions between the agency and the particular

21  informant;

22    (7)  The existence and identification of each

23  occasion on which the witness has testified before any

24  court, grand jury, or other tribunal or body or otherwise

25  officially narrated in relation to the defendant, the

26  investigation, or the facts of this case;

27

28

-8-

1     (8)  An "accounting" of all funds paid to the

2    informant in the instant case for information, reward,

3    travel expenses, security expenses from the beginning of

4    his cooperation with the government and including the

5    present and up to commencement and through the trial;

6          (9)  Any internal government memorandum regarding

7    the cooperation of the government witnesses or any

8    government informant in connection with the instant case;

9          (10) All tax returns for government informants and

10    witnesses for the time period covered in the instant

11    indictment;

12          (11) All presentence reports in possession of the

13    probation department of the United States government

14    containing admissions by any of the Government witnesses

15    and informants as well as expectations of the witnesses as

16    to leniency through cooperation.

17                        ITEM ONE (g)

18          (1)  Any and all actual voice records, tapes,

19    mechanical, or electronic recordings (including all pen

20    register data, beepers, buzzers), logs, records,

21    memoranda, letters and airtels of any electronic or other

22    surveillance of any wire or oral communication:

23     (A) to which defendant RENE MARTIN VERDUGO-URQUIDEZ was

24    identified as a party;

25     (B) at any place in which RENE MARTIN VERDUGO-URQUIDEZ

26    had any property right or any other nexus of use and

27    reasonable expectation of privacy;  (C) intercepted for

28
                             -9-

the purpose, in whole or in part, of gathering evidence or
leads concerning RENE MARTIN VERDUGO-URQUIDEZ;

(D) in which RENE MARTIN VERDUGO-URQUIDEZ is named or
otherwise referred to;

(E) intercepted pursuant to warrant or application in
which RENE MARTIN VERDUGO-URQUIDEZ's name appears, or
which warrant or application was based upon materials in
which RENE MARTIN VERDUGO-URQUIDEZ's name appears;

(F) at any place in which RENE MARTIN VERDUGO-URQUIDEZ
was at the time of surveillance;

(G) to which any attorney for RENE MARTIN
VERDUGO-URQUIDEZ, his agent or employee was a party in any
conversation in which his attorney, his agent,
investigator or employee was present specifically
including Michael Pancer, Juanita R. Brooks and any other
attorney representing him.

(2) Any wire or oral communications so described
in Item One(g)(1)(a) through (h) supra, which
surveillance reveals the existence of conversations, but
not the contents of said conversations particularly pen
register information;

(3) For any electronic or other surveillance that
is described in Items One(g)(1) or (2) above for which
there is no voice record, taped, mechanical or electrical
recording, log, memoranda, record, or airtel, the names
and business addresses of the persons who conducted this
surveillance or who had knowledge of this surveillance;

-10-

1        (4)   Demands for disclosure contained in Items

2 One(g)(1), (2), and (3) above in search of electronic or

3 surveillance taken not only by the United States, its

4 agents and employees but by any governmental agency, state

5 or local, particularly including the Republic of Mexico

6 and by any private persons or corporations of whose

7 existence the government is aware.

8                          ITEM ONE (h)

9        A witness list, including all witnesses, the

10 government intends to call in its case-in-chief.

11        Finally, defendant VERDUGO-URQUIDEZ respectfully

12 reserves the right to file additional discovery related

13 motions based upon anticipated production of discovery not

14 yet reviewed at the time of the preparation of the instant

15 motion.   Particularly, the government has identified

16 approximately five tape recordings of the interrogation of

17 Enrique Camarena-Salazar as well as the existence of

18 approximately 1,500 pages of discovery.   At the time of

19 the preparation of the instant motion, proper and adequate

20 analysis of this discovery could not be completed.

21 Accordingly, defendant VERDUGO-URQUIDEZ respectfully

22 reserves the right to further move for discovery of

23 specific items.   This specifically includes the right to

24 file a motion for bill of particulars relative to the

25 instant indictment and for specification of particular

26 items of Brady materials in the possession of the

27 government.

28

-11-

1    Defendant VERDUGO-URQUIDEZ respectfully requests

2   that the order for discovery be made a continuing order to

3   continue through the trial in the instant case.

4        Said motion is made on the grounds that production

5   of the instant items is required pursuant to Rules 2, 16,

6   17, 57, Title 18 U.S.C. section 3432, and the Fifth

7   Amendment to the United States Constitution.

8        Said motion is made on the grounds that the

9   information sought contains materials essential to the

10   preparation of the defense in the instant case.

11        Said motion is based on the instant notice,

12   motion, memorandum of points and authorities, records and

13   files of the instant case, and any and all other matters

14   which may be presented to the court prior to or at the

15   time of the hearing of said motion.

16                              Respectfully submitted,

17

18   Dated: February 2, 1988

19                              MICHAEL PANCER
                                Attorney for Defendant
20                              RENE MARTIN VERDUGO-URQUIDEZ

21

22                              JUANITA R. BROOKS
                                Attorney for Defendant
23                              RENE MARTIN VERDUGO-URQUIDEZ

24

25

26

27

28
                                -12-

1  MICHAEL PANCER
   ATTORNEY AT LAW
2  625 Broadway, Ste. 1135
   San Diego, California 92101
3  Telephone: (619) 236-1826

4
   JUANITA R. BROOKS, ESQ.
5  108 Ivy Street
   San Diego, California 92101
6  Telephone: (619) 231-8621

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA
                  (Hon. Edward Rafeedie)
10
   UNITED STATES OF AMERICA,      )    Case No. CR 87-422(A)
11                                 )
                Plaintiff,         )
12                                 )    MEMORANDUM OF POINTS
   v.                             )    AND AUTHORITIES IN
13                                 )    SUPPORT OF MOTION
   RENE MARTIN VERDUGO-URQUIDEZ,)      FOR DISCOVERY
14                                 )
                Defendant.         )
15  _____)

16
                 INTRODUCTORY STATEMENT
17
        On January 26, 1988, attorney JUANITA R. BROOKS,
18
   appearing on behalf of defendant RENE MARTIN
19
   VERDUGO-URQUIDEZ, and Assistant U. S. Attorneys Raul
20
   Campos and James Gurule, appearing on behalf of the United
21
   States of America, met to discuss the Standing Order for
22
   Discovery and inspection in Criminal Cases.
23
        Addressing each of the items as contained within
24
   the standing order, the Government indicated that all
25
   statements or confessions made by the defendant within the
26
   definition of One (a) will be provided to defense
27
   counsel. At this juncture, the Government indicated that
28
                          -13-

1    approximately 1,500 pages of discovery was available and
2    this discovery has been picked up on or about January 29,
3    1988. However, at the time of the preparation of this
4    motion, defense counsel has not yet had an adequate
5    opportunity to review the contents of this 1,500 pages of
6    discovery. Accordingly, defense counsel respectfully
7    reserves the right to further move for discovery based
8    upon items not contained within the 1,500 pages thus
9    provided.

10        With respect to item One (b), the Government
11    indicated that they would provide all analyses, scientific
12    tests or experiments conducted by the FBI or United States
13    Federal law enforcement officials. These items would
14    include all forensic reports. However, the Government
15    declined to provide any copies of reports relating to
16    scientific tests or experiments conducted by Mexican law
17    enforcement officials or other Mexican authorities. The
18    Government expressly indicated that they are in possession
19    of autopsy reports and forensic reports independent of
20    those prepared by United States Federal law enforcement
21    officials. However, the Government declined to provide
22    any such Mexican reports indicating that they will not
23    introduce them at trial. Moreover, the Government
24    indicated that out of concern for the safety of witnesses
25    in Mexico and the potential jeopardy by disclosure of
26    their identities, it would not produce Mexican scientific
27    reports.

28

-14-

## ITEM ONE (c)

The Government indicated that no Grand Jury testimony exists with respect to defendant RENE MARTIN VERDUGO-URQUIDEZ.  At this juncture, defense counsel is aware of a specific appearance of defendant VERDUGO-URQUIDEZ before the Grand Jury in the District of Columbia.  At that time, defendant VERDUGO-URQUIDEZ purportedly gave voice exemplars as well AS asserted his constitutional right against self-incrimination. Accordingly, by the instant motion defendant VERDUGO-URQUIDEZ respectfully requests production of the assertion of this constitutional right before the Grand Jury for the District of Columbia and any voice exemplars obtained before the Grand Jury in connection with these proceedings.

## ITEM ONE (d)

The Government agreed to allow defense counsel to inspect and copy all photographs, books, papers, documents and tangible objects as specified in this item with exceptions.  The Government indicated there are five tape recordings of undercover conversations made by Enrique Camarena-Salazar.  The Government indicated that it would decline to produce these tapes in their entirety based upon the fact that the tapes would tend to disclose the identity of a confidential informant in Mexico.  To protect the identity of this informant, the Government indicated that it would provide redacted transcripts and

-15-

1  redacted tapes within one week to ten days of the

2  discovery conference.

3      Additionally, the Government indicated that there

4  are a series of tape recordings, purportedly of the

5  interrogation and death of Enrique Camarena-Salazar.  The

6  Government indicated that "first generation" copies of the

7  Government's working copy of the tape recordings would be

8  provided to defense counsel and, as of the preparation of

9  this motion, these tape recordings have been received.

10  However, by the instant motion, defense counsel requests

11  specification of the definition of the "Government's

12  working tape recordings", particularly specifying whether

13  this tape is the original recording or a copy of the

14  original. By the instant motion, defendant

15  VERDUGO-URQUIDEZ respectfully requests first generation

16  copies of the original tape recordings.  This request is

17  based upon information from forensic specialists that the

18  original tape recording is necessary to provide accurate

19  enhancements, analysis, and reliable copying.

20                    ITEM ONE (e)

21      The Government indicated that the defendant's

22  prior criminal record would be made available and the

23  prior convictions of any witness the Government intends to

24  call will be made available immediately before trial.

25  Upon further discussions, the U. S. Attorney indicated

26  that the witness list would be provided on the "day of

27  trial" and that certified copies of convictions of all

28

                         -16-

1  government witnesses would also be provided at that time.
2  The Government indicated, however, that it was not aware
3  of the existence of any witness' criminal convictions in
4  the Republic of Mexico.  The Government indicated that it
5  believed discovery of foreign convictions was not
6  appropriate and that the government would not ask the
7  witness or authorities in the Republic of Mexico to
8  provide or produce copies of convictions in the Republic
9  of Mexico or any other foreign jurisdiction.  Accordingly,
10  based upon the analysis of the case law indicating that
11  foreign convictions are admissible for purposes of
12  impeachment, defendant VERDUGO-URQUIDEZ respectfully seeks
13  not only all United States convictions but also foreign
14  convictions.

15      Additionally, defendant VERDUGO-URQUIDEZ
16  respectfully requests as to the U.S. convictions of
17  witnesses, that these be produced  at least thirty days
18  prior to trial as opposed to on the day of trial.

19                    ITEM ONE (f)

20      The Government indicated that it was not aware of
21  the existence of any Brady materials.  The Government
22  also indicated that it would provide all Agurs, Giglio
23  materials and Jencks Act materials on the day of trial.

24      Defendant VERDUGO-URQUIDEZ respectfully requests
25  that these materials be given prior to trial.  These
26  witnesses are either already in the witness protection
27  program or will be by the time of trial.  Accordingly,

28

-17-

they will not be endangered by production of these
materials at an earlier date.  Additionally, defendant
VERDUGO-URQUIDEZ by the instant motion seeks specification
and identification of the nature agurs and giglio
materials which will be provided as specified in the
instant motion.

## ITEM ONE (g)

The Government has indicated that no electronic
surveillance was utilized in connection with the instant
case.  At the time of the conference, the Government was
not questioned regarding the existence of electronic
surveillance in the Republic of Mexico.  Accordingly, by
the instant motion, defendant VERDUGO-URQUIDEZ
respectfully request affirmation or denial of the
existence of utilization of electronic surveillance in the
Republic of Mexico.

## ITEM ONE (h)

The Government further indicated that six to seven
informants exist in connection with the instant case.  The
Government indicated that they would produce a witness
list on the day of trial.  With respect to the informants,
the Government indicated that some of the informants began
their cooperation before the incident and that all of
these six to seven informants are civilian witnesses.

In the context of this item, discussions were held
regarding the existence of statements to Mexican
authorities.  The Government indicated that they were

-18-

unaware of the existence of any statements to Mexican
authorities.  In their interviews with the witnesses, they
made no statements that they had in fact been debriefed or
had provided statements to Mexican authorities.  The
Government did indicate that it will ask these witnesses
if they were in fact debriefed by Mexican authorities.
However, the Government did not indicate when it was
going to propose these questions to the witnesses.
Additionally, the Government responded that if the
witnesses affirmatively respond to the existence of
Mexican statements, that the United States will not
attempt to obtain any of these statements.  Accordingly,
the instant motion seeks specification of the time period
during which confirmation of Mexican debriefings exists
and production of the statements if they do exist.

Finally, the instant motion specifically reserves
the right for specification of additional items of
discovery upon review of the items already provided.

### POINTS AND AUTHORITIES

### ITEM ONE  (b)

The specific items under dispute in connection
with this item focus on the right to discovery of all
forensic or scientific analyses conducted by Mexican
authorities.  The Government has indicated that it does
have in its possession autopsy reports prepared by Mexican
officials.  Additionally, the Govnernment has indicated

-19-

that it does have in its possession forensic reports independent of the reports prepared by the FBI or United States Federal law enforcement officials.  However, the Government has declined to produce these reports and analyses citing two specific factors.  First, the Government has submitted that it does not intend to present testimony of these Mexican authorities at trial. Additionally, the Government has indicated it is concerned with respect to the safety of these witnesses in the Republic of Mexico and therefore will not produce any autopsy or forensic reports prepared by non-federal law enforcement authorities.

Defendant VERDUGO-URQUIDEZ respectfully submits that pursuant to Rule 16, he is entitled to these autopsy reports and other forensic reports regardless of whether the Government intends to introduce them at trial.  Prior case law relating to the interpretation of Rule 16 subdivision (a)(1)(D) directly supports this conclusion. For example in United States v. Eisler, 567 F.2d 814 (8th Cir. 1977), in the context of a heroin drug conspiracy and distribution trial, the defense made a motion for mistrial due to the failure of the Government to provide the defendant with a copy of the chemist's report.  Therein, the court expressly recognized that the Government is required by Rule 16 to provide all chemical analysis reports and chemist reports prior to trial pursuant to Rule 16.  The production of the report during

-20-

1    the ·trial was expressly criticized.

2        Similarly, in <u>United States v. Gordon</u>, 580 F.2d

3    827 (5th Cir. 1978), a government chemist was called to

4    testify at trial. The chemist had attempted to perform

5    certain chemical analysis tests on substances seized

6    during various searches and seizures at several

7    locations. At trial, the DEA chemist testified that

8    methaqualone could have been manufactured by using three

9    of the chemicals seized and laboratory equipment similar

10    to that found at the target premises. The court expressly

11    held that this type of chemical analysis and expert report

12    was discoverable under Rule 16. The court further noted

13    that the report should have been provided to defense

14    counsel in advance of trial.

15        In <u>United States v. Hemmer</u>, 729 F.2d 10 (1st

16    Cir. 1984), the court noted that application of Rule 16

17    beyond mere chemical analysis reports to reports relating

18    to footprint, fingerprint and handwriting reports. In the

19    investigation of a bank robbery, the FBI did fingerprint

20    and handwriting analysis and also a footprint comparison.

21    Two of the FBI analyses involving fingerprints on the bank

22    bills as well as footprints made in the snow outside the

23    bank by a pair of sneakers proved to be negative. Both

24    the footprint and fingerprint reports were not turned over

25    to the defendants until the Government presented its case

26    in chief. The prosecutor was apparently unaware of the

27    existence of the two reports until he learned of them

28

-21-

1  during his direct examination of an FBI agent.

2        In <u>Hemmer</u>, the court expressly recognized that

3  the footprint and fingerprint reports even though

4  negative, were discoverable pursuant to Rule 16.  In

5  declining to reverse the defendant's conviction the court

6  recognized that the defendant did receive the reports and

7  analyses in time to effectively use them in trial.

8  Moreover, the court recognized that the prosecutor was not

9  deliberately or intentionally withholding reports from the

10  defense.

11        Also of concern to the instant analysis is the

12  opinion in <u>United States v. Koopmans</u>, 757 F.2d 901 (7th

13  Cir. 1985).  There, the government specifically agreed to

14  and did provide an FBI laboratory report stating in

15  substance that a specimen of unknown plant material was

16  found to be marijuana.  At trial the chemist testified

17  that he had performed an analysis of the material.  During

18  his examination, it became apparent that the chemist had

19  used a gas chromatagraph to separate the chemical

20  constituents of the material and mass spectograph to

21  analyze the salient constituents isolated.  The chemist

22  also testified that he also used a computer to help in

23  interpretation and generating the data of the particular

24  spectra.  The computer also matched the spectra obtained

25  from the untested substance with the spectra in its

26  internal library.  The resulting printout graphically

27  displayed the sample's spectrum, the library spectrum the

28

-22-

1   computer selected and a match, as well as the result of

2   subtracting one from the other. At trial, the government

3   did not produce any of these spectra or printouts but

4   merely the report of the chemical analysis. The Court of

5   Appeals expressly recognized that the failure to produce

6   these materials violated Rule 16.

7        Finally, in United States v. Barrett, 703 F.2d

8   1076 (9th Cir. 1973), the Ninth Circuit recognized that the

9   expert testimony provision of Rule 16 applied also to the

10  use of a photographic expert who reviewed photographs of a

11  bank robber and compared them with photographs of the

12  defendant. The Government delayed production of these

13  items until two days prior to trial. The court expressly

14  recognized that the Government had improperly delayed

15  production of these items to the defendant.

16       In the instant case, defendant VERDUGO-URQUIDEZ

17  seeks production of all Mexican analysis reports including

18  chemical, fingerprint, footprint, hair sample, voice

19  exemplar analysis, tape enhancement analysis, and

20  particularly all autopsy and forensic reports prepared in

21  connection with the examination  of the body of Enrique

22  Camarena-Salazar and Mr. Zavala-Avelar. The above cited

23  authority implicitly recognizes that the failure to

24  produce these items pursuant to Rule 16 is error. The

25  fact that the Government may not seek to introduce these

26  reports at trial is completely immaterial to the

27  discoverability of the reports. As noted in Hemmer, the

28

-23-

failure to provide reports which have negative results
still violates the provisions of Rule 16.

In the instant case an additional basis exists for
compelling the production of these items.  Specifically,
to the extent that any United States officials relied upon
Mexican autopsy reports or forensic reports in forming
their own opinion, these items are discoverable.  Just as
in <u>Koopmans</u> where the chemist relies upon computer
generated spectra, to the extent that any United States
law enforcement official has relied upon these reports,
the reports are discoverable.  Even if they have not been
considered in forming an expert opinion, the analysis and
reports still are discoverable under Rule 16.  To the
extent that the Government is concerned for the safety of
witnesses in Mexico, defendant VERDUGO-URQUIDEZ
respectfully invites whatever protective orders the court
deems appropriate.  Additionally, defendant
VERDUGO-URQUIDEZ notes that the Government is fully
capable of providing whatever protection to these
individuals it is providing to other informants in the
instant case.

## ITEM ONE (c)

At the discovery conference pursuant to the
Court's standing order, the Government indicated that
there was no Grand Jury testimony of defendant
VERDUGO-URQUIDEZ.  However, at the time of the conference,
defense counsel was not aware that defendant

-24-

VERDUGO-ÙRQUIDEZ appeared before the Grand Jury in
Washington D.C.  At the time of his appearance before the
Washington Grand Jury, defense counsel has been    advised
that defendant VERDUGO-URQUIDEZ asserted his
constitutional right against self incrimination.
Nonetheless, at this proceeding defendant VERDUGO-URQUIDEZ
appeared before a Grand Jury and also provided voice
exemplars.  Accordingly, defendant VERDUGO-URQUIDEZ
requests copies of any transcripts of testimony during
which he asserted his Fifth Amendment before the Grand
Jury and also access to any tape recorded voice exemplars
and transcripts prepared thereof.

        The decision whether disclosure of Grand Jury
testimony is proper lies within the sound discretion of
the court.  United States v. Marshall, 526 F.2d 1349
(9th Cir. 1975); United States v. Edwards, 503 F.2d 838
(9th Cir. 1974); State of Wisconsin v. Schaffer, 565
F.2d 961 (7th Cir. 1977).

        The test used in determining whether disclosure of
Grand Jury testimony should be granted is whether the
party seeking disclosure has demonstrated that "a
particularized need" exists which outweighs the policy of
secrecy.  Pittsburg Plate Glass Company v. United
States, 360 U.S. 395 (1959); Dennis v. United States,
384 U.S. 855 (1966).

        In the instant case, defendant VERDUGO-URQUIDEZ
seeks the Grand Jury testimony and voice exemplars taken

-25-

1   before the Grand Jury based upon two specific aspects of

2   particularized need.  First, defendant VERDUGO-URQUIDEZ

3   needs his voice exemplars given before the Grand Jury for

4   purposes of comparing his voice to any voices heard on the

5   tape of the interrogation of Enrique Camarena-Salazar.  In

6   this manner, defendant VERDUGO-URQUIDEZ can affirmatively

7   establish that he was not present at the time of the

8   interrogation.

9        Secondly, the transcript of the Grand Jury

10  proceedings is needed for purposes of any appropriate

11  motions to dismiss due to Government misconduct in calling

12  defendant VERDUGO-URQUIDEZ before the Grand Jury merely

13  for purposes of having the grand jury hear the defendant

14  asserting his constitutional right against self

15  incrimination.  Both of these reasons constitute

16  particularlized need within the meaning of the above cited

17  case law.  Accordingly, defendant VERDUGO-URQUIDEZ

18  requests disclosure of these items.

19                         ITEM ONE (d)

20       The Government has agreed to provide access for

21  the purposes of inspection and copying to all physical

22  items in the instant case.  There are two exceptions to

23  this representation.  First, the Government has indicated

24  that five tape recordings made by Enrique Camarena-Salazar

25  in an undercover capacity exist.  The Government has

26  declined to produce these undercover tape recordings on

27  the grounds that production of the tape recordings would

28

                              -26-

tend to reveal the identity of a confidential informant.
Accordingly, the Government has offered to provide
redacted tape recordings and transcripts of these
proceedings. Defendant VERDUGO-URQUIDEZ respectfully
requests access to the entire tape recordings and the
entire transcripts. To the extent that the Government's
confidential informant will be called at trial, this
confidential informant will obviously be offered
protection either under the Witness Protection Program or
other appropriate protection. Defendant VERDUGO-URQUIDEZ
respectfully requests access to these tape recordings for
purposes of determining their authenticity should they be
introduced at trial. Without access to the original,
unedited tape recordings, defendant VERDUGO-URQUIDEZ
cannot possibly address the authenticity of the tape
recordings. Defendant VERDUGO-URQUIDEZ anticipates that
all tape recordings will be provided to the defense's own
independent expert for determination of whether the tapes
have been tampered with or otherwise modified. In light
of the Court's ruling with respect to challenging
foundational aspects of physical objects, defense counsel
cannot possibly determine the authenticity of these tape
recordings based merely upon redacted tapes.

Additionally, defendant VERDUGO-URQUIDEZ invites the court
to enter whatever protective orders it deems appropriate
regarding these tape recordings for purposes of allowing
defense counsel to accurately assess the authenticity of

-27-

1    the tapes and to allow defendant VERDUGO-URQUIDEZ adequate

2    time to prepare a defense.

3         Additionally, the Government has indicated that

4    they will provide copies of the Government's "working tape

5    recording" of the purported interrogation of Enrique

6    Camarena-Salazar. The Government has failed to identify

7    the nature of the "working tape recording." Defendant

8    VERDUGO-URQUIDEZ respectfully requests first generation

9    copies of the <u>original</u> tape recording which will be

10    introduced at trial in the instant case as well as first

11    generation tape recordings of any <u>enhanced</u> tape

12    recordings that the Government will seek to introduce at

13    trial in the instant case.

14         The purpose of this request pursuant to the strict

15    requirements of Rule 16 is for defense counsel's own

16    expert evaluation of the authenticity of tape recordings.

17    Based upon representations of experts made in the past,

18    defense counsel is aware that the quality of tape

19    recordings varies significantly based upon the copy is of

20    the original tape recording or some other copy. Each

21    tape recorder automatically carries certain sound

22    suppressors. Accordingly, the number of times a tape

23    recording is recopied tends to diminish the reliability

24    and accuracy of the tape recording. For example, where

25    soft sounds may be heard on the original tape recording, a

26    second or third generation tape will have no such sounds

27    whatsoever. Although at this juncture, defense counsel is

28

-28-

1  not aware of the exact nature of the tape recording, it is
2  anticipated that certain sounds which may be suppressed
3  based upon second and third generation copies provided to
4  defense counsel will be inadequate to prepare the
5  defense. Based upon this factor, defense counsel requests
6  first generation copies of the original tape recording
7  prepared in connection with the instant case.

8      For these same reasons, defendant VERDUGO-URQUIDEZ
9  requests access to a first generation copy of any
10 "enhanced" copies the government intends to introduce at
11 trial.

## ITEM ONE (e)

13     Particularly, the Government has declined to
14 produce any foreign convictions of government witnesses.
15 The Government has responded that it will provide
16 certified copies of convictions of government witnesses on
17 the day of trial as well as a witness list. However, the
18 Government has expressly declined to provide convictions
19 in foreign republics. The Government has indicated that
20 it will not ask its witnesses if they have sustained such
21 convictions and will not produce any such convictions.

22     Defendant VERDUGO-URQUIDEZ respectfully submits
23 that such foreign convictions are relevant for impeachment
24 purposes and should be produced by the government. Rule
25 609 of the Federal Rules of Evidence provides in pertinent
26 part:

27          (a)  General Rules

-29-

1                For the purpose of attacking the

2                credibility of the witness, evidence

3                that the witness has been convicted of

4                a crime shall be admitted if elicited

5                from the witness or established by

6                public record during cross-examination

7                but only if the crime (1) was

8                punishable by death or imprisonment in

9                excess of one year under the law under

10               which the witness was convicted, and

11               the court determines that the probative

12               value of admitting this evidence

13               outweighs its prejudicial effect to the

14               defendant, or (2) involved dishonesty

15               or false statement, regardless of the

16               punishment.

17        In *United States v. Boyce*, 611 F.2d 530 (4th Cir.

18  1979), the court recognized that in proving a felony

19  conviction on cross-examination, counsel may "ask about the

20  nature of the crime, the time and place of conviction, and

21  the punishment.  See also Weinstein-Berger, *Commentary on*

22  *Federal Rules of Evidence*, Vol. 3, sec. 609 (03a), pp.

23  609-80.1-2 (1978); *United States v. Wolf*, 561 F.2d 1376,

24  1381 (10th Cir. 1977); *Tucker v. United States*, 409 F.2d

25  1291, 1294 n.1 (5th Cir. 1969).

26        In *United States v. Wilson*, 556 F.2d 1177 (4th

27  Cir. 1977), the court expressly held that a prior felony

28

conviction by a German court was admissible at the
defendant's rape trial in the United States. There, the
defendant had previously been convicted of rape in a German
court. The United States trial court ruled that the
government could ask the defendant whether he had ever been
convicted of a felony, but could not bring out the fact
that the prior conviction was for rape. In approving the
admission of the prior German conviction, the Court of
Appeals stated:

> Although the German conviction may have
> been obtained without a jury trial, we
> do not think it was error to rule that
> the Government could introduce the
> conviction to impeach the defendant
> under Rule 609 of the Federal Rules of
> Evidence. A jury trial for serious
> offenses is essential to fundamental
> fairness in trial conducted in this
> country under the Anglo-American system
> of justice. (Citations.) But a jury
> trial is not essential for fairness in
> every system of justice. The only
> question here is whether the German
> legal system is so fundamentally unfair
> that a conviction obtained under it is
> inadmissible. The defendant has not
> shown that the German legal system

-31-

lacks the procedural protections
necessary for fundamental fairness.   We
note that the State Department
routinely releases United States
citizens to be tried by German courts,
and that the defendant has not claimed
that he lacked the assistance of
counsel during his trial in Germany.

United States v. Wilson, supra, at

page 1178.

Similarly, in United States v. Rodarte, 596 F.2d
141 (5th Cir. 1979), the court also recognized that foreign
convictions stand on the same footing as domestic
proceedings provided that the procedural protections
necessary for fundamental fairness are observed by the
foreign jurisdiction.   Thus, absent some specific
allegations of procedural deficiencies, a trial court is
under no duty to conduct, sua sponte, an inquiry into the
presumptions and procedures of foreign jurisdictions prior
to admission of a foreign conviction at trial.

In a law review article, "The Collateral Use of
Foreign Convictions in American Criminal Trials" 47
University of Chicago Law Review 82 (1979), the author
reviews procedural guarantees which render a foreign
conviction unreliable for purposes of admission in an
American criminal trial.   The author concludes that unless
there are certain fundamental procedural deficiencies, the

-32-

1 mere fact that a jury trial does not occur does not render

2 the foreign conviction inadmissible for purposes of

3 domestic courts.  Specifically, the author recognized that

4 the foreign court need not provide the same fundamentals in

5 adversarial form familiar to domestic courts for a foreign

6 conviction to be reliable.  The court recognized that the

7 fundamental test for determining admissibility of these

8 convictions is whether the proceedings were sufficiently

9 trustworthy.

10     In the instant case, defendant VERDUGO-URQUIDEZ

11 respectfully requests access to all foreign convictions of

12 government witnesses.  The above cited authority and Rule

13 609 on its face suggests that witnesses may properly be

14 impeached by criminal convictions in a foreign country.

15 Wilson expressly recognizes that foreign convictions,

16 given certain fundamental guarantees, are sufficiently

17 reliable for admission to impeach a government witness.

18 Based upon these factors defendant VERDUGO-URQUIDEZ

19 respectfully requests that the government be ordered to

20 produce all foreign convictions in the Republic of Mexico

21 or other countries of government witnesses.

22     Additionally, defendant VERDUGO-URQUIDEZ

23 respectfully notes that the timing with which the

24 government desires to produce the domestic convictions of

25 government witnesses is inadequate to adequately prepare

26 for trial.  The government has proposed that it would

27 provide certified copies of convictions on the day of

28

-33-

1    trial.  By providing the certified copies, the government
2    has suggested that the time usually necessary to obtain
3    such certification of conviction records for impeachment
4    purposes will be saved.  However this narrow view of prior
5    felony convictions completely ignores the possibility of
6    obtaining testimony and additional evidence of other wrong
7    doing by a potential government witness.  Particularly,
8    government witnesses may have entered into some type of
9    plea bargain.  The underlying facts relating to dismissed
10   charges may lead to testimony with respect to the
11   reputation for truth and veracity of the particular
12   individual.  For example, the government witness may have
13   been convicted of mail fraud.  The conviction itself would
14   certainly reflect upon his character for truth and
15   veracity.  However there may exist hundreds of victims of
16   such mail fraud who would be willing to testify to the
17   reputation for truth and veracity of the particular
18   government witness.  Defense counsel should not be limited
19   in his preparation for trial by complete lack of access to
20   prior felony convictions.  Thus, the provision of the
21   certified copies on the day of trial would in essence
22   preclude defense counsel from doing any underlying
23   investigation.

24       Moreover, the government's comments with respect to
25   safety of potential government witnesses can easily be
26   addressed.  It is anticipated that on the day of trial the
27   government will most likely provide some type of protective
28

-34-

1  services to its witnesses.  The timing of this protection

2  appears to be the government's sole basis for objecting to

3  disclosure of the information at this juncture.  Defendant

4  VERDUGO-URQUIDEZ respectfully submits that if the

5  government witnesses are in danger, that immediate

6  protection of the witnesses is certainly appropriate.  By

7  providing such protection immediately, defense counsel then

8  can be in a position of obtaining impeachment materials

9  relating to both domestic and foreign convictions of these

10  witnesses without endangering the witnesses.  Defense

11  counsel can also thoroughly investigate the background of

12  the government witnesses.  Only in this manner can the true

13  purpose of cross-examination, the ferreting out of the

14  truth, be truly obtained.  Cross-examination hindered by an

15  inability to adequately investigate the background and

16  contact witnesses knowledgeable about the government's

17  witness' lack of veracity certainly hampers this function.

18  Accordingly, defendant VERDUGO-URQUIDEZ respectfully

19  requests that both foreign and domestic convictions be

20  provided at a minimum 30 days prior to trial to adequately

21  allow time for preparation of cross-examination at trial.

22  In this manner, repeated requests for delay based upon a

23  need for additional investigation may be avoided.

24  ### ITEM ONE (f)

25  The government has indicated that no Brady

26  material exists of which it is aware.  The government has

27  also specified that all Giglio/Agurs materials as well as

28

-35-

1  <u>Jencks</u> statements will be provided on the day of trial.
2  The government's basis for concealing this information
3  stems from their concern for witness safety.  At this
4  juncture, defendant VERDUGO-URQUIDEZ respectfully submits
5  that all government witnesses are either already protected
6  by the federal government or would be protected as soon as
7  their identity has been revealed.  Accordingly, the need
8  for producing this information on the day of trial only
9  concerns those individuals who are not already protected.
10  To this extent, defendant VERDUGO-URQUIDEZ submits that the
11  government is easily in a position of offering protection
12  to these witnesses 30 days prior to trial, as easily as it
13  offers protection on the day of trial.  Thus, the true
14  purpose for delaying the production of Agurs/Giglio and
15  Jencks material to the day of trial only suggests that the
16  government is disingenuously attempting to hide evidence
17  under the guise of witness safety at this juncture.
18  Accordingly, defendant VERDUGO-URQUIDEZ respectfully
19  submits that it is well within the court's discretion to
20  order that these items of discovery be produced at a
21  minimum 30 days prior to trial to allow for the proper
22  analysis and review.

23        Defendant VERDUGO-URQUIDEZ respectfully includes
24  within this generic category of information items specified
25  in the above motion.  These items can generally be
26  classified as impeachment materials.

27        Due process and the fair administration of justice
28

1   requires that evidence which will impeach the credibility
2   of a witness must be produced for a criminal defendant.
3   United States v. Keogh, 391 F.2d 138 (2d Cir. 1968);
4   Guerrero v. Beto, 384 F.2d 886 (5th Cir. 1968).

5   Defendant VERDUGO-URQUIDEZ seeks not only items
6   which are included in the witness' prior conviction record,
7   but also relating to possible previous arrests.
8   Specifically, this item of information would assist the
9   defendant in establishing prior bad acts of a particular
10  witness.  These bad acts, even if not prosecuted would
11  assist in establishing the lack of credibility of the
12  witness based upon acts involving moral turpitude and also
13  possible expectations of the witness in exchange for his
14  testimony.

15  Specifically, it is expected that some of the
16  government witnesses have received written plea agreements
17  with respect to their testimony in the instant case.  These
18  plea bargains have been requested and it is anticipated
19  that the government will disclose the plea bargain.
20  However, the witnesses may have expectations of the extent
21  of the plea bargain which go far beyond what the government
22  has actually promised.  Previous arrests for certain bad
23  acts contained within a witness' "rap sheet" would assist
24  in establishing these expectations of the witness.  Thus,
25  for example, the witness may have been arrested on previous
26  occasions for importation of cocaine which arrests have
27  nothing to do with this case.  The witness's present plea
28

-37-

1  agreement relates to the charges for which he was convicted
2  or pled guilty on a different occasion. However, the
3  witness may expect that the government will not prosecute
4  him at any time for these particular cocaine offenses.
5  Thus, the motive for falsifying or shading testimony to the
6  favor of the government would be disclosed by evidence of a
7  witness's prior arrest.

8       In <u>United States v. Auten</u>, 632 F.2d 478 (5th Cir.
9  1980), the defendant's conviction was reversed because of
10 the government's failure to disclose a witness's past
11 criminal record. There, the court expressly recognized
12 that the failure to provide the criminal record constituted
13 reversible error in light of the fact it could have
14 provided crucial impeachment evidence for the defendant.

15      Similarly, in <u>Martinez v. Wainwright</u>, 621 F.2d
16 184 (5th Cir. 1980), the defendant requested, in the
17 context of a murder prosecution, the deceased's "rap
18 sheet." Again, the court expressly recognized that not
19 only is the criminal conviction record of the deceased
20 relevant but also the "rap sheet" of the deceased was
21 relevant in obtaining critical impeachment evidence.

22      In the instant case, defendant VERDUGO-URQUIDEZ
23 respectfully requests production of the "rap sheet"
24 including prior arrests of all government witnesses which
25 may or may not have resulted in prosecution or
26 convictions. This would specifically include all
27 information in the government's possession or which may be

28
                              -38-

obtained through the exercise of due diligence relating to arrests occurring in the United States as well as the Republic of Mexico.

As with the prior item, defendant VERDUGO-URQUIDEZ seeks information which would relate to impeachment materials or materials with which he could attack the credibility of government witnesses. To date, specifically no government witnesses have positively been identified. Defense counsel may speculate that one such witness is Victor Vidal. The extent, dates, and occasions on which Mr. Vidal may have testified have not been provided and defense counsel is not fully aware of these occasions, if any. Accordingly, defendant VERDUGO-URQUIDEZ seeks specification of the occasions on which Mr. Vidal and any other witnesses if to be called by the government at trial in the instant case, have testified. Production of this information would assist in two important respects. First, the prior statements may contradict statements not only contained in debriefing reports of the witnesses, but also anticipated trial testimony in the instant case. Accordingly, specification of the occasions on which the witness testified would relate to admissible evidence for impeachment purposes. This item would also include prior testimony and statements in the Republic of Mexico. Additionally, the prior occasions of testimony could assist in locating possible additional witnesses who would contradict Vidal and other witnesses with respect to

anticipated testimony in the instant case. Thus, the evidence would constitute Brady materials in that it may provide possible leads to admissible evidence. See Lorraine v. United States, 396 F.2d 335 (9th Cir. 1968), United States v. Gerard, 491 F.2d 1300 (9th Cir. 1974).

Defendant VERDUGO-URQUIDEZ also seeks an accounting of all financial payments received by the particular government witnesses in exchange for their testimony. In United States v. Antone, 603 F.2d 566 (5th Cir. 1979), the court expressly recognized that payments of monies to a particular government witness should be disclosed to defense counsel. There, a government witness testified falsely concerning the source of payment for his attorney. In fact, the attorney had been paid by the State of Florida through the Florida Department of criminal law enforcement. Although the Assistant United States Attorney was not aware of this fact, the court expressly recognized that the payment of such funds to the witness constituted Giglio materials.

More recently, in the case of United States v. Shaffer, 789 F.2d 682 (9th Cir. 1986), the defendant moved for a new trial based upon failure of the government to provide certain impeachment evidence relating to its key witness at trial. This motion was granted and the government appealed to the Ninth Circuit. The Court of Appeals affirmed the granting of a new trial. Specifically, defendant was charged along with three other

-40-

1  defendants with four counts of narcotics violations and
2  four counts of income tax violations.  The government's
3  case against Shaffer consisted in large part of the
4  testimony of Robert Durand, an unindicted co-conspirator.
5  In exchange for immunity from prosecution, Durand agreed to
6  cooperate with the government.  During the investigation,
7  Durand was paid for his expenses in meeting with IRS and
8  DEA agents.  Durand was also paid for expenses incurred in
9  travelling to Los Angeles to prepare for trial.  He was
10  also paid for security expenses and after trial he was paid
11  for security and relocation expenses.  During the
12  investigation of the defendant, another individual
13  contacted Durand about a separate heroin operation.  The
14  government conducted a supplemental investigation of the
15  co-defendant for about seven months.  During this time,
16  Durand was compensated for expenses and received money
17  acting as a paid informant.

18      Prior to trial, defendant Shaffer made a specific
19  request concerning promises the government made to Durand
20  in exchange for his cooperation, his tax returns for the
21  time period, and internal government memoranda regarding
22  his cooperation.  The government provided a copy of the
23  plea agreement.

24      Approximately two years after trial, Shaffer filed
25  a motion for new trial.  Defendant contended that the
26  government failed to disclose to him that: (1) Durand was a
27  paid informant in the separate heroin operation, (2) the

28

-41-

benefits and expense payments received in connection with both narcotics investigations, (3) the extent of assets Durand acquired through narcotics profiteering, and (4) the failure of the government to initiate any civil tax proceedings against Durand. Therein, the court stated:

> Because Durand's testimony implicating
> Shaffer was critical to Shaffer's
> conviction, the jury's assessment of
> Durand's credibility was crucial to the
> outcome of the trial. Therefore, if
> the jury had not believed Durand,
> Shaffer may not have been convicted.
> Consequently, we must determine whether
> the district court correctly held that
> the newly discovered evidence, if used
> at trial, would have discredited
> Durand. . . .
>
> Examining the newly discovered
> evidence, we conclude that this
> evidence, had it existed, could have
> been used to discredit Durand.
> Specifically, Durand's involvement in
> the heroin investigation contradicts
> his prior testimony that he never
> participated in any heroin
> transaction. Furthermore, the facts
> surrounding the government's payment of

Durand's expenses – use of round
numbers in detailing Durand's expenses
on government forms and the failure to
provide receipts for these expenses –
could have been construed as evidence
that Durand was paid for his
cooperation. Also, the government's
failure to disclose that Durand did in
fact have assets which were acquired
through drug profiteering (i.e. a house
in Palm Springs and funds to enter a
health spa), coupled with the
government's failure to initiate asset
forfeiture proceedings to acquire these
assets, implies that a tacit agreement
was reached between Durand and the
government that allowed Durand to avoid
any asset forfeiture liability in
exchange for his cooperation. Finally,
testimony at the hearing for a new
trial indicated that the government had
yet to enforce Durand's civil tax
liability for unpaid taxes. This
contradicts the government's earlier
representation, as expressed in the
immunity agreement, that Durand would
be required to pay a civil tax

-43-

1    liability promptly.  This lends further
2    credence to the conclusion that Durand
3    was paid in the form of leniency for
4    his cooperation.

5    We conclude, therefore, that the
6    government's failure to disclose the
7    impeachment evidence regarding Durand
8    "undermines confidence in the outcome
9    of Shaffer's trial."

10   United States v. Shaffer, supra, at
11   pp. 688-689.

12   In Davis v. Heyd, 479 F.2d 446 (5th Cir. 1973),
13   defendant petitioned for habeas corpus relief.  There, the
14   prosecution witness testified on prior occasions.  This
15   testimony was inconsistent with his trial testimony.
16   Moreover, the prior testimony supported the defense theory
17   of the case.  The Court of Appeals granted habeas corpus
18   relief noting that the defendant had been deprived of a
19   fair trial by the failure of the government to produce this
20   information at trial.  This information would also extend
21   to other cases in which the informants previously testified
22   against another individual.  This information would assist
23   in establishing that the government witnesses and others
24   are paid informants and will do anything and say anything
25   to frame a specified government target.

26   In Johnson v. Brewer, 521 F.2d 556 (9th Cir.
27   1975), defendant sought to introduce at trial evidence to
28

                              -44-

prove that the prosecution witness had lied and attempted to frame another individual in a separate drug trial in Michigan. The trial court excluded this evidence. In granting habeas corpus relief, the court noted the career status of an informant depends on the continuing relationship with state authorities. Thus, the possibility of bias of the witness and particularly the modus operandi of the witness was relevant and should have been presented to the jury.

As noted in the additional items, defendant is seeking the tax returns of government witnesses, government memoranda regarding their cooperation and an accounting of expenses as well as offers of leniency to them.

### ITEM ONE (q)

The Assistant U. S. Attorney in the instant case has denied the existence or utilization of any electronic surveillance by Federal law enforcement officers. However, the U. S. Attorney has not indicated whether electronic surveillance has been utilized in the Republic of Mexico in connection with the concomitant investigation of these charges there. Title 18 U.S.C. Section 3504, requires that an agrieved party articulate a "colorable" basis for claiming surveillance in order to put the Government to the task of responding. United States v. Yanaqita, 552 F.2d 940 (2nd Cir. 1977); In Re Millow, 529 F.2d 770 (7th Cir. 1976).

Once the defendant has met his burden of going

-45-

1    forward with a "colorable basis" for his claim of
2    surveillance, the Government is required under Title 18 to
3    affirm or deny the existence of the illegal electronic or
4    other surveillance.  United States v. Alter, 482 F.2d
5    1016 (9th Cir. 1973).

6         In United States v. Alter, 482 F.2d 1016 (9th
7    Cir. 1973), the Ninth Circuit Court of Appeals discussed
8    the burden of going forward and the type of response which
9    satisfies the requirements of Title 18 U.S.C. Section
10   3504.  Specifically, the Alter court referred to a prior
11   opinion in Cohen v. United States, 378 F.2d 751 (9th Cir.
12   1967).  In Cohen the Ninth Circuit previously discussed
13   the requisite demonstration of the specificity of the
14   defendant's allegations of illegal monitoring or telephone
15   calls necessary to warrant an evidentiary hearing.  Cohen
16   announced the test with respect to Grand Jury witness
17   allegations of unlawful electronic surveillance as follows:

18             The question is whether the allegations
19             in the moving papers, including
20             affidavits if any are filed, are
21             sufficiently definite, specific,
22             detailed, and non-conjectual, to enable
23             the court to conclude that a
24             substantial claim was presented.  If
25             the allegations are sufficient and
26             factual issues are raised, a hearing is
27             required.

28

-46-

1        United States v. Cohen, supra, at

2            page 761.

3        The Alter court recognized that there are certain

4   factors which may be considered in determining the

5   sufficiency of an affidavit. There, the court recognized

6   that the specific facts which would reasonably lead the

7   affiant to believe that he has been subjected to electronic

8   surveillance should be included as well as the dates of the

9   surveillance, the dates of representation of the witness by

10  the lawyer, the identity of the person by description of

11  the telephone with whom communications occurred, and facts

12  showing some connection between possible electronic

13  surveillance and the witness' claim.

14       More recently in United States v. Wylie, 625 F.2d

15  (9th Cir. 1980), the court reviewed affidavits submitted

16  both by the defendant and the Government with respect to

17  the defendant's claim of illegal electronic surveillance.

18  Counsel for the defendant filed a claim asserting that she

19  had been the subject of an illegal electronic surveillance

20  in connection with the representation of the defendant.

21  The Government responded with a detailed denial of

22  electronic surveillance. In defense counsel's affidavit,

23  she stated that on a particular date she held a conference

24  with the defendant between eleven and noon at her

25  residence. Before, during and after the conference,

26  counsel's cousin was in her house and used her phone. Her

27  cousin informed her that the use of the phone was normal

28

-47-

1  before and after the conference of the defendant.  However,
2  the use of the phone during the time of the conference
3  consistently had a conversation in the background between
4  two persons.  Based on these events, the attorney stated
5  that she believed that she was the subject of unauthorized
6  government interception.

7          The District Court found that this affidavit raised
8  a question of electronic surveillance and ordered the
9  Government to make a check of the relevant agencies.  The
10 Government attorney responded including a declaration
11 summarizing the Justice Department's search of records from
12 the different government agencies.  The search disclosed no
13 evidence that the defendant or his counsel was subjected to
14 surveillance.  The Government also offered the statement of
15 the case agent in charge of the investigation who stated
16 unequivocally that at no time was there any type of wiretap
17 or area bug during the investigation of the case.  Therein,
18 the court recognized that the Government's response,
19 although it could have been more detailed, was sufficient
20 in light of the particular affidavit of defense counsel.

21         In the instant case, defendant VERDUGO-URQUIDEZ
22 will submit exhibits which reflect that the Republic of
23 Mexico has utilized electronic surveillance in conducting
24 investigations there.  Based upon the nature of the instant
25 charges, it is quite evident that the Republic of Mexico
26 has cooperated with the United States in the instant
27 investigation.  Accordingly, to the extent that the

28

-48-

1 | Republic of Mexico has utilized some kind of surveillance
2 | in this investigation, denial or affirmation by the
3 | prosecution is required.

### ITEM ONE (h)

Defendant VERDUGO-URQUIDEZ seeks not only
confirmation of the existence or non-existence of
Government informers, but also a witness list at least
thirty days in advance of trial.

Title 18 U.S.C. section 3432 reads as follows:

> A person charged with treason or other
> capital offense shall at least three
> entire days before commencement of
> trial be furnished with a copy of the
> indictment and a list of the venireman,
> and of the witnesses to be produced on
> the trial for proving the indictment,
> stating the place of abode of each
> venireman and witness.

Generally, pursuant to case law in this circuit, a
witness list need only be produced in a capital case.
United States v. Sukumolachan, 610 F.2d 685, 688 (9th
Cir. 1980); United States v. Angelini, 607 F.2d 1305,
1308 (9th Cir. 1979).

Defendant VERDUGO-URQUIDEZ is charged in Count Four
of the First Superseding Indictment with murder in
violation of Title 18 U.S.C. section 1111. This section
reads in pertinent part:

-49-

(b) Within the special maritime and
territorial jurisdiction of the United
States,

Whoever is guilty of murder in the
first degree, shall suffer death unless
the jury qualifies its verdict by
adding thereto "without cpaital
punishment", in which event he shall be
sentenced to imprisonment for life;

Based upon the fact that defendant
VERDUGO-URQUIDEZ is charged with a capital offense, under
the above-referenced code section, he should be provided
with a witness list. This conclusion should not change
based upon the fact that the federal death penalty was
ruled unconstitutional in <u>Furman v. Georgia</u>, 408 U.S. 238
(1972). In <u>United States v. Kennedy</u>, 618 F.2d 557 (9th
Cir. 1980), the Ninth Circuit stated with respect to the
application of procedural rights on a capital case:

Furman, however, rendered
unconstitutional only the penalties
that could be exacted under certain
statutes. It did not necessarily have
the effect of invalidating all statutes
that were tied to the concept of a
"capital" case. If the statute's
purpose derives from the nature of the
offense with which the defendant is

-50-

1                  charged and not from the potential

2                  severity of the punishment, it remains

3                  in effect. (citations)

4                  United States v. Kennedy, supra, at

5                  page 558.

6       Application of this principle supports the

7 conclusion that even after the ruling invalidating the

8 death penalty under this statute, the procedural right to a

9 witness list survives. c.f. United States v. Steel, 759

10 F.2d 706 (9th Cir. 1985).

11       Even if this court rules that the absolute right to

12 a witness list does not exist, an order for the production

13 of the witness list still lies within the sound discretion

14 of the trial court pursuant to its inherent supervisory

15 powers and Rule 57. United States v. Jackson, 508 F.2d

16 1001 (7th Cir. 1975); United States v. Richter, 488 F.2d

17 170 (9th Cir. 1973); United States v. Baum, 488 F.2d 1325

18 (2d Cir. 1973).

19       In United States v. Jackson, 508 F.2d 1001 (7th

20 Cir. 1975), the Seventh Circuit upheld the trial court's

21 order for the production of the government's list of

22 witnesses. That court referred to Rule 2 of the Federal

23 Rules of Criminal Procedure as the basis for such an order:

24                  However, Federal Rule of Criminal

25                  Procedure 2 provides that the rules

26                  "shall be construed to secure

27                  simplicity in procedure, fairness in

28

-51-

admininstration and the elimination of
unjustifiable expense and delay." With
this in mind, we do not believe, and do
not think that <u>Richter</u>, suggests that,
under the appropriate circumstances the
discretion employed by the District
Court in the exercise of its authority
need be limited to a defense showing of
materialtity and reasonableness. . . .
In light of these circumstances, Judge
Marshall designed his pretrial order to
obtain the following objectives: (1)
To enable the court to determine, with
some degree of accuracy the length of
time to be allocated to the trial of
the case, thereby facilitating docket
control; (2) to expedite the trial by
fostering more purposeful
cross-examination; and (3) to protect
against the adverse consequences of
this situation in which a juror is
acquainted with a witness by permitting
knowledgeable voir dire questions.
<u>United States v. Jackson</u>, <u>supra</u>, at
page 1007.

In <u>United States v. Richter</u>, 488 F.2d 170 (9th
Cir. 1973), the Ninth Circuit also recognized the inherent

-52-

discretion of the trial court to order the production of a
list of government witnesses in advance of trial:

> The Federal Rules of Criminal Procedure
> are intended to constitute a
> comprehensive procedural code for
> criminal cases in the Federal Courts,
> but even the rules themselves do not
> purport to set outer limits of the
> power of the court.  (Federal Rule of
> Criminal Procedure 57(b)) . . .
> As the rules do not contain provisions
> pertaining to the divulgence of names
> of prospective witnesses, ordering
> their production is not inconsistent
> with rules. . . . Therefore, the rules
> did not necessarily foreclose the
> District Court from making the attached
> order. . . .
> It is recognized that wide latitude is
> reposed in the District Court to carry
> out successfully its mandate to
> effectuate, as far as possible, the
> speedy and orderly admininstration of
> justice.  "A federal court has the
> responsibility to supervise the
> administration of criminal justice in
> order to insure fundamental fairness.'

-53-

United States v. Richter, supra, at

     page 175.

     Additionally, in United States v. Leichtfuss, 331
F.Supp. 723 (N.D. Ill. 1971), the district court ordered
the Government to provide defense counsel with a list of
trial witnesses.  Therein, the court stated:

          It is clear that Federal Courts have

          the power to require the government to

          disclose the names of potential

          witnesses where this information is

          necessary or useful in the defendant's

          preparation for trial.  (citations).

          Certainly there is nothing

          "inappropriate" about ordering such a

          request in a criminal case. . . .

          I see no justification for withholding

          the names and addresses of government

          witnesses in these cases.  As the

          government itself points out the only

          witnesses in most cases will be a

          selective service clerk form the local

          board and perhaps the FBI agent who

          arrested the defendant.

          United States v. Leichtfuss, supra,

          at pages 732 to 733.

     In the instant case, defendant VERDUGO-URQUIDEZ
requests a witness list approximately thirty days in

-54-

advance of trial.  This requests stems not only from the
serious nature of the charges in a capital case, but also
from the location of the alleged offense.  The concerns
with witness safety can be satisfied if in fact the
Government is already offering protection or intends to
offer protection at some time in the future.  Thus, this
court should exercise its discretion to compel a witness
list in advance of trial and not on the day of trial as
suggested by the Government.

Based on the foregoing authorities, defendant
VERDUGO-URQUIDEZ respectfully requests a continuing order
for discovery as set forth above.

Respectfully submitted,

Dated:   February 2, 1988

MICHAEL PANCER
Attorney for Defendant
RENE MARTIN VERDUGO-URQUIDEZ

JUANITA BROOKS, ESQ.
Attorney for Defendant
RENE MARTIN VERDUGO-URQUIDEZ

-55-

THE LAW OFFICES OF
GOLDBERG, FRANT & HALL
303 West "A" Street
San Diego, California  92101
Telephone:  (619) 232-6671


## AFFIDAVIT OF PERSONAL SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO


     I, the undersigned, say:  that I am over 18 years
of age, am employed in the County of San Diego, California,
am not a party to the within action, and my business
address is:  303 West "A" Street, San Diego, California.

     On _____February 2_____, 19 _88_, I personally
served the foregoing document(s) described as:

___Notice Of Motion,Motion for Discovery, Memorandum of Points and

___Authorities_____

_____

_____


by delivering to the appropriate business address in
accordance with the provisions of CCP section 1011(1) in
case number __87-422 (A)_____  as follows:

    Robert Bonner, United States Attorney
    Raul Campos, Assistant United States Attorney
    James Gurule,Assistant United States Attorney
    Los Angeles United States Attorney's Office
    312 North Spring Street,Room 1400
    Los Angeles, California 90012


     I certify under penalty of perjury that the
foregoing is true and correct.
     Executed on ___February 2_____, 19 _88_, at
San Diego, California.

                            Jill Himelstein